

*Melissa R. Henry*

**CLERK OF COURT**
**22ⁿᵈ Judicial District Court**
**Parish of St. Tammany**

June 1, 2023

ARTIS G ULMER III
ATTORNEY AT LAW
SHACKELFORD, BOWEN, MCKINLEY & NORTON LLP
717 TEXAS AVE 27ᵀᴴ FLOOR
HOUSTON, TX 77002


RE:   PETITION FOR DAMAGES
      HERMES HEALTH ALLIANCE LLC
      VS
      LAWRENCE E STANSBERRY
      2023 - 12683

ATTENTION:

The Ex Parte Motion to assign New a Case Number for the Severed Third-Party Demand has been Assigned. The Order granting Sedgwick's Ex Parte Motion to assign a New Case Number for the Severed Third-Party Demand has been Granted. The New Case Number is 2023-12673 I.




Sincerely,

KATIE GILLY
CIVIL INTAKE
St. Tammany Parish
22ⁿᵈ Judicial District Court


Exhibit F

**P.O. Box 1090 · Covington LA 70434 · (985) 809-8700**

E-Filed on: 5/24/23 02:16 PM
Filed on: 5/24/23 03:26 PM

MELISSA K. HENRY, CLERK
Deputy
Gretchen H. Moss, Deputy Clerk

TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 2021-14812                                      DIVISION "H"

ST. LUKE #2, LLC

VERSUS

HERMES HEALTH ALLIANCE, LLC

FILED: _____          _____
                                              DEPUTY CLERK

### EX PARTE MOTION TO ASSIGN NEW A CAUSE NUMBER FOR THE SEVERED THIRD-PARTY DEMAND

NOW INTO COURT, through undersigned counsel, comes Defendant, SEDGWICK CLAIMS MANAGEMENT SERVICES INC. ("Sedgwick"), which moves this Court to effectuate its previous Order to sever the third-party petition from the main demand by ordering the Clerk of Court to assign a new cause number and redesignate the third-party demand as an original petition for damages. Said Order is attached hereto as Exhibit A. The relief applied for herein is one to which Sedgwick is clearly entitled without supporting proof. As such, this Honorable Court may grant this motion without hearing the adverse party. *See* La. Code of Civ. Pro. Art. 963.

WHEREFORE, Sedgwick prays for the granting of this motion and for entry of an order mandating the Clerk of Court to assign a new cause number for the third-party demand filed by Hermes Health Alliance, LLC and to redesignate the same as an original petition for damages.

Respectfully submitted,

Bruce R. Wilkin, LSBA #40210
Artis G. Ulmer, III, LSBA #36290
Shackelford, Bowen, McKinley & Norton, LLP
717 Texas Ave., 27th Floor
Houston, Texas 77002
832.415.1773 direct
832.565.9030 fax
bwilkin@shackelford.law
aulmer@shackelford.law

*Attorneys for Sedgwick Claims Management Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May 2023 a true and correct copy of the foregoing has been served upon all known counsel of record by via email.

Artis G. Ulmer, III

TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 2021-14812                                        DIVISION "H"

ST. LUKE #2, LLC

VERSUS

HERMES HEALTH ALLIANCE, LLC

FILED: _____        _____
                                                · DEPUTY CLERK

## ORDER GRANTING SEDGWICK'S EX PARTE MOTION TO ASSIGN A NEW CAUSE NUMBER FOR THE SEVERED THIRD-PARTY DEMAND

Considering Defendant, Sedgwick Claims Management Services, Inc.'s, Ex Parte Motion to Assign a New Cause Number for the Severed Third-Party Demand, the court is of the opinion said motion should be, and is hereby, **GRANTED.**

**IT IS HEREBY ORDERED** that the Clerk of Court assign a new cause number for the Third-Party Demand filed by Hermes Health Alliance, LLC.

**IT IS FURTHER ORDERED** that the Clerk or Court redesignate the Third-Party Demand as an Original Petition for Damages.

Covington, Louisiana, this 30th day of _May_ 2023

_____
Honorable Alan A. Zaunbrecher
District Judge

TWENTY-SECOND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 2021-14812                                      DIVISION " H "

ST. LUKE #2, LLC

VERSUS

HERMES HEALTH ALLIANCE, LLC

FILED: _____        _____
                                               DEPUTY CLERK

## DILATORY EXCEPTION OF PREMATURITY, ANSWER, AFFIRMATIVE DEFENSES, RECONVENTIONAL DEMAND AND THIRD-PARTY DEMANDS

NOW INTO COURT, through undersigned counsel, comes Hermes Health Alliance, LLC (hereinafter "Hermes"), a Louisiana limited liability company domiciled in the Parish of St. Tammany, State of Louisiana who responds to the Petition of St. Luke #2, LLC (hereinafter "St. Luke") filed November 15, 2021, as follows:

### DILATORY EXCEPTION OF PREMATURITY

Hermes asserts the Dilatory Exception of Prematurity to St. Luke's claims for the reasons more fully set forth in the attached memorandum.

### ANSWER

The first unnumbered paragraph of the petition requires no response other than noting that St. Luke's failure to specify its Parish of domicile and affirmatively plead that St. Luke's is a Louisiana liability domiciled in the Parish of Orleans, State of Louisiana.

1.

Paragraph I of the petition is admitted and Hermes further pleads that it is domiciled in the Parish of St. Tammany, State of Louisiana.



2.

Paragraph II of the petition is admitted.

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

3.

The first two sentences of Paragraph III of the petition are admitted. The remaining allegations of Paragraph III are denied. Further answering, the Lease Extension is a written document and is the best evidence of its contents. In further response, while St. Luke's alleges that capital improvements described in the Lease Extension were "significant repairs required" that is misleading. What was "significant" was the "cost" of the contemplated improvements - $2,500,000. The intent being that the contemplated improvements would both improve the fit and finish of the building and further extend its useful life. The building was clearly already fully habitable at the time the Lease Extension was signed; otherwise, St. Luke's, as a prudent business entity caring for elderly residents, would not have occupied it. Likewise, the Louisiana Department of Health would not have permitted St. Luke's to continue occupying the Leased Premises. The contemplated improvements were never to make the building habitable, because it was already habitable. Furthermore, as St. Luke's admits, Hermes' obligation to make the capital improvements identified in the Lease Extension was subject to a condition precedent, more particularly, Hermes ability to refinance a loan with First NBC Bank. St Luke's had the opportunity to assist Hermes in obtaining a new loan to get an additional $2,500,000.00 by extending its lease term from 5 years to 7 years but St. Luke's refused this request. Shortly thereafter, First NBC was closed and taken over by the FDIC. Hermes could not get its loan refinanced and the condition precedent (i.e., loan funding) was never satisfied; therefore, Hermes was never under any contractual obligation to make additional improvements to the Building. Nevertheless, Hermes has still done so with limited cash flow. Hermes purchased and had erected new chillers and piping for the HVAC system, repaired the roof as-needed, rebuilt the elevators, added additional landscaping, and generally performed all required upkeep of the building. The managers and owners of St. Luke's were and are sophisticated businesspersons. They would not have continued operating a Level 4 nursing facility within the Building if the leased premises had not been safe and habitable for the many elderly residents for whom they were responsible.



4.

Paragraph IV of the petition is denied.

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

5.

The allegations of the first two sentences of Paragraph V of the petition are admitted. The remaining allegations of Paragraph V are denied.

6.

The allegations of Paragraph VI of the petition are admitted.

7.

The allegations of Paragraph VII of the petition are admitted.

8.

The allegations of Paragraph VIII are denied, as written. Hermes had no obligation to provide a generator because the condition precedent (i.e., loan financing for additional improvements) described in defendants answer to paragraph 3 was never satisfied. Further answering, St. Luke's, as well as the other tenants of the Building, leased the premises with the understanding that the Building had a standby generator sufficient to provide power for essential services, but not HVAC.

9.

For lack of sufficient information to justify a belief therein, the allegations of Paragraph IX of the plaintiff's petition are denied. Further answering, St. Luke's had been searching for a reason to break the Lease for several months before Hurricane Ida damaged the building. St. Luke's had bought/leased real estate that was owned by First NBC Bank near the Hermes Building planning to build its own building on it. During the construction period, St. Luke's sought a short-term accommodation with another landlord and had tried to relocate its nursing home facility from the west side of the Mississippi River to the east side of the river. However, this was contrary to the LDH regulations before Hurricane Ida damaged the Hermes roof and Building. Hurricane Ida was simply St. Luke's excuse given LDH to break the lease and move to the East Bank. St. Luke's operated in bad faith and with total disregard for its contractual obligations.



10.

The allegations of Paragraph X of the petition are denied, as written.

Submitted Date: 3/14/2022 1:37 PM    File Date: 3/17/2022 11:40 AM Case Number: 202114812    St. Tammany Parish, LA    Deputy Clerk: Gretchen Moss

11.

The allegations of Paragraph XI of the petition are denied, as written.

12.

The allegations of Paragraph XII of the petition are denied, as written. The Lease is a written document and is the best evidence of its contents. Hermes notified St. Luke's of its desire to repair the Property, but its ability to do so was contingent upon Hermes' claim with its own insurer(s) to timely adjust and pay for covered damages to the Property including the cost to repair the hurricane damaged roof and other damages to the premises.

13.

The allegations in the first sentence of Paragraph XIII of the petition are admitted. The remaining allegations of Paragraph XIII of the petition state legal conclusions that require no response but are denied out of an abundance of caution. Further answering, although Hermes did initially communicate its position that FFE was subject to its lessor's privilege and could not be removed it nonetheless cooperated with St. Luke's for many movables that were subject to other lender's UCC claims to be removed. Additionally, it became clear that much of St. Luke's FFE was an impediment to remediating, much re-leasing, the premises. This was particularly the case with the patient hospital beds that took up a significant portion of the leased premises and had been damaged by the Hurricane Ida storm conditions. Both verbally and in writing, Hermes demanded St. Luke's remove all of the beds and other personal belongings it had left behind while hastily departing the leased premises. St. Luke's has refused to remove its beds and most of its other furnishings. The result has been constructive possession by St. Luke's of the Leased Premises, thereby requiring Hermes to store St. Luke's beds and other personal belongings. Further answering, Section C(2) of the Lease Extension requires St. Luke's to obtain a final judgment of the court before the Lease is terminated. To Hermes' knowledge, it has never done so. Absent such a court judgment, the Lease has remained and will continue to remain in effect until it terminated in accordance with the terms of the Lease, as extended, and until petitioner removes its beds and other personal belongings.



Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

14.

The allegations in the first sentence of Paragraph XIV of the petition state legal conclusions that require no response but are denied out of an abundance of caution. The allegations in the second sentence of Paragraph XIV of the petition are denied. The chapel was constructed and furnished using funds borrowed or contributed by Hermes and its owners. The allegations in the third and fourth sentence of Paragraph XIV of the petition are denied, as written. Further answering, the items in the Hermes' chapel are owned by Hermes and no third parties have any interest in them. The remaining allegations of Paragraph XIV of the petition are denied. Further answering, the Hermes chapel was constructed for use by all tenants of the Hermes' Building, their residents, and their guests.

15.

As the allegations of Paragraph XV of the petition repeat St. Luke's prior allegations; accordingly, Hermes' responds to Paragraph XV by reiterating all admissions, denials, and additional responses pled in response to Paragraphs I – XIV of the petition.

16.

The allegations of Paragraph XVI of the petition state legal conclusions that require no response but are denied out of an abundance of caution.

17.

The allegations in the first sentence of Paragraph XVII of the petition state legal conclusions that require no response but are denied out of an abundance of caution.

18.

The allegations of Paragraph XVIII of the petition refer to the Lease, a written document, which is the best evidence of its contents and the allegations of the allegations of Paragraph XVIII of the petition are denied to the extent that they are in conflict with other provisions of the Lease Extension and Lease [see for instance, Section C(2) of the Lease Extension which requires St. Luke's to obtain a final judgment of the court before the Lease is terminated] and the Settlement, Release, and Indemnity Agreement and Agreement to Extend Lease executed by St. Luke, Hermes and other third-parties.



Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

19.

The allegations of the first three sentences of Paragraph XIX of the petition are denied, as written. The allegations of the fourth sentence of Paragraph XIX of the petition refer to the Lease, a written document, which is the best evidence of its contents and the allegations of the fourth sentence of Paragraph XIX of the petition are denied to the extent that they conflict with the terms of the Lease, as amended by the Parties and also when read in connection with the other agreements executed by the Parties, namely the Settlement, Release, and Indemnity Agreement and Agreement to Extend Lease executed by St. Luke, Hermes and other third-parties.

20.

The allegations of Paragraph XX of the petition refer to the Lease, a written document, which is the best evidence of its contents and the allegations of Paragraph XX of the petition are denied to the extent that they contradict with the terms of the Lease, as amended by the Parties and also when read in connection with the other agreements executed by the Parties, namely the Settlement, Release, and Indemnity Agreement and Agreement to Extend Lease executed by St. Luke, Hermes and other third-parties.

21.

The allegation of Paragraph XXI of the petition are denied, as written. Further answering, Hermes requested that St. Luke's remove its beds and other personal property so Hermes can lease the former St. Luke's space to other tenants, but St. Luke's has refused to do so. The remaining allegations of Paragraph XXI of the petition refer to the Lease, a written document, which is the best evidence of its contents and the allegations of Paragraph XXI of the petition are denied to the extent that they conflict with the terms of the Lease, as amended by the Parties and also when read in connection with the other agreements executed by the Parties, namely the Settlement, Release, and Indemnity Agreement and Agreement to Extend Lease executed by St. Luke, Hermes and other third-parties.

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss



22.

The allegation in the first two sentences of Paragraph XXII of the petition are admitted. The remaining allegation of Paragraph XXII state legal conclusions requiring no response but are denied out of an abundance of caution.

23.

As the allegations of Paragraph XXIII of the petition repeat St. Luke's prior allegations; accordingly, Hermes' responds to Paragraph XXIII by reiterating all admissions, denials, and additional responses pled in response to Paragraphs I – XXII of the petition.

24.

The allegations in the first two sentences of Paragraph XXIV of the petition are admitted. The remaining allegations of Paragraph XXIV of the petition are denied.

25.

The allegations of Paragraph XXV of the petition are denied. Further answering, to the Lease to which petitioner refers is a written document, which is the best evidence of its contents thereof. Petitioner's allegations conflict with the terms of the Lease, as amended by the Parties and also when read in connection with the other agreements executed by the Parties, namely the Settlement, Release, and Indemnity Agreement and Agreement to Extend Lease executed by St. Luke, Hermes and other third-parties and therefore are denied.

26.

As the allegations of Paragraph XXVI of the petition repeat St. Luke's prior allegations; accordingly, Hermes' responds to Paragraph XXVI by reiterating all admissions, denials, and additional responses pled in response to Paragraphs I – XXV of the petition.

27.

The allegations of Paragraph XXVII of the petition are denied. Further answering, the Lease referred to by petitioner is a written document, which is the best evidence of its content. Further answering, the allegations of Paragraph XXVII of the petition are denied to the extent that they conflict with the terms of the Lease, as amended by the Parties and also when read in connection with the other agreements executed by the Parties, namely the Settlement, Release, and



Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

Indemnity Agreement and Agreement to Extend Lease executed by St. Luke, Hermes and other third-parties.

28.

Hermes denies any other allegations contained in St. Luke's petition except as admitted herein above.

29.

## AFFIRMATIVE DEFENSES

In response to St. Luke's petition, Hermes pleads the following affirmative defenses:

a)   Bad faith breach of contract;

b)   Collateral source- as required by the Lease,  St. Luke's had insurance coverage in place to cover some or all the losses alleged in its petition;

c)   Settlement and compromise;

d)   Negligence;

e) All affirmative defenses raised in particularity in the defendant's answers above; and

f) any other affirmative defenses that may become known through discovery in this proceeding.

## RECONVENTIONAL DEMAND

AND NOW, assuming the position of Plaintiff-in-reconvention, Hermes avers as follows:

30.

Made Defendant-in-reconvention is St. Luke #2, LLC, a Louisiana limited liability company, domiciled in Orleans Parish (hereinafter "St. Luke" or "St. Luke's").

31.

Defendant-in-reconvention is indebted to Plaintiff-in-reconvention for past due Rent, Additional Rent (Damages),  Holdover Rent, and past due CAM charges, as follows:

a)   Rent from September 9, 2021 to November 8, 2021          - $134,424.00

b)   Additional Rent for damages caused by St. Luke's hasty move from the Leased
   Premises without cleanup or repair of the Leased Premises          - $100,000.00
   (estimated).

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

c) Holdover Rent from November 9, 2021 until St. Luke's vacates the Leased Premises by removing its beds and personal property     -$100,818.00

per month, ongoing

d) Past due CAM charges prior to September 8, 2021     - $66,422.00

e) Past due CAM charges from September 9, 2021 to November 8, 2021   - $21,405.00

32.

St. Luke's has refused to make any payments of Rent, Additional Rent, Holdover Rent, and past due CAM charges even though it did not totally vacate the Leased Premises. More specifically, St. Luke has left in the Leased Premises over a hundred hospital beds and has refused to remove them despite written demand. Consequently, a significant portion of the Leased Premises remains in the actual or constructive possession of St. Luke's.

33.

The Lease provides for a contractual penalty of five times the rent per day, with attorney's fees and related court and other costs.

34.

Hermes is entitled to a money judgment against St. Luke for all past due Rent, Additional Rent (Damages), Holdover Rent, contractual penalties, reasonable attorney's fees, all costs of these proceedings and interest from the date due until paid.

THIRD PARTY DEMANDS

AND NOW, assuming the position of Third-Party Plaintiff, Hermes respectfully represents:

35.

Made Third-party Defendants herein are the following parties:

a) Mr. Lawrence E. Stansberry, a person of the full age of majority and domiciliary of Jefferson Parish, Louisiana;

b) Certain Underwriters at Lloyd's, London, a foreign insurer doing business in the State of Louisiana and Parish of St. Tammany;



Submitted Date: 3/14/2022 1:37 PM File Date: 3/17/2022 11:40 AM Case Number: 2021114812 St. Tammany Parish, LA Deputy Clerk: Gretchen Moss

c) Indian Harbor Insurance Company, a foreign insurer doing business in the State of Louisiana and Parish of St. Tammany;

d) QBE Specialty Insurance Company, a foreign insurer doing business in the State of Louisiana and Parish of St. Tammany;

e) Steadfast Insurance Company, a foreign insurer doing business in the State of Louisiana and Parish of St. Tammany;

f) General Security Indemnity Company of Arizona, a foreign insurer doing business in the State of Louisiana and Parish of St. Tammany;

g) United Specialty Insurance Company, a foreign insurer doing business in the State of Louisiana and Parish of St. Tammany;

h) Lexington Insurance Company, a foreign insurer doing business in the State of Louisiana and Parish of St. Tammany;

i) Safety Specialty Insurance Company, a foreign insurer doing business in the State of Louisiana and Parish of St. Tammany;

j) HDI Global Specialty SE, a foreign insurer doing business in the State of Louisiana and Parish of St. Tammany;

k) Old Republic Union Insurance Company, a foreign insurer doing business in the State of Louisiana and Parish of St. Tammany;

l) Sedgwick Claims Management Services, Inc. a foreign corporation registered to do business in the State of Louisiana (hereinafter "SDA"); and

m) Applied Building Sciences, Inc., a South Carolina corporation that is both registered, and doing business, in the State of Louisiana (hereinafter "ABS").

36.

Mr. Lawrence E. Stansberry signed as personal guarantor of the Lease and Lease Extension executed by Plaintiff and Defendant-in-Reconvention St. Luke' #2, L.L.C. and Third-party Plaintiff, Hermes Health Care Alliance, L.L.C. As the guarantor of the Lease and the Lease Extension, Third-Party Defendant Lawrence E. Stansberry is liable for all sums to which Hermes



Submitted Date: 3/14/2022 1:37 PM    File Date: 3/17/2022 11:40 AM Case Number: 2021114812    St. Tammany Parish, LA    Deputy Clerk: Gretchen Moss

Health Alliance is entitled to recover from St. Luke's #2, L.L.C. for the reasons and causes set forth in the above Reconventional Demand.

37.

The Third-Party Defendants listed in Paragraph 35 b-k are referred to collectively as "Hermes' Property Insurers".

38.

The Hermes Property Insurers are liable to Hermes for all damages, statutory penalties, attorney's fees, costs, and legal interest from the date of judicial demand until paid the reasons set forth hereinbelow.

39.

Hermes' Property Insurers issued an All-Risk Commercial Property Insurance Policy that named "Hermes Health Alliance, LLC" as a Named Insured with an effective policy period from October 28, 2020 – October 28, 2021 and a general policy limit of $16,710,000.00 (the "All-Risk Commercial Property Insurance Policy").

40.

The All-Risk Commercial Property Insurance Policy was secured to provide coverage for Hermes' property located at 4201 Woodland Avenue, New Orleans, Louisiana, 70131. Hermes' property includes the "Property", "Building" and former "Leased Premises" as those terms are alleged by St. Luke in St. Luke's petition filed November 15, 2021.

41.

Prior to Hurricane Ida impacting Hermes' property on, or about, August 29, 2021, the "Property", "Building" and "Leased Premises" were all in functioning condition, fully fit for occupancy, and were in fact being occupied by various tenants, including St. Luke's. Upon information and belief, if the Leased Premises had not been fit for use, then St. Luke's would have been illegally operating a Level 4 nursing home in a significant portion of Hermes' Property over more than a ten-year time period prior to the occurrence of Hurricane Ida.



Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

42.

When Hurricane Ida impacted Hermes' property on, or about, August 29, 2021, Hermes' property sustained significant damage from the storm conditions including wind, positive and negative pressures on the building envelope, wind driven rain intrusion, and resulting damage to the interior and exterior of the buildings.

43.

Hermes representatives were present in the building when Hurricane Ida hit. They, along with the staff and residents of St. Luke's, were in the best possible position to witness, observe, and document damages from Hurricane Ida.

44.

Despite having just survived a Category 4 Hurricane, representatives of both Hermes and St. Luke's were able to photographically document storm damages to both Hermes' and St. Luke's property.

45.

These photographs taken by both Hermes and St. Luke clearly depict water driven through storm created openings in the building envelope of the windows, fenestrations, roof, and related systems. The prevailing winds on the building for Hurricane Ida were from the east, so the eastern side of the building bore the brunt of the hurricane force winds and driven rain. These damages caused by Hurricane Ida were both catastrophic and unprecedented.

46.

Hermes began mitigating the damages caused by Hurricane Ida as soon as reasonably possible.

47.

As St. Luke's alleged in its petition, that St. Luke partially vacated its former Leased Premises within Hermes' Building on August 30, 2021, or shortly thereafter.

48.

Within days of Hurricane Ida impacting Hermes' Property, Hermes filed an insurance claim with Hermes' Property Insurers.

49.

In response, Hermes' Property Insurers assigned SDA as their representative to adjust Hermes' insurance claim for Hurricane Ida storm damage.

50.

On September 10, 2021, representatives of SDA advised Hermes of the following:

"We acknowledge receipt of the claim for damage related to Hurricane Ida, for the property at 4201 Woodland Dr, New Orleans, LA.[3]"

51.

On Thursday, September 23, 2021, SDA sent Mr. Lance Ulrick, a field adjuster with SDA, and two representatives of JS Held, one of whom was Mr. Timothy Eplee.

52.

Despite Hermes' filing an insurance claim for "...damage related to Hurricane Ida" the three field representatives did not inspect most of the damage to Hermes' property, but instead limited their inspection to only the portions of the building envelope.

53.

Hermes complained to SDA about the limited scope of the September 23rd inspection which excluded an inspection of the interior of the Building. SDA scheduled additional inspections for October 6-8, 2021.

54.

Beginning Wednesday, October 6, 2021, SDA had full access to all of Hermes' property for several days. Along with SDA, representatives of JS Held and ABS were present. Also present was Ms. Heather McGowan as a representative of St. Luke's and St. Luke's legal counsel, Attorney Peter Connick, esq.[4]

55.

At Hermes request, United Environmental, LLC came to the Building on October 6-8, 2021 and afterwards to perform an independent moisture map of the damaged property. This was at the



---

[3] Ex. A – Sept 10, 2021 email from Tim Bazarnic with SDA.
[4] Ex. B-1 and Ex. B-2 October 7, 2021 transmittal and October 6, 2021 inspection sign-in sheet.

suggestion of St. Luke's via a September 30, 2021 report that St. Luke's had procured from TES and is the same report quoted in Paragraph X of St. Luke's petition.

56.

By October 11, 2021, Hermes had identified and collected photographs taken when Hurricane Ida impacted the Hermes' property. These are the photographs referenced in Paragraphs 43-45 herein. Hermes forwarded copies of these photographs to SDA.

57.

These photographs sent to SDA consisted of two sets of photographs. The first set of photographs were taken by Hermes' building maintenance personnel who stayed in the building when Hurricane Ida impacted. The second set of photographs were taken by representatives of St. Luke's and provided to Hermes via St. Luke's counsel.

58.

Hermes provided these photographs to SDA as documentary evidence of the specific damage to Hermes' building.

59.

On October 18, 2021, representatives of SDA acknowledged receipt of these photographs sent October 11, 2021.

60.

On October 21, 2021, upon receipt of United Environmental, LLC's moisture mapping report, Hermes forwarded a complete and unredacted copy to SDA's representative adjusters.

61.

On Monday, October 25, 2021, Dr. Michael N. Pittman, MD, Hermes' managing member signed an Affidavit incorporating the United Environmental, LLC moisture mapping report as an attachment by reference and submitting it to SDA as a Preliminary Sworn Proof of Loss.

62.

On November 10, 2021, Hermes forwarded a copy of St. Luke's petition in this matter to SDA's representatives.



63.

By letter from SDA dated December 16, 2021 and received by Hermes' counsel on December 20, 2021, Hermes' Property Insurers issued a Reservation of Rights letter to Hermes.[5]

64.

In this Reservation of Rights letter, SDA stated that the ABS report had already been provided to Hermes and was also included with the December 16, 2021 letter as an enclosure. However, that statement was incorrect. Although Hermes had requested that SDA furnish it with a copy of the ABS report including the attached exhibits original to ABS' report. SDA has repeatedly refused to provide Hermes with a complete copy of the ABS report, including all original exhibits.

65.

The December 16, 2021 Reservation of Rights letter quotes the following from ABS' report:

- "...At the time of ABS' site survey, no evidence of roof punctures or damage were present...."

- "These locations had evidence of long-term water intrusion and could not be correlated with a breach in the roof or building envelope, ruling out the possibility of wind-related damage from Hurricane Ida causing the leaks."

- "The windows lacked evidence of displacement, movement or deflections of fenestration components perpendicular to the surface of the fenestration, meaning there was no wind damage to the fenestrations except those previously identified."

- "ABS evaluated potential sources of interior moisture damage. ... Generally, the widespread damages were related to HVAC and plumbing issues unrelated to Hurricane Ida."[6]

66.

The two sets of photographs that Hermes sent to SDA on October 11, 2021 depict evidence of unprecedented and widescale water damage, water driven through storm created penetrations by wind in numerous windows, walls, and the building envelope.



---

[5] Ex. C - Reservation of Right Letter
[6] Id.

Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM Case Number: 202114812   St. Tammany Parish, LA   Deputy Clerk: Gretchen Moss

67.

At the time of this filing, it is unknown whether or not SDA shared these photographs with ABS. What is known is that the ABS report does not mention the photographs that were sent to SDA on October 11, 2021.

68.

The ABS report either intentionally or negligently ignores the best evidence of the cause and extent of damages available.

69.

ABS discounted the Category 4 Hurricane conditions as the primary cause of the widespread damage throughout Hermes' property and generally blames the damages on the age of the roof, and lack of maintenance to the HVAC and plumbing systems.

70.

When Hurricane Ida impacted Hermes' property the roof was functioning until the storm caused unprecedented damage to the building.

71.

If SDA failed to provide ABS with the two sets of photographs, then SDA was either negligent in preparing its report or it intentionally prepared the report in such a way as to deprive Hermes of the insurance benefits to which it was entitled. Whether negligently excluded or intentionally, the actions of SDA deprived ABS of the best evidence available to evaluate cause and effect of Hurricane Ida.

72.

Alternatively, if ABS was provided with the two sets of photographs, and ABS' chose to ignore them when evaluating Hermes' claim or colluded if ABS colluded with SDA to exclude the best evidence available of the conditions before and after the hurricane. ABS has clearly acted in bad faith with the intent to deprive Hermes of the insurance benefits for which Hermes is entitled.



Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM Case Number: 202114812   St. Tammany Parish, LA   Deputy Clerk: Gretchen Moss

73.

Alternatively, ABS and SDA colluded and engaged in a a civil conspiracy between and among SDA, ABS and/or Hermes' Property Insurers.

74.

The days of inspection (September 23, and October 6-8, 2021) as well as the Preliminary Sworn Proof of Loss (October 25, 2021) all constituted satisfactory proofs of loss to Hermes' Property Insurers as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §22:1892 and §22:1973.

75.

To date, and despite being provided with satisfactory proofs of loss, Hermes' Property Insurers has chosen to deny or underpay Hermes claim. Defendant is therefore in violation of La. R.S. §22:1892 and §22:1973.

76.

Hermes' Property Insurers have failed to explain its denial and or refusal to unconditionally tender the undisputed amount owed to Hermes.

77.

Hermes' Property Insurers have failed to investigate or document their reasons for its denial or refusal to unconditionally tender the undisputed amount owed to Hermes.

78.

Hermes' Property Insurers failure to timely and adequately compensate Hermes for its substantial losses makes them responsible for all resulting special and general damages.

79.

Given the thorough reports made by competent and experienced engineers and investigators that were provided by Hermes to its Property Insurers, the damage that was readily apparent from visual inspections, the before and after photographs made available to SDA and apparently ABS, and the historical narratives recited by Hermes' employees and tenants of the buildings, which collectively establish *prima facia* the extent of the damage caused by Hurricane Ida on the Hermes' property, the decision of Hermes' Property Insurers to *not* make adequate and

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

timely payment for the damages sustained by Hermes, despite the overwhelming proof of loss provided them, is arbitrary, capricious, and in made in bad faith. Accordingly, Hermes' Property Insurers are jointly and severally liable for their failure to deal fairly with its insured, and consequently liable to Hermes for all damages under the law for damages sustained by Hermes due to Hurricanes Ida as well as statutory penalties and attorney's fees.

80.

Upon information and belief, Hermes Property Insurers misrepresented to Hermes the terms and conditions of the policy.

81.

Upon information and belief, Hermes Property Insurers conducted the investigation and claims handling for Complainants' claims in bad faith as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §22:1892 and 1973.

82.

Upon information and belief, Hermes Property Insurers, manipulated its pricing software to artificially suppress the cost of repairs.

83.

Hermes has incurred and will incur additional expenses in restoring the Property because of Hermes Property Insurers failure to timely compensate them for their substantial and covered losses.

84.

Hermes has incurred and will continue to incur loss of use because of the damages caused to their Property by Hurricane Ida that will be incurred during the repair of the Property.

85.

Hermes' Property Insurers were arbitrary and capricious in the following illustrative particulars:

a.) failing to properly investigate Hermes' insurance claim;

b.) arbitrarily denying Hermes' insurance claim;

c.) failing to comply with the terms of its own Policy;



Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA Deputy Clerk: Gretchen Moss

d.) misrepresenting the terms of the Policy and

e.) purposely and/or negligently misrepresented to Petitioner the terms and conditions of the Policy.

86.

Hermes was prepared to remediate the storm damage to its property; however, the denial of Hermes' insurance claim by Hermes' Property Insurers has made that financially impossible.

87.

Hermes has incurred, and will incur, damages because of the negligent and/or intentional actions of Hermes' Property Insurers, SDA and ABS.

WHEREFORE, defendant Hermes Health Alliance, LLC prays that:

a.) as Exceptor to the original petition of St. Luke #2, LLC, that Hermes' Dilatory Exception of Prematurity be sustained after contradictory hearing;

b.) as to the original petition of St. Luke #2, LLC, that Hermes' Answer be deemed good and sufficient and that after due proceedings are had that there be judgment rendered dismissing St. Luke's demands with prejudice, awarding Hermes its reasonable attorney's fees and all cost;

c.) as Plaintiff-in-Reconvention, that St. Luke #2, LLC be served with this Reconventional Demand along with a citation under penalty of default and after due proceedings are had that there be judgment rendered as prayed for including an award of all damages, contractual penalties, reasonable attorney's fees, all cost and interest from the date of judicial demand until paid along with any other relief to which Hermes may be entitled;

d.) as Third-Party Plaintiff against Mr. Lawrence E. Stansberry, that he be served with this Third-Party Petition along with a citation under penalty of default and after due proceedings are had that there be judgment rendered as prayed for including an award in favor of Hermes and against Mr. Stansberry both in defense of St. Luke's petition and in prosecution of Hermes' Reconventional Demand;

e.) as Third-Party Plaintiff against Certain Underwriters at Lloyd's, London, Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance



Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM Case Number: 202114812   St. Tammany Parish, LA   Deputy Clerk: Gretchen Moss

Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, Safety Specialty Insurance Company, HDI Global Specialty SE, Old Republic Union Insurance Company, Sedgwick Claims Management Services, Inc. and Applied Building Sciences, Inc. that each be served with a certified copy of the original petition of St. Luke #2, LLC and this Third Party Demand along with a citation under penalty of default and after due proceedings are had that there be judgment rendered as prayed for including an award of all damages, statutory penalties, reasonable attorney's fees, all cost and interest from the date of judicial demand until paid along with any other relief to which Hermes may be entitled;

Respectfully submitted on the 14th day of March 2022.

Willard O. Lape, III (Trey)
LA Bar Roll No. 31494
1966 N. Highway 190, Suite B
Covington, LA 70433
Telephone: (985) 246-7933
Email: trey@lapelawfirm.com
*Attorney for Hermes Health Alliance, LLC*

*Service instructions are on the following page.*

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss



PLEASE SERVE:

St. Luke #2, LLC
Through its Attorneys of Record:
Connick and Connick, L.L.C.
Attn. Mr. William P. Connick, Esq.
3421 N. Causeway Blvd., Ste. 408
Metairie, Louisiana 70002


Mr. Lawrence E. Stansberry
926 Amelia Street
Gretna, LA 70053


Sedgwick Claims Management Services
Through its Registered Agent:
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802


Applied Building Sciences, Inc.
Through its Registered Agent:
C T Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM Case Number: 2021114812   St. Tammany Parish, LA   Deputy Clerk: Gretchen Moss



TWENTY-SECOND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 2021-14812                                            DIVISION "H"

ST. LUKE #2, LLC

VERSUS

HERMES HEALTH ALLIANCE, LLC

FILED:_____          _____
                                        DEPUTY CLERK

RULE TO SHOW CAUSE

Considering the Dilatory Exception of Prematurity:

IT IS ORDERED that St. Luke #2, LLC appear and show cause on the _12_ day of _May_, 2022, at _9:00_ a.m./p.m. in the St. Tammany Parish Court house, Covington, Louisiana, Division "H", why the Dilatory Exception of Prematurity should not be granted as prayed for.

Signed in Covington, Louisiana, on this _21_ day of _March_ 2022

_____
DISTRICT JUDGE

PLEASE SERVE:

St. Luke #2, LLC
Through its counsel of record:
William Peter Connick
CONNICK & CONNICK, LLC
3421 N. Causeway Boulevard, Suite 408
Metairie, Louisiana 70002



TWENTY-SECOND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 2021-14812                                    DIVISION "H"

ST. LUKE #2, LLC

VERSUS

HERMES HEALTH ALLIANCE, LLC

FILED: _____        _____
                                                    DEPUTY CLERK

MEMORANDUM IN SUPPORT OF
HERMES' DILATORY EXCEPTION OF PREMATURITY

MAY IT PLEASE THE COURT:

Hermes Health Alliance, LLC submits the following Memorandum in Support of its

Dilatory Exception of Prematurity.

Hermes Health Alliance and St. Luke's #2, L.L.C. entered into a lease agreement in or

about 2008, which was in effect through November 10, 2016. This Agreement to Extend Lease,

Article IV, Section B provides in part:

> "Tenant affirmatively covenants and agrees that from the inception of the Option
> Term of the Lease (November 10, 2016) until the end of the Option Term
> (November 9, 2021) (the "Extended Term"), Tenant will not terminate the Lease
> and relocate St. Luke's Nursing Home and its 104 beds authorized for use at the
> Leased Premises . . .or otherwise vacate the Leased Premises **unless (1) there is a
> final judgment of a Louisiana State court that the Leased Premises is not
> suited by reason of its physical condition for use as a nursing home which is
> principally funded by Medicaid and Medicare for Medicare and Medicaid
> eligible residents.**"[1]

St. Luke alleges in its Petition that the lease was terminated as of August 30, 2021. However, no

Louisiana State court has ever rendered a final judgment that the Leased Premises is not suited

by reason of its physical condition for use as a nursing home. Consequently, those portions of

St. Luke's Petition that seek any relief without first satisfying the condition precedent of "a final

judgment of a Louisiana State Court..." are premature. The dilatory exception of prematurity is

codified in Louisiana C.C.P. Art. 926. The dilatory exception of prematurity raises the issue of

whether a cause of action arises when some prerequisite or condition has not been fulfilled.



Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM Case Number: 2021114812   St. Tammany Parish, LA   Deputy Clerk: Gretchen Moss

Keating vs. Van Deventer, 153 So.3d 1200, 2014-0157 (La. App. 1st Cir. 09/19/14). "The dilatory exception of prematurity questions whether the cause of action has matured to the point where it is ripe for judicial determination." Williamson v. Hospital Service Dist. No. 1 of Jefferson, 2004-0451 (La.12/1/04), 888 So.2d 782, 785. An action is premature when it is brought before the right to enforce it has accrued. Id., LA C.C.P. Art. 423.

St. Luke's lawsuit centers around termination of its lease with Hermes due to its physical condition. However, St. Luke's has not obtained a final judgment from a Louisiana State court that the Leased Premises is not suited by reason of its physical condition for use as a nursing home, which is a condition precedent to terminating of the Lease. Thus, Hermes' Exception of Prematurity should be granted and those portions of St. Luke's petition that are premature be dismissed at its cost.

Willard O. Lape, III (Trey)
LA Bar Roll No. 31494
1966 N. Highway 190, Suite B
Covington, LA 70433
Telephone: (985) 246-7933
Facsimile: (985) 590-5112
Email: trey@lapelawfirm.com
*Attorney for Hermes Health Alliance, LLC*

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Memorandum* has been served upon all counsel and/or parties of record by depositing same in the United States Mail, postage prepaid and properly addressed, via facsimile and/or electronic mail, on this 14th day of March 2022.

Willard O. Lape, III (Trey)



TWENTY-SECOND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 2021-14812                                                DIVISION "H"

ST. LUKE #2, LLC

VERSUS

HERMES HEALTH ALLIANCE, LLC

FILED:_____        _____
                                                              DEPUTY CLERK

### FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.

TO:    Sedgwick Claims Management Services, Inc.
       (Serve with Hermes' Third-Party Demand)

### INTERROGATORIES

The following interrogatories are to be answered fully, individually, in writing, and **under oath,** under the provisions of LA-C.C.P. Art. 1458, within thirty (30) days after service thereof; and in default of the full, complete and timely answer thereto, Hermes Health Alliance, LLC ("Hermes") demands that you pay all reasonable attorney's fees, costs, and expenses of compelling answers to the same.

INTERROGATORY NO. 1:

Please list each witness that you may call at the trial of this matter or any hearing held prior thereto, listing whether he or she is a fact or expert witness, providing a brief description of his or her expected testimony, listing his or her contact information including mailing address and telephone number.

INTERROGATORY NO. 2:

Please identify each and every document, exhibit, or thing that you may or will introduce at the trial of this matter. This request includes documents, exhibits or things that you will refer to at the trial, regardless of whether you plan to offer them into evidence. It also includes any impeachment or rebuttal evidence.

INTERROGATORY NO. 3:

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

Please provide the full name of the person(s) responding to these interrogatories, including the name, current address, job classification, and source of authority that allows the respondent to answer same.

<div align="center">REQUEST FOR PRODUCTION OF DOCUMENTS</div>

You are hereby requested to produce for inspection and copying, pursuant to LA-C.C.P. Art. 1461, the following items, to-wit:

REQUEST FOR PRODUCTION NO. 1:

Please produce a copy of your **entire** claims file, including file contents created prior to and following any denial of coverage. This request includes the files of any and all adjusters and account managers assigned to the claims involved in this lawsuit, and any and all investigation files that are not a part of the claims file.

REQUEST FOR PRODUCTION NO. 2:

Please provide a copy of every document, exhibit or thing that you reviewed in responding to this discovery.

REQUEST FOR PRODUCTION NO. 3:

Please produce a copy of each and every document, exhibit or thing that you may use at the trial of this matter, including any hearings held prior thereto. This request includes documents, exhibits or things that you will refer to at the trial, regardless of whether you plan to offer them into evidence. This also includes any impeachment or rebuttal evidence.

REQUEST FOR PRODUCTION NO. 4:

Please produce a copy of every photograph that is referenced in Paragraphs 43 through 45 of Hermes' Third-Party Demand against the Hermes Property Insurers identified therein.

REQUEST FOR PRODUCTION NO. 5:

Please produce a copy of any and all reports prepared by you and/or received by you, including all exhibits included therewith, related to your inspection(s) of property damage claims made by Hermes as a result of Hurricane Ida.

REQUEST FOR PRODUCTION NO. 6:

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021148123 St. Tammany Parish, LA Deputy Clerk: Gretchen Moss

Please produce a copy of any correspondence in any form between representatives of Applied Building Sciences and Sedgwick Claims Management Services regarding Hermes' property damage claims related to Hurricane Ida.

Respectfully submitted on this 14th day of March 2022.

The Lape Law Firm, LLC

Willard O. Lape, III (Trey)
LA Bar Roll No. 31494
1966 N. Highway 190, Suite B
Covington, LA  70433
Telephone: (985) 246-7933
Email: trey@lapelawfirm.com
*Attorney for Hermes Health Alliance, LLC_*



Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss



TWENTY-SECOND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 2021-14812                                    DIVISION "H"

ST. LUKE #2, LLC

VERSUS

HERMES HEALTH ALLIANCE, LLC

FILED:_____        _____
                                                    DEPUTY CLERK

### FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO APPLIED BUILDING SCIENCES, INC.

TO:   Applied Building Sciences, Inc.
      (Serve with Hermes' Third-Party Demand)

### INTERROGATORIES

The following interrogatories are to be answered fully, individually, in writing, and **under oath**, under the provisions of LA-C.C.P. Art. 1458, within thirty (30) days after service thereof; and in default of the full, complete and timely answer thereto, Hermes Health Alliance, LLC ("Hermes") demands that you pay all reasonable attorney's fees, costs, and expenses of compelling answers to the same.

### INTERROGATORY NO. 1:

Please list each witness that you may call at the trial of this matter or any hearing held prior thereto, listing whether he or she is a fact or expert witness, providing a brief description of his or her expected testimony, listing his or her contact information including mailing address and telephone number.

### INTERROGATORY NO. 2:

Please identify each and every document, exhibit, or thing that you may or will introduce at the trial of this matter. This request includes documents, exhibits or things that you will refer to at the trial, regardless of whether you plan to offer them into evidence. It also includes any impeachment or rebuttal evidence.

### INTERROGATORY NO. 3:

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA Deputy Clerk: Gretchen Moss

Please provide the full name of the person(s) responding to these interrogatories, including the name, current address, job classification, and source of authority that allows the respondent to answer same.

<div align="center">REQUEST FOR PRODUCTION OF DOCUMENTS</div>

You are hereby requested to produce for inspection and copying, pursuant to LA-C.C.P. Art. 1461, the following items, to-wit:

REQUEST FOR PRODUCTION NO. 1:

Please produce a copy of your **entire** file related to any inspection of the property located at 4201 Woodland Drive, New Orleans, LA, 70131 related to damages following Hurricane Ida.

REQUEST FOR PRODUCTION NO. 2:

Please provide a copy of every document, exhibit or thing that you reviewed in responding to this discovery.

REQUEST FOR PRODUCTION NO. 3:

Please produce a copy of each and every document, exhibit or thing that you may use at the trial of this matter, including any hearings held prior thereto. This request includes documents, exhibits or things that you will refer to at the trial, regardless of whether you plan to offer them into evidence. This also includes any impeachment or rebuttal evidence.

REQUEST FOR PRODUCTION NO. 4:

Please produce a copy of every photograph that is referenced in Paragraphs 43 through 45 of Hermes' Third-Party Demand against the Hermes Property Insurers identified therein.

REQUEST FOR PRODUCTION NO. 5:

Please produce a copy of any and all reports prepared by you and/or received by you, including all exhibits included therewith, related to your inspection(s) of property damage claims made by Hermes as a result of Hurricane Ida.

REQUEST FOR PRODUCTION NO. 6:

Please produce a copy of any correspondence in any form between representatives of Applied Building Sciences and Sedgwick Claims Management Services regarding Hermes' property damage claims related to Hurricane Ida.

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss



Respectfully submitted on this 14th day of March 2022.

The Lape Law Firm, LLC

_____
Willard O. Lape, III (Trey)
LA Bar Roll No. 31494
1966 N. Highway 190, Suite B
Covington, LA 70433
Telephone: (985) 246-7933
Email: trey@lapelawfirm.com
*Attorney for Hermes Health Alliance, LLC_*

Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss



St Luke #2 LLC

22nd Judicial District Court

VS  202114812 Division H

Parish of St. Tammany

State of Louisiana

Hermes Health Alliance LLC


TO:  St. Luke #2, LLC
     Through its counsel of record
     William Peter Connick
     CONNICK & CONNICK, LLC
     3421 N. Causeway Boulevard, Suite 408
     Metairie, LA  70002


GREETINGS:

YOU ARE HEREBY ORDERED TO SHOW CAUSE BEFORE

the Honorable Judge **Alan Zaunbrecher**, **Division H** on **May 12, 2022**, at **9:00 a.m.**, at the St.

Tammany Parish Justice Center, 701 N. Columbia Street, Covington, Louisiana, why the

Dilatory Exception of Prematurity should not be granted as prayed; **ALL AS PRAYED FOR**

**AND ACCORDING TO LAW.**

When applicable, a courtesy copy of all memoranda must be forwarded by FAX, mail **OR** hand delivery to the Judge's office. The **only** address for furnishing copies is: 701 N. Columbia St., Room 2010, Covington, LA 70433. The **only** FAX number for furnishing copies is 985-809-5344. Rule 3.3 of the Uniform rules of the Louisiana District Courts governs facsimile transmissions to Judges.


By order of the Honorable Judges of said Court this 03212022.


*Melissa R. Henry* Clerk of Court

By:  _Tricia Breaux_____
     Tricia Breaux, Deputy Clerk

Issued: 04/22/2022


**Counsel:**
Attorney at Law
Willard O. Lape, III
1966 N. Highway 190, Suite B
Covington, LA  70433

State of Louisiana

**Hermes Health Alliance LLC**

**TO THE DEFENDANT:** St. Luke #2, LLC, through attorney of record: Connick and Connick, L.L.C., Attn: Mr. William P. Connick, Esq., 3421 N. Causeway Blvd., Ste. 408, Metairie, LA

You are named as a defendant in the above captioned matter. Attached to this citation is a: Dilatory Exception of Prematurity, Answer, Affirmative Defenses, Reconventional Demand and Third-Party Demands

☐ Certified copy of Original Petition ☐ Certified copy of Amended Petition ☐ Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.

If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30)** days after service of the petition.

B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.

C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this    14th day of March, 2022

*Melissa R. Henry,* Clerk of Court

BY: _____
Tricia Breaux, Deputy Clerk

Issued: 04/22/2022

**Counsel:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington LA 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

State of Louisiana

**Hermes Health Alliance LLC**

**TO THE DEFENDANT:** Mr. Lawrence E. Stansberry, 926 Amelia Street, Gretna, LA 70053

You are named as a defendant in the above captioned matter. Attached to this citation is a: Dilatory Exception of Prematurity, Answer, Affirmative Defenses, Reconventional Demand and Third-Party Demands

☐ Certified copy of Original Petition ☐ Certified copy of Amended Petition ☐ Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.
    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30)** days after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   <u>14th day of March, 2022</u>

*Melissa R. Henry* Clerk of Court

BY: _____
                Tricia Breaux, Deputy Clerk

Issued: 04/22/2022

**Counsel:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington LA 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

**State of Louisiana**

**Hermes Health Alliance LLC**

**TO THE DEFENDANT:** Sedgwick Claims Management Services: Through its Registered Agent: Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, LA 70802

You are named as a defendant in the above captioned matter. Attached to this citation is a: Dilatory Exception of Prematurity, Answer, Affirmative Defenses, Reconventional Demand and Third-Party Demands

☐ Certified copy of Original Petition    ☐ Certified copy of Amended Petition    ☐ Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.
    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30)** days after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

<div align="center">THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.</div>

By order of the Honorable Judges of said Court this   <u>14th day of March, 2022</u>

*Melissa R. Henry,* Clerk of Court

BY: _____
       Tricia Breaux, Deputy Clerk

Issued: 04/22/2022

**Counsel:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington LA 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

**State of Louisiana**

## Hermes Health Alliance LLC

**TO THE DEFENDANT:** Applied Building Sciences, Inc., Through its registered agent: C T Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816

You are named as a defendant in the above captioned matter. Attached to this citation is a: Dilatory Exception of Prematurity, Answer, Affirmative Defenses, Reconventional Demand and Third-Party Demands

☐ Certified copy of Original Petition   ☐ Certified copy of Amended Petition   ☐ Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.
   If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30)** days after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   <u>14th day of March, 2022</u>

*Melissa R. Henry,* Clerk of Court

BY: _____
Tricia Breaux, Deputy Clerk

Issued: 04/22/2022
_____
**Counsel:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington LA 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.



*Melissa R. Henry*

**CLERK OF COURT**
22ⁿᵈ Judicial District Court
Parish of St. Tammany

April 22, 2022

East Baton Rouge Parish Sheriff's Office
Attn.: Civil Department
P.O. Box 3277
Baton Rouge, La. 70821

Re:    St Luke #2 LLC
        VS. 2021-14812 Division H
        Hermes Health Alliance LLC

Dear Sir:

Enclosed please find a Citation with attached certified copy of Dilatory Exception of
Prematurity, Answer, Affirmative Defenses to be served on the following:

Sedgwick Claims Management Services: Through its registered agent: Corporation Service
Company, 501 Louisiana Avenue, Baton Rouge, LA 70802

Applied Building Sciences, Inc., Through its registered agent: C T Corporation System, 3867
Plaza Tower Dr., Baton Rouge, LA 70816

Please find a check in the amount of $_____ payable to you for your services, along with
a check in the amount of $_____ payable to the Secretary of State.

After service has been made, please mail your return to this office.

Sincerely,

*Tricia Breaux*

Tricia Breaux
Deputy Clerk

1966 N HIGHWAY 190, SUITE D
COVINGTON, LA 70433

OFFICE: (985) 246-7933
FAX: (985) 590-5112
EMAIL: TREY@LAPELAWFIRM.COM

ATTORNEYS OF COUNSEL:
TIFFANY M. HITDLEBAUGH
RICHARD L. MULLER
SYLVIA G. MULLER

April 8, 2022

Clerk of Court
Parish of St. Tammany
Post Office Box 1090
Covington, LA 70434
*(Filed electronically only)*

Re:   *St. Luke #2, LLC v. Hermes Health Alliance, LLC*
      22nd Judicial District Court Docket No. 2021-14812, Division "H"

Dear Sir/Madam:

Please issue service of the (i) original petition of St. Luke #2, LLC and (ii) Hermes Health Alliance, LLC's Dilatory Exception of Prematurity, Answer, Affirmative Defenses, Reconventional Demand and Third-Party Demands to the following named third-party defendants through the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA, 70809:

1.)   Certain Underwriters at Lloyd's, London;
2.)   Indian Harbor Insurance Company;
3.)   QBE Specialty Insurance Company;
4.)   Steadfast Insurance Company;
5.)   General Security Indemnity Company of Arizona;
6.)   United Specialty Insurance Company;
7.)   Lexington Insurance Company;
8.)   Safety Specialty Insurance Company;
9.)   HDI Global Specialty SE; and,
10.)  Old Republic Union Insurance Company.

Submitted Date: 4/12/2022 11:30 AM   File Date: 4/12/2022 9:24 AM Case Number: 202114812   St. Tammany Parish, LA   Deputy Clerk: Caroline Theriot

Any fees associated with this request will be paid electronically. Should you have any questions, please contact me at your convenience.

With kind regards, I remain

Sincerely,

Willard O. Lape, III (Trey)

WOL/tmh

CC:    Hermes Health Alliance, LLC *(Sent by email only)*



Submitted Date: 4/12/2022 11:30 AM  File Date: 4/19/2022 9:24 AM  Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Caroline Theriot



**CLERK OF COURT**
22nd Judicial District Court
Parish of St. Tammany

April 28, 2022

East Baton Rouge Parish Sheriff's Office
Attn.: Civil Department .
P.O. Box 3277
Baton Rouge, La. 70821


Re:   St. Luke #2 LLC
VS. 202114812 Division H
Hermes Health Alliance LLC

Dear Sir:

Enclosed please find a Citation along with certified copies of the Petition and the Dilatory
Exception of Prematurity to be served on the following:

| Name: | Address: |
|---|---|
| Certain Underwriters at Lloyd's, London Through the Louisiana Secretary of State | 8585 Archives Avenue Baton Rouge, LA 70809 |
| Indian Harbor Insurance Company, Through the Louisiana Secretary of State | 8585 Archives Avenue Baton Rouge, LA 70809 |
| QBE Specialty Insurance Company, Through the Louisiana Secretary of State | 8585 Archives Avenue Baton Rouge, LA 70809 |
| Steadfast Insurance Company, Through the Louisiana Secretary of State | 8585 Archives Avenue Baton Rouge, LA 70809 |
| General Security Indemnity Company of Arizona, Through the Louisiana Secretary of State | 8585 Archives Avenue Baton Rouge, LA 70809 |
| United Specialty Insurance Company, Through the Louisiana Secretary of State | 8585 Archives Avenue Baton Rouge, LA 70809 |

| Lexington Insurance Company, Through the Louisiana Secretary of State | 8585 Archives Avenue Baton Rouge, LA 70809 |
|---|---|
| Safety Specialty Insurance Company, Through the Louisiana Secretary of State | 8585 Archives Avenue Baton Rouge, LA 70809 |
| HDI Global Specialty SE, Through the Louisiana Secretary of State | 8585 Archives Avenue Baton Rouge, LA 70809 |
| Old Republic Union Insurance Company, Through the Louisiana Secretary of State | 8585 Archives Avenue Baton Rouge, LA 70809 |

Please find a check in the amount of $_____ payable to you for your services, along with a check in the amount of $_____ payable to the Secretary of State.

After service has been made, please mail your return to this office.

Sincerely,

*Kaitlyn Guzzardo*

Kaitlyn Guzzardo
Deputy Clerk

---

P.O. Box 1090 · Covington LA 70434 · (985) 809-8700

**State of Louisiana**

**Hermes Health Alliance LLC, et al**

**TO THE DEFENDANT:** <u>Certain Underwriters At Lloyd's London, through the</u> <u>Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809</u>

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[X] Certified copy of Original Petition   [ ] Certified copy of Amended Petition   [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.

   If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.

B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.

C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this    12th day of April, 2022

*Melissa R. Henry,* Clerk of Court

BY: _Kaitlyn Guzzardo_
    Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of the within _____,
on _____ in person,
at domicile with _____,
in _____Parish, a distance of _____ miles from the Justice Center.

_____
                                                                    Deputy Sheriff
                    Parish of _____

101 - Regular Citation Rev 2/22

**Hermes Health Alliance LLC**                    **State of Louisiana**

**TO THE DEFENDANT:** <u>Indian Harbor Insurance Company, through the Louisiana</u>
<u>Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809</u>

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[X] Certified copy of Original Petition  [ ] Certified copy of Amended Petition  [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.
     If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30)** days after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   <u>12th day of April, 2022</u>

*Melissa R. Henry* Clerk of Court

BY:  *Kaitlyn Guzzardo*

Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

_____
                                                                     Deputy Sheriff
Parish of _____

101 - Regular Citation Rev 2/22

**TO THE DEFENDANT:** <u>QBE Specialty Insurance Company, through the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809</u>

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[X] Certified copy of Original Petition [ ] Certified copy of Amended Petition [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.

If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.

B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.

C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this    <u>12th day of April, 2022</u>

*Melissa R. Henry* Clerk of Court

BY: *Kaitlyn Guzzardo*
Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

_____
                                                    Deputy Sheriff
Parish of_____

101 - Regular Citation Rev 2/22

**Hermes Health Alliance LLC**

State of Louisiana

**TO THE DEFENDANT:** <u>Steadfast Insurance Company, through the Louisiana
Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809</u>

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[X] Certified copy of Original Petition   [ ] Certified copy of Amended Petition   [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing
an answer or other pleading in the 22ⁿᵈ Judicial District Court located at 701 N. Columbia Street,
Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil
Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him,
except as otherwise provided by law.
    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his
answer to the petition within **thirty (30) days** after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained
and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the
exception is overruled or referred to the merits, or **fifteen (15) days** after service of the
Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the
Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer,
unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   <u>12th day of April, 2022</u>

*Melissa R. Henry,* Clerk of Court

BY: *Kaitlyn Guzzardo*

Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

_____
Deputy Sheriff
Parish of _____

101 - Regular Citation Rev 2/22

**TO THE DEFENDANT:** <u>General Security Indemnity Company Of Arizona, through the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809</u>

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[×] Certified copy of Original Petition  [ ] Certified copy of Amended Petition  [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.
   If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   <u>12th day of April, 2022</u>

*Melissa R. Henry* Clerk of Court

BY: *Kaitlyn Guzzardo*
Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

_____
Deputy Sheriff
Parish of _____

101 - Regular Citation Rev 2/22

State of Louisiana
Hermes Health Alliance LLC

**TO THE DEFENDANT:** **United Specialty Insurance Company, through the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809**

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[X] Certified copy of Original Petition  [ ] Certified copy of Amended Petition  [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.
    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   12th day of April, 2022

*Melissa R. Henry* Clerk of Court

BY: *Kaitlyn Guzzardo*

Kaitlyn Guzzardo, Deputy Clerk

Issued:  04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

_____
Deputy Sheriff
Parish of _____

101 - Regular Citation Rev 2/22

**TO THE DEFENDANT: <u>Lexington Insurance Company, through the Louisiana
Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809</u>**

You are named as a defendant in the above captioned matter.  Attached to this citation is a:

[X] Certified copy of Original Petition    [ ] Certified copy of Amended Petition    [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing
an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street,
Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil
Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A.  A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him,
except as otherwise provided by law.
     If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his
answer to the petition within **thirty (30)** days after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained
and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the
exception is overruled or referred to the merits, or **fifteen (15) days** after service of the
Amended Petition.
C.  The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the
Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer,
unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this    <u>12th day of April, 2022</u>

*Melissa R. Henry,* Clerk of Court

BY: *Kaitlyn Guzzardo*

Kaitlyn Guzzardo, Deputy Clerk

Issued:  04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____Parish, a distance of _____ miles from the Justice Center.

_____
Deputy Sheriff

Parish of_____

Hermes Health Alliance LLC                                       State of Louisiana

**TO THE DEFENDANT:** <u>Safety Specialty Insurance Company, through the Louisiana</u>
<u>Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809</u>

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[×] Certified copy of Original Petition [ ] Certified copy of Amended Petition [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing
an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street,
Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil
Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him,
except as otherwise provided by law.
    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his
answer to the petition within **thirty (30)** days after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained
and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the
exception is overruled or referred to the merits, or **fifteen (15) days** after service of the
Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the
Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer,
unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this    <u>12th day of April, 2022</u>

*Melissa R. Henry* Clerk of Court

BY: *Kaitlyn Guzzardo*
Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

_____
Deputy Sheriff
Parish of _____

101 - Regular Citation Rev 2/22

**Hermes Health Alliance LLC**                                    **State of Louisiana**

**TO THE DEFENDANT: HDI Global Specialty SE, through the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809**

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[X] Certified copy of Original Petition    [ ] Certified copy of Amended Petition    [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.
    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this    12th day of April, 2022

*Melissa R. Henry* Clerk of Court

BY: *Kaitlyn Guzzardo*
Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____Parish, a distance of _____ miles from the Justice Center.

_____
                                                        Deputy Sheriff
                                    Parish of _____

101 - Regular Citation Rev 2/22

State of Louisiana
Hermes Health Alliance LLC

**TO THE DEFENDANT: Old Republic Union Insurance Company, through the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809**

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[X] Certified copy of Original Petition [ ] Certified copy of Amended Petition [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.
    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   12th day of April, 2022

*Melissa R. Henry* Clerk of Court

BY: *Kaitlyn Guzzardo*
Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

_____
Deputy Sheriff
Parish of _____

101 - Regular Citation Rev 2/22

**22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY**

**STATE OF LOUISIANA**

NO. 2021-14812                                      DIVISION "H"

**ST. LUKE #2, LLC**

**VERSUS**

**HERMES HEALTH ALLIANCE, LLC**

FILED: _____

                              _____
                              **DEPUTY CLERK**

## MEMORANDUM IN OPPOSITION TO EXCEPTION OF PREMATURITY

St. Luke #2, LLC ("St. Luke"), through its undersigned counsel, respectively submits its

Memorandum in Opposition to the Exception of Prematurity filed by Hermes Health Alliance,

LLC ("Hermes"). As shown below, the Exception should be denied.

### I.    Background

St. Luke operates a Level-4 nursing home. Until Hurricane Ida, its operations were located

in the former Little Sisters of the Poor building on the Westbank of New Orleans, Louisiana. St.

Luke first started operations there in 2009, but ended them there after the property was destroyed

by Hurricane Ida.

The operations were initially governed by a Lease with St. Luke as Lessee and Hermes as

Lessor (the "Lease"). The Lease contained a casualty clause in paragraph 19 that stated:

> If through no fault, neglect, or design of Lessee, the premises are
> destroyed by fire *or other casualty or damaged to such an extent*
> *as to render them wholly unfit for occupancy, then this lease shall*
> *be cancelled. If, however, the premises can be repaired within 120*
> *days from date of fire or casualty, then this lease will not be*
> *cancelled, and Lessor shall notify Lessee within 30 days from the*
> *date of fire or casualty that Lessor will repair the damage, and*
> *Lessee shall be entitled only to such a reduction or remission of*
> *rent as shall be just and proportionate.*

Lease, ¶ 19 (emphasis added). Section § 20 of the Lease outlined the notice requirements. Namely,

"[a]ll notices required to be given under the terms of the Lease," such as the one required by

paragraph 19, "shall be in writing and sent by hand delivery or certified mail, return receipt

Submitted Date: 5/4/2022 4:31 PM  File Date: 5/5/2022 12:21 PM Case Number: 202114812  St Tammany Parish, LA  Deputy Clerk: April Laird

requested." *Id.* at ¶ 20. Thus, in the event of a casualty that renders the Property "wholly unfit for occupancy," the Lease is cancelled automatically unless the (1) premises can be repaired in 120 days or (2) the Lessor sends a written notification to the Lessee within 30 days of the casualty by hand delivery or certified mail, return receipt requested that the Lessor will complete the repairs.

In 2016, Hermes and St. Luke entered into an Agreement to Extend Lease (the "Lease Extension"). The Lease Extension extended the term of occupancy from November 10, 2016 to November 9, 2021. The Lease Extension also provided that St. Luke would not unilaterally terminate the Lease. Article IV(B) stated in full:

> Tenant affirmatively covenants and agrees that from the inception of the Option Term of the Lease (November 10, 2016) until the end of the Option Term (November 9, 2021) (the "Extended Term"), *Tenant will not terminate the Lease and relocate St. Luke's Nursing Home and its 104 beds authorized for use at the Leased Premises described on the sketch attached to the Agreement to Extend Lease or otherwise vacate the Leased Premises unless* (1) there is a final judgment of a Louisiana State court that the Leased Premises is not suited by Medicaid and Medicare for Medicare and Medicaid eligible residents" or (2) within 6 months from the date the Option Term is to expire (November 9, 2021). Tenant may voluntarily vacate the Leased Premises, provided that Tenant continues to abide by its obligations under the Lease by paying timely the Base Rent and Additional Rent (CAM Charges, NNN Expenses, and other Shared Expenses) as provided in this Agreement to Extend Lease. Should Tenant exercise its right to vacate the Leased Premises within the time period provided above and continues to pay timely Base Rent and Additional Rent (CAM charges, NNN Expenses, and other Shared Expenses), Landlord may nevertheless lease the Leased Premises or part thereof to third parties and collect rentals from the third party during the time from the inception of the third party lease to end of the Option Term without Tenant being entitled to any set-off or credit for the rental collected from the third party. Should Tenant default in paying Base rent and Additional Rent (CAM Charges, NNN Expenses, and other Shared Expenses) during the period it voluntarily vacated the Leased Premises, the Base Rent for the remainder of the term shall be 150% of the Base Rent and Additional Rent (CAM charges, NNN Expenses, and other Shared Expenses) provided for in the Lease.

Thus, this article of the Lease Extension requires Court approval when the Tenant (1) terminates the Lease and (2) relocates its 104 beds or vacates the premises.

Hurricane Ida first hit the Leased Premises on August 29, 2021. The building did not fare well. As Hermes has alleged, there was "significant damage," "both catastrophic and unprecedented" damage, and unprecedented and widescale water damage. Hermes Third-Party

Submitted Date: 5/4/2022 4:31 PM    File Date: 5/5/2022 12:21 PM Case Number: 202114812   St. Tammany Parish, LA   Deputy Clerk: April Laird

2021. Faced with the severe water intrusion and no HVAC, the residents were evacuated on August 30, 2021.

The Louisiana Department of Health ("LDH") regulates nursing homes, such as St. Luke. In early September 2021, the LDH issued guidance for nursing homes to return to their facilities after Hurricane Ida. In particular, LDH required that nursing homes had to request in writing to re-occupy a nursing home facility unless (a) the facility sustained no damage and (b) there was no power outage. Since the Building suffered damage and the power was out for more than 48 hours, St. Luke would have to request in writing to LDH approval to re-occupy the Building. Once a request is made of the LDH to re-occupy, the LDH would review the request and inspect the facility as appropriate.

With the LDH guidance, and considering the extensive water intrusion into St. Luke's leased space, St. Luke sought to determine the air quality at the Property to assure the Building could support the operation of a Level 4 nursing home. St. Luke engaged Technical Environmental Studies, Inc. ("TES"). TES physically inspected the Property, took samples, and issued a report with recommendations concerning the air quality of the Building. TES concluded in its report of September 30, 2021:

> *Based on the results of this survey, sections of the leased areas need some level of remedial efforts.* Full moisture mapping of the leased areas should be performed to determine which areas can be dried out and which need to be demolished. *A mold protocol should be developed for the remedial efforts and a licensed mold abatement contractor should be selected to perform the remediation. After the remediation is complete, a final inspection and clearance air sampling should be conducted to ensure that the air quality is adequate for reoccupancy. It is important to note that if the sources of water intrusion (i.e., roof, window, wall, and/or door leaks) are not addressed, these issues will return and persist.*

(emphasis added) (citations omitted). In sum, TES concluded that St. Luke's leased space was not in a condition to support a Level 4 nursing home without repairs. Considering the TES report and the LDH guidance, a return was not possible. St. Luke forwarded the TES report to Hermes.

Hermes hired its own company, United Environmental ("United"), to analyze the building status. On October 6 to 11, 2021, United performed an assessment and concluded that "MITIGATION & REMEDIATION needed/recommended to solve the current problems found in

Submitted Date: 5/4/2022 4:31 PM  File Date: 5/5/2022 12:21 PM  Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird

Woodlawn Drive, New Orleans, La." United found "that moisture intrusion entered the property causing elevated/poor air quality, water stains, ceiling tile collapse, ceiling drywall collapse, drywall cracking, nail popping, and high moisture levels on exterior/interior walls and ceilings." "As of 6th-11th day of October 2021, it is [United's] professional opinion all areas affected by moisture intrusion has NOT been properly treated with anti-microbial, properly dried using IICRC standards, and reconstructed with quality equal to or greater to the original." United further asserted that "Professional Mitigation and Remediation Process should include but not limited to, XL Dehumidifiers, Air Movers/Blower Fans & Air Snubbers performing 48-96 hours, Containment, Abatement of all contaminated material, Debris removal, all attic insulation removed, all ceiling joist & exposed stud walls treated/decontaminated, Anti-Microbial application, Hydrogen Peroxide application, decontamination fogging treatment, Air Duct Cleaning or removal, Contaminated/Wet Ceiling and Walls Removed, Contaminated Wet Flooring removed, Pre & Port Testing, and Pack out and Decontamination of Contents." After the mitigation and remediation is completed, United requested "to come back to complete PRV (Post Remediation Verification) or 'clearance testing' and confirm that proper SANITIZATION solutions have been implemented."

The remediation and mitigation work were not performed before the Lease expired on November 9, 2021. Importantly, moreover, Hermes never notified St. Luke of its intent to repair the building within thirty (30) days of Hurricane Ida or by September 28, 2021; and Hermes did not repair the building within 120 days of Hurricane Ida or by December 27, 2021. Thus, the Lease and Lease Extension were automatically cancelled.

St. Luke filed this suit to recover the sums owed to it by Hermes, including for rent paid that was not due and CAM charges that were inflated. The suit also sought a declaration that the Lease automatically cancelled under Section 19. Hermes then filed an exception of prematurity to St. Luke's petition.

## II. Law and Argument

Louisiana Code of Civil Procedure article 926(A)(1) provides for the dilatory exception of prematurity. An exception of prematurity may be utilized in cases where the applicable law or

Submitted Date: 5/4/2022 4:31 PM File Date: 5/5/2022 12:21 PM Case Number: 202114812 St. Tammany Parish, LA Deputy Clerk: April Laird

judicial action. *Hidalgo v. Wilson Certified Express, Inc.*, No. 94-1322 (La. App. 1 Cir. 5/14/96), 676 So. 2d 114, 116. The party who raises the exception of prematurity bears the initial burden of showing that an administrative remedy or procedure applies, by reason of which the lawsuit is premature. *Williams v. Notami Hospital of Louisiana, Inc.*, 04-2289 (La. App. 1 Cir. 11/4/65); 927 So. 2d 368. Once the existence of an administrative remedy is established, the burden then shifts to the plaintiff to show that the specific administrative remedy or procedure has been exhausted. *Dutrey v. Plaquemine Manor Nursing Home*, 2012-1295 (La. App. 1 Cir. 6/17/13); 205 So. 3d 934, 940 (citation omitted).

The exception of prematurity filed by Hermes fails for two, independent reasons. *First*, Article IV(B) of the Lease Extension has no application here. That article states that Court approval is required when the Tenant (1) terminates the Lease and (2) relocates its beds or vacates the premises. St. Luke did not terminate the Lease. The Lease and Lease Extension were automatically cancelled by the inaction of Hermes under Section 19. The property was not, and could not have, been repaired 120 days from Hurricane Ida, or by December 27, 2021. This is so because according to Hermes, the property suffered "both catastrophic and unprecedented" damage, "unprecedented and widescale water damage," and "significant damage." Hermes Third-Party Demand, at ¶¶ 42, 45, 66. Hermes did not notify in writing by hand delivery or certified mail St. Luke within 30 days of Hurricane Ida, or by September 28, 2021,that it was repairing the facilities. As such, the Lease cancelled on its own terms automatically on August 29, 2022. No further action was required by any party to effect the termination.

Hermes reading of Article IV(B) makes no sense. As of August 30, 2021, the Leased Premises had sustained, as Hermes admits, "both catastrophic and unprecedented damage," "unprecedented and widescale water damage," and "significant damages." Hermes Third-Party Demand, at ¶¶ 42, 45, 66. The facility could not support a Level-4 nursing home, and the residents of St. Luke needed to be relocated. It would be a strained reading of Article IV(B) to require St. Luke to obtain a final state court judgment to vacate the premises destroyed by Hurricane Ida.

*Second*, even if Article IV(B) applied, and it does not, that article does not require an administrative remedy or procedure before court action is invoked. Article IV(B) specifically talks

Submitted Date: 5/4/2022 4:31 PM  File Date: 5/5/2022 12:21 PM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird

St. Luke has specifically requested a declaration from this Court that the Lease was automatically cancelled and terminated due to the inaction of Hermes under Section 19.

The exception of prematurity should be denied.

Respectfully submitted,

_____
William Peter Connick, 14158
CONNICK & CONNICK, LLC
3421 N. Causeway Boulevard, Suite 408
Metairie, Louisiana 70002
Telephone:    (504) 838-8777
Facsimile:    (504) 838-9903
pconnick@connicklaw.com

-and-

Bryan C. Reuter, 23910
Thomas P. Owen, Jr., 28181
STANLEY, REUTER, ROSS,
     THORNTON & ALFORD, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone:    (504) 523-1580
Facsimile:    (504) 524-0069
bcr@stanleyreuter.com
tpo@stanleyreuter.com

Attorneys for St. Luke #2, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record via email, facsimile, and/or by U.S. Mail, postage pre-paid and properly addressed, this 4th day of May, 2022.

_____

Submitted Date: 5/4/2022 4:31 PM  File Date: 5/5/2022 12:21 PM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird

TWENTY-SECOND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 2021-14812                                         DIVISION "H"

ST. LUKE #2, LLC

VERSUS

HERMES HEALTH ALLIANCE, LLC

FILED: _____          _____
                                                                DEPUTY CLERK

REPLY MEMORANDUM IN FURTHER SUPPORT OF
HERMES' DILATORY EXCEPTION OF PREMATURITY

MAY IT PLEASE THE COURT:

Hermes Health Alliance, LLC submits this Reply Memorandum in further Support of its

Dilatory Exception of Prematurity.

St. Lukes relies upon Paragraph 19 of the Original 2009 Lease in support of its pending

request for a Declaratory Judgment from this Court that the lease between Hermes and St. Luke's

has terminated because of unrepaired damage to the former Leased Premises from Hurricane

Ida.[1]  However, St. Luke's request ignores the terms of the lease as last amended in 2016.  For

context, a dispute arose between several parties, including St. Lukes and Hermes, that came to a

head in 2016.  The result was a confidential Settlement Agreement in 2016.  In connection with

this 2016 Settlement Agreement, Hermes and St. Lukes agreed to "extend, amend, modify and

supplement..." their Original 2009 Lease.[2]  They amended the Original 2009 Lease through a

document titled "Agreement to Extend Lease" in 2016.[3]  Article IV, Paragraph B of the 2016

Agreement to Extend Lease is the contractual term behind Hermes' pending Dilatory Exception

of Prematurity.  Article IV, Paragraph B of the 2016 Agreement to Extend Lease differs

significantly from Paragraph 19 of the Original 2009 Lease.  Article IV of the 2016 Agreement

to Extend Lease begins by reciting "For the consideration set forth in the Settlement

Agreement...."  Clearly, a stated cause for Hermes agreeing to the terms of the 2016 Settlement

Agreement was St. Luke's agreement to both extend and modify the Original 2009 Lease in the

---

[1] Exhibit 1 — Copy of 2009 Lease between Hermes and St. Luke.
[2] Exhibit 2 - Copy of 2016 Agreement to Extend Lease at Article IV.

Submitted Date: 5/10/2022 9:21 AM   File Date: 5/10/2022 4:06 PM Case Number: 202114812   St. Tammany Parish, LA Deputy Clerk: April Laird



Agreement to Extend Lease. Article IV, Paragraph B of the 2016 Agreement to Extend provides, in pertinent part:

> Tenant affirmatively covenants and agrees that from the inception of the Option Term of the Lease (November 10, 2016) until the end of the Option Term (November 9, 2021) (the "Extended Term"), Tenant will not terminate the Lease… unless (1) there is a final judgment of a Louisiana State Court that the Leased Premises is not suited by reason of its physical condition for use as a nursing home which is principally funded by Medicaid and Medicare for Medicaid and Medicare eligible residents" (sic) or (2) within 6 months from the date the Option Term is to expire (November 9, 2021), Tenant may voluntarily vacate the Leased Premises, provided that Tenant continues to abide by its obligations under the Lease by paying timely the Base Rent and Additional Rent (CAM Charges, NNN Expenses, and other Shared Expenses) as provided for in this Agreement to Extend Lease. …[4]

Effectively, the only way that St. Lukes would not owe rent to Hermes before November 9, 2021 would be when it obtained "a final judgment of a Louisiana State Court that the Leased Premises is not suited by reason of its physical condition for use as a nursing home." No such final judgment exists. It was not until October 15, 2021 that St. Luke's sent written notice that it was terminating the lease based on Paragraph 19 of the Original 2009 Lease.[5] Hermes cannot disagree that: a.) the Leased Premises formerly occupied by St. Luke's is not suitable as a nursing home because of damage caused by Hurricane Ida, b.) that the Leased Premises formerly occupied by St. Luke's will not be suitable as a nursing home until the damage caused by Hurricane Ida is repaired, and c.) that a substantial portion of the damage to the former Leased Premises caused by Hurricane Ida has not been repaired. However, the terms of the original 2009 lease were amended in 2016 to ensure Hermes that St. Lukes would still be paying rent until November 9, 2021, unless St. Lukes **first** obtained the final judgment contemplated in the 2016 amendment. St. Lukes didn't file this lawsuit until November 15, 2021.

For the Court to grant Hermes' Exception of Prematurity will not defeat the majority of the claims in St. Luke's lawsuit. Instead, it will recognize the parties' reciprocal consideration evidenced by Article IV, Paragraph B of the 2016 Agreement to Extend.

---

[4] Exhibit 2 at Article IV. Paragraph B.

Respectfully submitted this 10th day of May 2022.

*[signature]*

_____
Willard O. Lape, III (Trey)
LA Bar Roll No. 31494
1966 N. Highway 190, Suite B
Covington, LA 70433
Telephone: (985) 246-7933
Email: trey@lapelawfirm.com
*Attorney for Hermes Health Alliance, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Memorandum* has been served upon all counsel and/or parties of record by depositing same in the United States Mail, postage prepaid and properly addressed, via facsimile and/or electronic mail, on this 10th day of May 2022.

*[signature]*

_____
Willard O. Lape, III (Trey)

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird

COURT MET THIS DAY IN REGULAR SESSION, PRESENT AND PRESIDING, THE HONORABLE, JUDGE ALAN A. ZAUNBRECHER, WARREN L. MONTGOMERY, DISTRICT ATTORNEY, RANDALL C. SMITH, SHERIFF AND MELISSA R. HENRY, CLERK OF COURT (Bailiff, Macey Williams and Court Reporter, Terry Owens)

202114812          ST LUKE #2 LLC

                   VS.

                   HERMES HEALTH ALLIANCE
                   LLC

- This matter came on for hearing on Dilatory Exception of Prematurity, Answer, Affirmative Defenses, Reconventional Demand and Third-Party Demand filed on behalf of defendant Hermes Health Alliance, L.L.C.

Present, William Peter Connick and Bryan C. Reuter, counsel appearing on behalf of plaintiff; and Willard O. Lape, III, counsel appearing on behalf of defendant.

Argument was presented to the Court on behalf of the parties. Counsel for defendant offered, filed and introduced exhibits A, B, and C attached to the reply memorandum. The Court read reasons into the record and over-ruled the Exceptions.

COURT ADJOURNED SINE DIE          MINUTES READ AND APPROVED

_____          _____
MINUTE CLERK,                     JUDGE ALAN A. ZAUNBRECHER
TRICIA BREAUX                     DIVISION H

A TRUE AND CORRECT EXTRACT OF THE MINUTES OF COURT OF DATE.

_____
DEPUTY CLERK OF COURT

22ND JUDICIAL DISTRICT COURT

ST. TAMMANY PARISH, LOUISIANA

**Hermes Health Alliance LLC**

State of Louisiana

AMOUNT PAID FOR
SERVICE  $ 30.00
Jefferson Parish
Sheriff's Office

**TO THE DEFENDANT:** St. Luke #2, LLC, through attorney of record: Connick and Connick, L.L.C., Attn: Mr. William P. Connick, Esq., 3421 N. Causeway Blvd., Ste. 408, Metairie, LA

You are named as a defendant in the above captioned matter. Attached to this citation is a: Dilatory Exception of Prematurity, Answer, Affirmative Defenses, Reconventional Demand and Third-Party Demands

☐ Certified copy of Original Petition ☐ Certified copy of Amended Petition ☐ Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.

If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.

B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.

C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this    14th day of March, 2022

Melissa R. Henry, Clerk of Court

BY: _____

Tricia Breaux, Deputy Clerk

Issued: 04/22/2022

**Counsel:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington LA 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

SERVICE AFFECTED 04/29/22 UNDERHAVED
PERSONAL - - - - DOMICILARY THRU _____
____ THRU / OTHER _____
____ NOT AT THIS ADDRESS PER _____
____ UNABLE TO SERVE AFTER MAKING _____ ATTEMPTS

W. TUYES
Deputy Sheriff of Jefferson Parish          #   118562

**FILED**

MAY 1 1 2022

MELISSA R. HENRY, CLERK
Deputy _____
Phyllis Elias, Deputy Clerk

St Luke #2 LLC

VS  202114812 Division H

Hermes Health Alliance LLC

22nd Judicial District Court

Parish of St. Tammany

State of Louisiana

AMOUNT PAID FOR
SERVICE  $ __30.00__
Jefferson Parish
Sheriff's Office

TO:  St. Luke #2, LLC
Through its counsel of record
William Peter Connick
CONNICK & CONNICK, LLC
3421 N. Causeway Boulevard, Suite 408
Metairie, LA  70002

GREETINGS:

YOU ARE HEREBY ORDERED TO SHOW CAUSE BEFORE

the Honorable Judge **Alan Zaunbrecher**, **Division H** on **May 12, 2022**, at **9:00 a.m.**, at the St.

Tammany Parish Justice Center, 701 N. Columbia Street, Covington, Louisiana, why the

Dilatory Exception of Prematurity should not be granted as prayed; **ALL AS PRAYED FOR**

**AND ACCORDING TO LAW.**

When applicable, a courtesy copy of all memoranda must be forwarded by FAX, mail OR hand
delivery to the Judge's office. The only address for furnishing copies is: 701 N. Columbia St., Room
2010, Covington, LA 70433. The only FAX number for furnishing copies is 985-809-5344. Rule 3.3
of the Uniform rules of the Louisiana District Courts governs facsimile transmissions to Judges.

By order of the Honorable Judges of said Court this 03212022.

*Melissa R. Henry* Clerk of Court

By: ___Tricia Breaux___

Tricia Breaux, Deputy Clerk

**FILED**

MAY 11 2022

MELISSA R. HENRY - CLERK
Deputy Phyllis Elias, Deputy Clerk

Issued: 04/22/2022

Counsel:
Attorney at Law
Willard O. Lape, III
1966 N. Highway 190, Suite B
Covington, LA  70433

DATE RECEIVED_____ DATE RET'D_____
DATE SERVED_____
SERVICE AFFECTED OR REASON UNSERVED:
___ PERSONAL ---DOMICILIARY THRU_____
___ THRU / OTHER _____
___ NOT AT THIS ADDRESS PER _____

RECEIVED
APR 22 2022
CIVIL
SHERIFF'S OFFICE

**Hermes Health Alliance LLC**

State of Louisiana

Jefferson Parish
Sheriff's Office

**TO THE DEFENDANT:** Mr. Lawrence E. Stansberry, 926 Amelia Street, Gretna, LA 70053

You are named as a defendant in the above captioned matter. Attached to this citation is a: Dilatory Exception of Prematurity, Answer, Affirmative Defenses, Reconventional Demand and Third-Party Demands

☐ Certified copy of Original Petition ☐ Certified copy of Amended Petition ☐ Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.

If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30)** days after service of the petition.

B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.

C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   14th day of March, 2022

*Melissa R. Henry* Clerk of Court

BY:   *Tricia Breaux*
Tricia Breaux, Deputy Clerk

Issued: 04/22/2022

**Counsel:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington LA 70433

Received on _____ 2022, and on _____, 2022 I served a true copy of the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

Blank

Case 2:23-cv-02206-BSL-MBN    Document 1-7    Filed 06/29/23    Page 70 of 237

SHERIFF'S

# FILED

MAY 1 1 2022

MELISSA R. HENRY - CLERK
Deputy
Phyllis Elias, Deputy Clerk

PERSONAL — DOMICILARY THRU _Blanka_
THRU / OTHER
NOT AT THIS ADDRESS PER -
UNABLE TO SERVE AFTER MAKING _____ ATTEMPTS
D. Sala                     # 119275
Deputy Sheriff of Jefferson Parish



# Fax

**Date:** 5/12/2022

**To:** 19858098777
**From:** Trey Lape

**Subject:** Case No. 2021-14812, Div H // St. Luke #2, LLC vs. Hermes HealthAlliance, LLC

Attention: Trish in Division H

I represent Hermes Health Alliance, LLC and wish to waive service for the exceptions filed by St. Luke #2, LLC. Please just send me a notice letter and I will be there on the hearing date selected.

Thanks,

Trey Lape
1966 N. Highway 190, Ste. B, Covington, LA 70433
985-246-7933 | trey@lapelawfirm.com

FAX COPY

MAY 11 2022
FAX COPY

MAY 1 2 2022

95038479 00

# TRANSACTION REPORT

MAY/12/2022/THU 01:00 PM



FAX(RX)

| # | DATE | START T. | SENDER | COM.TIME | PAGE | TYPE/NOTE | | FILE |
|---|------|----------|--------|----------|------|-----------|---|------|
| 001 | MAY/12 | 12:59PM | 9855905112 | 0:00:31 | 1 | OK | ECM | 1864 |

WE NOW OFFER E-FILING
PLEASE SEE OUR WEBSITE WWW.STTAMMANYCLERK.ORG

DATE OF CONFIRMATION: MAY 13, 2022     FILING PARTY: HERMES HEALTH ALLIANCE LLC

TO: TREY LAPE, ATTY AT LAW      **FAX#: 985-590-5112**

FROM: ST TAMMANY PARISH CLERK OF COURT     Phone: 985-809-8700
                                                 Fax:   985-809-8777

DATE FAX FILING RECEIVED:   MAY 13, 2022

SUIT CAPTION: **ST LUKE #2 LLC VS HERMES HEALTH ALLIANCE LLC**

DOCUMENT RECEIVED: **LTR FROM ATTY: WAIVE SERVICE OF EXCEPTIONS-REQ NTC OF HEARING LETTER (1 PG)**

SUIT NUMBER: **2021-14812 "H"**    **TOTAL AMOUNT DUE: $25.00**

## RECEIPT OF TRANSMISSION

PLEASE ATTACH THIS FAXED RECEIPT OF TRANSMISSION TO THE FRONT PAGE OF THE ORIGINAL PLEADINGS WHEN FILING TO ENSURE THAT THE ORIGINALS ARE FILED IN THE SAME SUIT AS THE FAX FILING. **PLACE NEW SUIT NUMBER ON ALL PLEADINGS.**

**La. R.S. 13:850.** Facsimile transmission; filings in civil actions; fees; equipment and supplies

A.     Any **document** in a civil action may be filed with the clerk of court by facsimile transmission. All clerks of court shall make available for their use equipment to accommodate facsimile filing in civil actions. *Filing shall be deemed complete at the time the facsimile transmission is received by the clerk of court.* No later than on the first business day after receiving a facsimile filing, the clerk of court shall transmit to the filing party via facsimile a confirmation of receipt and include a statement of the fees for the facsimile filing and filing of the original document. The facsimile filing fee and transmission fee are incurred upon receipt of the facsimile filing by the clerk of court and payable as provided in Subsection B of this Section. The facsimile filing shall have the same force and effect as filing the original document, if the filing party complies with Subsection B of this Section.

B.     Within seven days, exclusive of legal holidays, after the clerk of court receives the facsimile filing, all of the following shall be delivered to the clerk of court:

     (1)     The original document identical to the facsimile filing in *number of pages and in content of each page including any attachments, exhibits, and orders.* A document not identical to the facsimile filing or which includes pages not included in the facsimile filing shall not be considered the original document.

     (2)     The fees for the facsimile filing and filing of the original document stated on the confirmation of receipt, if any. (This charge includes fees for (a) filing the faxed documents, (b) fax confirmation fee of $15.00 and (c) fee for filing of the original pleadings.)

     (3)     A transmission fee of five dollars.

C.     **If the filing party fails to comply with any of the requirements of Subsection B of this Section, the facsimile filing shall have no force or effect.** The various district courts may provide by court rule for other matters related to filings by facsimile transmission.

PLEASE CALL THE CLERK'S OFFICE IF YOU HAVE ANY QUESTIONS.
ATTENTION FILING CLERK
THIS IS THE ORIGINAL OF A PREVIOUSLY FAXED PLEADING.

# Uniti Fiber Fax Service

## FAX DELIVERY NOTIFICATION

Account: FB9858098777
5/13/2022 2:57:57 PM

The following fax was **successfully** sent to the specified recipient.

**Fax Number:** 9855905112
Remote CSID:    9855905112 (station ID of receiving fax device)
Pages:          1
Status:         No errors

## FAX TRANSMISSION DETAILS

Sent On:    5/13/2022 2:58:44 PM
Duration:   71 seconds
Speed:      14400 bps
Retries:    0
Event ID:   b8a4add3-8998-45f5-b8b3-ddab803fabc0



Uniti
Fiber

E-Filed on: 5/23/22 04:48 PM
Filed on: 5/24/22 08:56 AM

**22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY**

**STATE OF LOUISIANA**

NO. 2021-14812                                                    DIVISION "H"

**ST. LUKE #2, LLC**

**VERSUS**

**HERMES HEALTH ALLIANCE, LLC**

FILED: _____          _____

                                                                **DEPUTY CLERK**

**EXCEPTIONS, AFFIRMATIVE DEFENSES,
AND ANSWER TO THIRD-PARTY DEMAND**

Lawrence E. Stansberry ("Mr. Stansberry"), through his undersigned counsel, respectfully

submits his Exceptions, Affirmative Defenses, and Answer to the Third-Party Demand of Hermes

Health Alliance, LLC ("Hermes").

**EXCEPTIONS AND AFFIRMATIVE DEFENSES**

**First Exception and Affirmative Defense**

Mr. Stansberry pleads the dilatory exception of improper cumulation of actions, including

improper joinder of parties. *See* art. 926 A(7) of the Louisiana Code of Civil Procedure. In

particular, Hermes has improperly cumulated its insurance-coverage claims with claims regarding

the cancellation by Hermes of that certain Lease between St. Luke and Hermes (the "Lease") and

the Agreement to Extend Lease (the "Lease Extension"). Regarding the Lease claim, Hurricane

Ida caused, according to Hermes "both catastrophic and unprecedented" damage, in general, and

"unprecedented and widescale water damage," in particular, to the Property and Leased Premises.

*See* Hermes Third-Party Demand, at ¶¶ 45, 66. Yet, Hermes failed to timely notify St. Luke that it

would repair the "significant damage" to the Property and Leased Premises and failed to make

repairs to the Property and Leased Premises. *See id.* at ¶ 42. By contrast, the insurance-coverage

claim is not related to St. Luke or Mr. Stansberry.

### Second Alternative Exception and Alternative Affirmative Defense

Solely in the alternative, Mr. Stansberry pleads the exception of prematurity. *See* art. 926 A(1) of the Louisiana Code of Civil Procedure. Hermes has pled that St. Luke's claims stated in the Petition are premature. Mr. Stansberry denies that these claims are premature, and the Court has denied the exception of Hermes. If Hermes appeals and overturns that denial, then any claims of Hermes against Mr. Stansberry, including the Third-Party Demand, are likewise premature.

### Third Affirmative Defense

Hermes had breached the Lease and Lease Extension with bad faith.

### Fourth Affirmative Defense

Any damages incurred by Hermes were caused by its own fault or the fault of others.

### Fifth Affirmative Defense

Hermes is estopped from asserting the claims in its Third-Party Demand.

### Sixth Affirmative Defense

Mr. Stansberry adopts the affirmative defenses and denials pled by St. Luke, including in its Exceptions and Answer.

### Seventh Affirmative Defense

Hermes stated no cause of action against Mr. Stansberry.

### ANSWER TO RECONVENTIONAL DEMAND

1.

The allegations of paragraph 30 are denied, except it is admitted that the paragraph purports to name St. Luke as a defendant in reconvention.

2.

The allegations of paragraph 31 are denied.

3.

The allegations of paragraph 32 are denied.

4.

The allegations of paragraph 33 are denied, except it is admitted that the paragraph seeks

**5.**

The allegations of paragraph 34 are denied.

## ANSWER TO THIRD-PARTY DEMAND

**1.**

The allegations of paragraph 35 are denied, except it is admitted that the paragraph purports to name Mr. Stansberry as a Third-Party Defendant.

**2.**

The allegations of paragraph 36 are denied, except it is admitted that the paragraph references purported provisions of the Lease and Lease Extension, which documents are the best evidence of their contents.

**3.**

The allegations of paragraph 37 are denied due to lack of sufficient information to justify a belief therein.

**4.**

The allegations of paragraph 38 are denied due to lack of sufficient information to justify a belief therein.

**5.**

The allegations of paragraph 39 are denied due to lack of sufficient information to justify a belief therein.

**6.**

The allegations of paragraph 40 are denied due to lack of sufficient information to justify a belief therein.

**7.**

The allegations of paragraph 41 are denied as written, except it is admitted that, prior to Hurricane Ida, St. Luke leased the Leased Premises and operated a functioning level 4 nursing home that met all legal requirements.

**8.**

9.

The allegations of paragraph 43 are denied, except it is admitted that the St. Luke staff and residents witnessed and observed the extensive damage to the Leased Premises during Hurricane Ida.

10.

The allegations of paragraph 44 are admitted.

11.

The allegations of the first and third sentences from paragraph 45 are admitted. In particular, Mr. Stansberry admits that the "damages caused by Hurricane Ida were both catastrophic and unprecedented." The allegations of the second sentence are denied as written, except it is admitted that all sides of the Building were subject to hurricane force winds and rain.

12.

The allegation of paragraph 46 are denied.

13.

The allegations of paragraph 47 are denied, except it is admitted that St. Luke vacated the Premises on or about August 30, 2021.

14.

The allegations of paragraph 48 are denied due to lack of sufficient information to justify a belief therein.

15.

The allegations of paragraph 49 are denied due to lack of sufficient information to justify a belief therein.

16.

The allegations of paragraph 50 are denied due to lack of sufficient information to justify a belief therein.

17.

The allegations of paragraph 51 are denied due to lack of sufficient information to justify

**18.**

The allegations of paragraph 52 are denied due to lack of sufficient information to justify a belief therein.

**19.**

The allegations of paragraph 53 are denied due to lack of sufficient information to justify a belief therein.

**20.**

The allegations of paragraph 54 are denied due to lack of sufficient information to justify a belief therein, except it is admitted that representatives of St. Luke were invited to inspect and did inspect with others the Leased Premises and Property on October 6, 2021, forty-four days after Hurricane Ida first hit.

**21.**

The allegations of paragraph 55 are denied due to lack of sufficient information to justify a belief therein, except it is admitted that St. Luke produced a report from Technical Environmental Studies, Inc. ("TES") and provided that report to Hermes, which report is the best evidence of its contents.

**22.**

The allegations of paragraph 56 are denied due to lack of sufficient information to justify a belief therein.

**23.**

The allegations of paragraph 57 are denied due to lack of sufficient information to justify a belief therein, except it is admitted that a representative of St. Luke's did take pictures of the significant damage to the Property and Leased Premises, including "unprecedented and widespread water damage," as alleged by Hermes, and provided these photos to Hermes as part of the discovery process of this litigation.

**24.**

The allegations of paragraph 58 are denied due to lack of sufficient information to justify

**25.**

The allegations of paragraph 59 are denied due to lack of sufficient information to justify a belief therein.

**26.**

The allegations of paragraph 60 are denied due to lack of sufficient information to justify a belief therein, except it is admitted that United Environmental, LLC issued a report that stated "MITIGATION & REMEDIATION [are] needed/recommended to solve the current problems found in the indoor environment for Hermes Healthcare/St. Luke's Medical Center."

**27.**

The allegations of paragraph 61 are denied due to lack of sufficient information to justify a belief therein.

**28.**

The allegations of paragraph 62 are denied due to lack of sufficient information to justify a belief therein.

**29.**

The allegations of paragraph 63 are denied due to lack of sufficient information to justify a belief therein.

**30.**

The allegations of paragraph 64 are denied due to lack of sufficient information to justify a belief therein.

**31.**

The allegations of paragraph 65 are denied due to lack of sufficient information to justify a belief therein.

**32.**

The allegations of paragraph 66 are denied due to lack of sufficient information to justify a belief therein, except it is admitted that the Property and Leased Premises suffered "unprecedented and widescale water damage."

**33.**

The allegations of paragraph 67 are denied due to lack of sufficient information to justify a belief therein.

**34.**

The allegations of paragraph 68 are denied due to lack of sufficient information to justify a belief therein.

**35.**

The allegations of paragraph 69 are denied due to lack of sufficient information to justify a belief therein.

**36.**

The allegations of paragraph 70 are denied as written, except it is admitted that Hurricane Ida caused "unprecedented damage to the building."

**37.**

The allegations of paragraph 71 are denied due to lack of sufficient information to justify a belief therein.

**38.**

The allegations of paragraph 72 are denied due to lack of sufficient information to justify a belief therein.

**39.**

The allegations of paragraph 73 are denied due to lack of sufficient information to justify a belief therein.

**40.**

The allegations of paragraph 74 are denied due to lack of sufficient information to justify a belief therein.

**41.**

The allegations of paragraph 75 are denied due to lack of sufficient information to justify a belief therein.

42.

The allegations of paragraph 76 are denied due to lack of sufficient information to justify a belief therein.

43.

The allegations of paragraph 77 are denied due to lack of sufficient information to justify a belief therein.

44.

The allegations of paragraph 78 are denied due to lack of sufficient information to justify a belief therein.

45.

The allegations of paragraph 79 are denied due to lack of sufficient information to justify a belief therein, except it is admitted that the damage to the Building and Leased Premises was "readily apparent from visual inspections."

46.

The allegations of paragraph 80 are denied due to lack of sufficient information to justify a belief therein.

47.

The allegations of paragraph 81 are denied due to lack of sufficient information to justify a belief therein.

48.

The allegations of paragraph 82 are denied due to lack of sufficient information to justify a belief therein.

49.

The allegations of paragraph 83 are denied due to lack of sufficient information to justify a belief therein.

50.

The allegations of paragraph 84 are denied due to lack of sufficient information to justify

51.

The allegations of paragraph 85 are denied due to lack of sufficient information to justify a belief therein.

52.

The allegations of paragraph 86 are denied due to lack of sufficient information to justify a belief therein.

53.

The allegations of paragraph 87 are denied due to lack of sufficient information to justify a belief therein.

The allegations of the paragraph after paragraph 87 constitute a prayer for relief and are denied to the extent they relate to Mr. Stansberry.

**WHEREFORE**, Mr. Stansberry prays that this Answer be deemed good and sufficient, that all claims against him be denied, and that he be awarded all equitable relief and fees to which he is entitled under the law.

Respectfully submitted,

William Peter Connick, 14158
CONNICK & CONNICK, LLC
3421 N. Causeway Boulevard, Suite 408
Metairie, Louisiana 70002
Telephone:    (504) 838-8777
Facsimile:    (504) 838-9903
pconnick@connicklaw.com

-and-

Bryan C. Reuter, 23910
Thomas P. Owen, Jr., 28181
STANLEY, REUTER, ROSS,
        THORNTON & ALFORD, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone:    (504) 523-1580
Facsimile:    (504) 524-0069
bcr@stanleyreuter.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record via email, facsimile, and/or by U.S. Mail, postage pre-paid and properly addressed, this 23rd day of May, 2022.

_____

Lacy Kassim - Deputy Clerk
Suit 2021-14812 H
E-Filed on: 5/23/22 04:48 PM
Filed on: 5/24/22 08:56 AM

## 22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

## STATE OF LOUISIANA

NO. 2021-14812                                           DIVISION "H"

### ST. LUKE #2, LLC

### VERSUS

### HERMES HEALTH ALLIANCE, LLC

FILED: _____        _____
                                        DEPUTY CLERK

### RULE TO SHOW CAUSE

Considering the above and foregoing Exceptions of Improper Cumulation of Actions and Alternative Exception of Prematurity filed by Lawrence E. Stansberry;

**IT IS ORDERED** that Hermes Health Alliance, LLC appear and show cause on the _30_ day of _June_, 2022 at _9:00_ (a.m./p.m., as to why the Exceptions filed by Lawrence E. Stansberry should not be granted.

Covington, Louisiana, this _25_ day of _May_, 2022.

JUDGE ALAN A. ZAUNBRECHER

**PLEASE HOLD SERVICE.**

E-Filed on: 5/23/22 04:48 PM
Filed on: 5/24/22 08:56 AM

## 22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

## STATE OF LOUISIANA

NO. 2021-14812                                                    DIVISION "H"

### ST. LUKE #2, LLC

### VERSUS

### HERMES HEALTH ALLIANCE, LLC

FILED: _____        _____
                                                              DEPUTY CLERK

### MEMORANDUM IN SUPPORT OF EXCEPTION OF IMPROPER CUMULATION OF ACTIONS, INCLUDING IMPROPER JOINDER OF PARTIES AND ALTERNATE EXCEPTION OF PREMATURITY

Lawrence E. Stansberry ("Mr. Stansberry"), through his undersigned counsel, respectively submits his memorandum in support of exception of improper cumulation of actions, including improper joinder of parties, and alternative exception of prematurity. *See* La. Code Civ. Proc. Art. 926 A(1), A(7).

### I.    Background

The plaintiff-in-reconvention Hermes Health Alliance, LLC ("Hermes") has improperly cumulated two different causes of action. St. Luke #2, LLC ("St. Luke") filed suit regarding a lease with St. Luke as lessee and Hermes as lessor. St. Luke operates a Level-4 nursing home. Until Hurricane Ida, its operations were located in the former Little Sisters of the Poor building on the Westbank of New Orleans, Louisiana. St. Luke first started operations there in 2009, but ended them there after the property was destroyed by Hurricane Ida.

The operations were governed by a Lease with Hermes (the "Lease"). The Lease contained a casualty clause in paragraph 19 that stated:

> If through no fault, neglect, or design of Lessee, the premises are destroyed by fire *or other casualty or damaged to such an extent as to render them wholly unfit for occupancy, then this lease shall be cancelled. If, however, the premises can be repaired within 120 days from date of fire or casualty, then this lease will not be*

*Lessee shall be entitled only to such a reduction or remission of rent as shall be just and proportionate.*

Lease, ¶ 19 (emphasis added). Section § 20 of the Lease outlined the notice requirements. Namely, "[a]ll notices required to be given under the terms of the Lease," such as the one required by paragraph 19, "shall be in writing and sent by hand delivery or certified mail, return receipt requested." *Id.* at ¶ 20. Thus, in the event of a casualty that renders the Property "wholly unfit for occupancy," the Lease is cancelled automatically unless the (1) premises can be repaired in 120 days or (2) the Lessor sends a written notification to the Lessee within 30 days of the casualty by hand delivery or certified mail, return receipt requested that the Lessor will complete the repairs.

Hurricane Ida first hit the Leased Premises on August 29, 2021. The building did not fare well. As Hermes has alleged, there was "significant damage," "both catastrophic and unprecedented" damage, and "unprecedented and widescale water damage." Hermes Third-Party Demand, at ¶¶ 42, 45, 66. The electricity in the building and the HVAC went out on August 29, 2021. Faced with the severe water intrusion and no HVAC, the residents were evacuated on or about August 30, 2021.

Hermes never notified St. Luke of its intent to repair the building within thirty (30) days of Hurricane Ida or by September 28, 2021; and Hermes did not repair the building within 120 days of Hurricane Ida or by December 27, 2021. Thus, the Lease and Lease Extension were automatically cancelled under Section 19. St. Luke filed this suit to recover the sums owed to it by Hermes, including for rent paid that was not due and CAM charges that were inflated. The suit also sought a declaration that the Lease automatically cancelled under Section 19.

In response to the suit, Hermes reconvened against St. Luke for monies allegedly owed and filed a third-party demand against Mr. Stansberry as alleged guarantor of the Lease. But Hermes did not stop there. It also filed suit against ten insurance companies and against two insurance claims management companies (collectively, the "insurer defendants"). The thrust of the insurance claims is that Hermes has not been paid by its insurers for damages from Hurricane Ida.

II.    <u>Law and Argument</u>

Under Louisiana law, "[c]umulation of actions is the joinder of separate actions in the same

plaintiffs against one of more defendants." La. Code Civ. P. art. 461. Article 463 provides the applicable rule governing joinder in this case:

> Two or more parties may be joined in the same suit, either as plaintiffs or as defendants, if:
>
> (1)    There is a community of interest between the parties joined;
>
> (2)    Each of the actions cumulated is within the jurisdiction of the court and is brought in the proper venue; and
>
> (3)    All of the actions cumulated are mutually consistent and employ the same form of procedure.

The Louisiana Supreme Court has defined "community of interest" as "the parties' causes of actions (or defenses) arising out of the same facts, or presenting the same factual and legal issues." *Steven v. Bd. of Trustees of Police Pension Fund of City of Shreveport*, 309 So. 2d 144, 147 (La. 1975) (internal quotation marks omitted).

The requirements of article 463 are not met here when Hermes added the insurer defendants. The claims against the insurer defendants do not present a "community of interest" and does not involve the same factual and legal issues. The lease claims concern the interpretation of the Lease, how CAM charges are calculated, and how the Lease was automatically cancelled under Section 19 of the Lease. By contrast, the claims against the insurer defendants concern the interpretation of insurance policies, coverage defenses, and estimated costs of damages. St. Luke is not a party to the insurance documents, and the insurer defendants are not parties to the Lease. Thus, there is no community of interest, and the claims against the insurer defendants should not be cumulated with the Lease claims.

Solely in the alternative, Mr. Stansberry has also pled the exception of prematurity. *See* La. Code Civ. Proc. Art. 926 A(1). Hermes has pled that St. Luke's claims are premature, and the Court denied that exception. To the extent Hermes seeks appellate review and the Court's denial of the exception of prematurity is reversed, then the claims of Hermes, including the third-party claims against Mr. Stansberry, are likewise premature.

### III.    Conclusion

For all the foregoing reasons, the exception of improper cumulation of actions should be

Respectfully submitted,

William Peter Connick, 14158
CONNICK & CONNICK, LLC
3421 N. Causeway Boulevard, Suite 408
Metairie, Louisiana 70002
Telephone:      (504) 838-8777
Facsimile:      (504) 838-9903
pconnick@connicklaw.com

-and-

Bryan C. Reuter, 23910
Thomas P. Owen, Jr., 28181
STANLEY, REUTER, ROSS,
        THORNTON & ALFORD, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone:      (504) 523-1580
Facsimile:      (504) 524-0069
bcr@stanleyreuter.com
tpo@stanleyreuter.com

Attorneys for Lawrence E. Stansberry

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record via email, facsimile, and/or by U.S. Mail, postage pre-paid and properly addressed, this 23rd day of May, 2022.

May 26, 2022

William P Connick          Bryan C. Reuter              Willard O Lape, III
Attorney at Law           Attorney at Law             Attorney at Law
3421 N Causeway Blvd       909 Poydras St., Ste. 2500  1966 N Hwy 190 Ste B
Suite 408                 New Orleans, LA  70112      Covington LA  70433
Metairie LA  70002

Re:    St Luke #2 LLC
       vs. 2021-14812 Division H
       Hermes Health Alliance LLC

Dear Counsel:

Please be advised that the **Exceptions** filed on behalf of **Lawrence E. Stansberry** in the above captioned matter has been assigned for **June 30, 2022** at **9:00 a.m.** before **JUDGE ALAN A. ZAUNBRECHER, Division H** presiding.

**When applicable, a courtesy copy of all memoranda must be forwarded by FAX, mail OR hand delivery to the Judge's office. The only address for furnishing copies is: 701 N. Columbia St., Room 2010, Covington, LA 70433. The only FAX number for furnishing copies is 985-809-5344. Rule 3.3 of the Uniform rules of the Louisiana District Courts governs facsimile transmissions to Judges.**

Sincerely,

*Tricia Breaux*

Tricia Breaux
Deputy Clerk

**Hermes Health Alliance LLC**

**TO THE DEFENDANT:** Sedgwick Claims Management Services: Through its Registered Agent: Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, LA 70802

You are named as a defendant in the above captioned matter. Attached to this citation is a: Dilatory Exception of Prematurity, Answer, Affirmative Defenses, Reconventional Demand and Third-Party Demands

☐ Certified copy of Original Petition  ☐ Certified copy of Amended Petition  ☐ Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22ⁿᵈ Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.

If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.

B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.

C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

<center>THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.</center>

By order of the Honorable Judges of said Court this   <u>14th day of March, 2022</u>

<center>Melissa R. Henry, Clerk of Court</center>

BY: _____

Tricia Breaux, Deputy Clerk

Issued: 04/22/2022

**Counsel:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington LA 70433

Made service on the named party through the
CORPORATION SERVICE COMPANY

MAY 1 3 2022

by tendering a copy of this document to
MELISSA HARDIN

DY. M. LOCKWOOD #0803
Deputy Sheriff, Parish of East Baton Rouge, Louisiana

Received on _____, 2022, and on _____, 2022 I served a true copy of the within _____,

on _____ in person,

at domicile with _____,

in _____ Parish, a distance of _____ miles from the Justice Center.

State of Louisiana

**Hermes Health Alliance LLC**

**TO THE DEFENDANT:** Applied Building Sciences, Inc., Through its registered agent: C T Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816

You are named as a defendant in the above captioned matter. Attached to this citation is a: Dilatory Exception of Prematurity, Answer, Affirmative Defenses, Reconventional Demand and Third-Party Demands

☐ Certified copy of Original Petition ☐ Certified copy of Amended Petition ☐ Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22ⁿᵈ Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A.  A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.
    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C.  The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   14th day of March, 2022

*Melissa R. Henry,* Clerk of Court

BY: *Tricia Breaux*

Tricia Breaux, Deputy Clerk

Issued: 04/22/2022

Counsel:
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington LA 70433

made service on the named party through the

CT Corporation

MAY 1 3 2022

by tendering a copy of this document to

Ashley Minvielle

DY. M. LOCKWOOD #0803

Received on _____, 2022, and on _____, 2022 I served a true copy at East Baton Rouge, Louisiana

the within _____

on _____ in person,

at domicile with _____

in _____ Parish, a distance of _____ miles from the Justice Center.

FILED

State of Louisiana

Hermes Health Alliance LLC

**TO THE DEFENDANT: <u>Old Republic Union Insurance Company, through the
Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809</u>**

You are named as a defendant in the above captioned matter.  Attached to this citation is a:

[X] Certified copy of Original Petition    [ ] Certified copy of Amended Petition    [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A.  A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.

    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C.  The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this    <u>12th day of April, 2022</u>

*Melissa R. Henry,* Clerk of Court

BY:  Kaitlyn Guzzardo
Kaitlyn Guzzardo, Deputy Clerk

Issued:  04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____Parish, a distance of _____ miles from the Justice Center.

I made service on the named party through the
Office of the Secretary of State on

MAY 1 3 2022

by tendering a copy of this document to:

Deputy Sheriff

Parish of _____

101 - Regular Citation Rev 2/22

FILED

RECEIVED
DATE
MAY 1 2 2022
E.B.R. Sheriff Office

**TO THE DEFENDANT:  HDI Global Specialty SE, through the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809**

You are named as a defendant in the above captioned matter.  Attached to this citation is a:

[X] Certified copy of Original Petition    [ ] Certified copy of Amended Petition    [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A.  A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.
    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   12th day of April, 2022

*Melissa R. Henry* Clerk of Court

BY:  *Kaitlyn Guzzardo*
Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

I made service on the named party through the
Office of the Secretary of State on

MAY 13 2022

by tendering a copy of this document to:
JULIE NESBITT

Deputy Sheriff

Parish of _____

101 - Regular Citation Rev 2/22

FILED

MAY 24 2022 14:04 PELtas

RECEIVED
DATE
MAY 1 2 2022
E.B.R. Sheriff Office

State of Louisiana

Hermes Health Alliance LLC

**TO THE DEFENDANT: Safety Specialty Insurance Company, through the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809**

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[X] Certified copy of Original Petition    [ ] Certified copy of Amended Petition    [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.

    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.

B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.

C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   12th day of April, 2022

*Melissa R. Henry* Clerk of Court

BY: *Kaitlyn Guzzardo*

Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of

the within _____,

on _____ in person,

at domicile with _____,

in _____ Parish, a distance of _____ miles from the Justice Center.

_____

Deputy Sheriff

I made service on the named party through the

Office of the Secretary of State on

Parish of _____

101 - Regular Citation Rev 2/22

MAY 13 2022

FILED

Case 2:23-cv-02276-BSL-MBN     Document 1-7     Filed 06/29/23     Page 98 of 237

RECEIVED
DATE
MAY 1 2 2022
E.B.R. Sheriff Office

State of Louisiana
Hermes Health Alliance LLC

**TO THE DEFENDANT: <u>Lexington Insurance Company, through the Louisiana</u>**
<u>**Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809**</u>

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[X] Certified copy of Original Petition  [ ] Certified copy of Amended Petition  [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.
    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   <u>12th day of April, 2022</u>

*Melissa R. Henry* Clerk of Court

BY: *Kaitlyn Guzzardo*
    Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

I made service on the named party through the _____

                                                                    Deputy Sheriff
Office of the Secretary of State on   Parish of_____  FILED

MAY 13 2022

by tendering a copy of this document to:                    101 Regular Citation Rev 2/22

                                                            MAY 24 2022

RECEIVED
DATE

MAY 1 2 2022

E.B.R. Sheriff Office

AY 24 2022 14:05 PELias

State of Louisiana
Hermes Health Alliance LLC

**TO THE DEFENDANT:** <u>United Specialty Insurance Company, through the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809</u>

You are named as a defendant in the above captioned matter.  Attached to this citation is a:

[X] Certified copy of Original Petition ☐ Certified copy of Amended Petition ☐ Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A.  A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.
    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C.  The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this    <u>12th day of April, 2022</u>

*Melissa R. Henry,* Clerk of Court

BY: Kaitlyn Guzzardo
_____
Kaitlyn Guzzardo, Deputy Clerk

Issued:  04/28/2022
_____
**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

I made service on the named party through the
_____
Deputy Sheriff

Office of the Secretary of State on      Parish of_____

MAY 1 3 2022

by tendering a copy of this document to:

FILED

RECEIVED
DATE
MAY 1 2 2022
E.B.R. Sheriff

State of Louisiana

Hermes Health Alliance LLC

**TO THE DEFENDANT:** <u>General Security Indemnity Company Of Arizona, through the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809</u>

You are named as a defendant in the above captioned matter.  Attached to this citation is a:

[X] Certified copy of Original Petition   [ ] Certified copy of Amended Petition   [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A.  A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.

   If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.

B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.

C.  The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   <u>12th day of April, 2022</u>

*Melissa R. Henry* Clerk of Court

BY: *Kaitlyn Guzzardo*
Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

_____
Deputy Sheriff

I made service on the named party through the Parish of _____

Office of the Secretary of State on

MAY 13 2022

FILED

Original - Regular Citation Rev 2/22

RECEIVED
DATE
MAY 1 2 2022
E.B.R. Sheriff Office

State of Louisiana
Hermes Health Alliance LLC

**TO THE DEFENDANT: Steadfast Insurance Company, through the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809**

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[X] Certified copy of Original Petition    [ ] Certified copy of Amended Petition    [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.
    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30)** days after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   12th day of April, 2022

                                     *Melissa R. Henry* Clerk of Court

BY: *Kaitlyn Guzzardo*
            Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

I made service on the named party through the Parish of _____
Office of the Secretary of State on

                                  Deputy Sheriff

        MAY 13 2022                        MAY 24 2022

401 - Regular Citation Rev 2/22

FILED

RECEIVED
DATE
MAY 1 2 2022
E.B.R. Sheriff Office

State of Louisiana
Hermes Health Alliance LLC

**TO THE DEFENDANT:** QBE Specialty Insurance Company, through the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[X] Certified copy of Original Petition  [ ] Certified copy of Amended Petition  [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.

If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30)** days after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   12th day of April, 2022

*Melissa R. Henry* Clerk of Court

BY: *Kaitlyn Guzzardo*
Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

Counsel or Pro Se:
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

I made service on the named party through the
Office of the Secretary of State on

MAY 1 3 2022

____ a copy of this document to:

_____
Deputy Sheriff

Parish of _____

101 - Regular Citation Rev 2/22

FILED

RECEIVED
DATE

MAY 1 2 2022

E.B.R. Sheriff Office

**State of Louisiana**
**Hermes Health Alliance LLC**

**TO THE DEFENDANT:** <u>Indian Harbor Insurance Company, through the Louisiana
Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809</u>

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[X] Certified copy of Original Petition  [ ] Certified copy of Amended Petition  [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing
an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street,
Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil
Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him,
except as otherwise provided by law.
   If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his
answer to the petition within **thirty (30) days** after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained
and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the
exception is overruled or referred to the merits, or **fifteen (15) days** after service of the
Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the
Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer,
unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   <u>12th day of April, 2022</u>

*Melissa R. Henry*, Clerk of Court

BY: *Kaitlyn Guzzardo*
_____
Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of _____ miles from the Justice Center.

_____
Deputy Sheriff

I made service on the named party through the   Parish of _____

Office of the Secretary of State on          101 - Regular Citation Rev 2/22

...... 4 2 2022

**FILED**

RECEIVED
DATE

MAY 1 2 2022

E.B.R. Sheriff Office

State of Louisiana

**Hermes Health Alliance LLC, et al**

**TO THE DEFENDANT: Certain Underwriters At Lloyd's London, through the
Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809**

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[X] Certified copy of Original Petition   [ ] Certified copy of Amended Petition   [ ] Discovery Request

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.
    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30)** days after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this   12th day of April, 2022

*Melissa R. Henry* Clerk of Court

BY: *Kaitlyn Guzzardo*
Kaitlyn Guzzardo, Deputy Clerk

Issued: 04/28/2022

**Counsel or Pro Se:**
Willard O. Lape, III
Attorney at Law
1966 N. Highway 190, Suite B
Covington, La 70433

Received on _____, 2022, and on _____, 2022 I served a true copy of the within _____,
on _____ in person,
at domicile with _____,
in _____ Parish, a distance of ____ miles from the Justice Center.

I made service on the named party through the

Office of the Secretary of State on   Parish of _____

_____
Deputy Sheriff

MAY 13 2022

FILED

E.B.R. Sheriff Office



**Date:** 5/26/2022

**To:** 19858098777
**From:** Tiffany Hitdlebaugh

**Subject:** St. Luke #2, LLC v. Hermes Health Alliance, LLC, Docket No.2021-14812, "H"

Dear Tricia,

Attached please find correspondence in reference to the captioned case.

Sincerely,

--
Tiffany M. Hitdlebaugh
Of counsel, The Lape Law Firm
1966 N. Highway 190, Suite B
Covington, LA 70433
Voice- 985-246-7933
Fax- 985-590-5112
Email- tiffany@lapelawfirm.com

FAX COPY

MAY 2 6 2022

# THE LAW OFFICE OF TREY LAPE

WILLARD O. LAPE, III "TREY", ATTORNEY AT LAW
1966 N HIGHWAY 190, SUITE B
COVINGTON, LA 70433

| | |
|---|---|
| OFFICE: (985) 246-7933 | ATTORNEYS OF COUNSEL: |
| FAX: (985) 590-5112 | TIFFANY M. HITDLEBAUGH |
| EMAIL: TREY@LAPELAWFIRM.COM | RICHARD L. MULLER |
| | SYLVIA G. MULLER |

May 24, 2022

Clerk of Court
Parish of St. Tammany
Attn: Tricia, Division H
701 N. Columbia Street
Covington, LA 70433
*(Sent by facsimile to (985) 809-8777)*

> Re:     *St. Luke #2, LLC v. Hermes Health Alliance, LLC*
>         22nd Judicial District Court Docket No. 2021-14812, Division "H"

Dear Tricia:

The exceptions filed by St. Luke #2 in this matter have already been set for hearing on June 30, 2022. Hermes Health Alliance, LLC will waive formal service of the exceptions e-filed by counsel for Lawrence E. Stansberry on May 23, 2022. Please send a Notice Letter to my office when Mr. Stansberry's exceptions are set for hearing.

Should you have any questions, please contact me at your convenience.

With kind regards, I remain

Sincerely,

Willard O. Lape, III (Trey)

WOL/tmh
CC:    Hermes Health Alliance, LLC *(Sent by email only)*
        William P. Connick, Esq. *(Sent by email only)*
        Bryan C. Reuter, Esq. *(Sent by email only)*

FAX COPY

MAY 2 6 2022



# TRANSACTION REPORT

MAY/26/2022/THU 09:53 AM

FAX(RX)

| # | DATE | START T. | SENDER | COM.TIME | PAGE | TYPE/NOTE | | FILE |
|---|---|---|---|---|---|---|---|---|
| 001 | MAY/26 | 09:52AM | 9855905112 | 0:01:03 | 2 | OK | ECM | 2553 |

WE NOW OFFER E-FILING
PLEASE SEE OUR WEBSITE WWW.STTAMMANYCLERK.ORG

DATE OF CONFIRMATION: MAY 27, 2022      FILING PARTY: HERMES HEALTH ALLIANCE LLC

TO: TIFFANY M HITDLEBAUGH, ATTY AT LAW      FAX#: 985-590-5112

FROM: ST TAMMANY PARISH CLERK OF COURT      Phone: 985-809-8700
                                            Fax:  985-809-8777

DATE FAX FILING RECEIVED:  MAY 26, 2022

SUIT CAPTION: HERMES HEALTH ALLIANCE LLC

DOCUMENT RECEIVED: **LTR FROM ATTY: HERMES HEALTH ALLIANCE LLC TO WAIVE FORMAL SERVICE OF EXCEPTION ON 5/23/22; SEND NTC LTR WHEN EXCEPTIONS ARE SET FOR HEARING**

SUIT NUMBER: **2021-14812 "H"    TOTAL  AMOUNT DUE: $20.00**

## RECEIPT OF TRANSMISSION

PLEASE ATTACH THIS FAXED RECEIPT OF TRANSMISSION TO THE FRONT PAGE OF THE ORIGINAL PLEADINGS WHEN FILING TO ENSURE THAT THE ORIGINALS ARE FILED IN THE SAME SUIT AS THE FAX FILING. **PLACE NEW SUIT NUMBER ON ALL PLEADINGS.**

**La. R.S. 13:850.** Facsimile transmission; filings in civil actions; fees; equipment and supplies

A.      Any **document** in a civil action may be filed with the clerk of court by facsimile transmission. All clerks of court shall make available for their use equipment to accommodate facsimile filing in civil actions. *Filing shall be deemed complete at the time the facsimile transmission is received by the clerk of court.* No later than on the first business day after receiving a facsimile filing, the clerk of court shall transmit to the filing party via facsimile a confirmation of receipt and include a statement of the fees for the facsimile filing and filing of the original document. The facsimile filing fee and transmission fee are incurred upon receipt of the facsimile filing by the clerk of court and payable as provided in Subsection B of this Section. The facsimile filing shall have the same force and effect as filing the original document, if the filing party complies with Subsection B of this Section.

B.      Within seven days, exclusive of legal holidays, after the clerk of court receives the facsimile filing, all of the following shall be delivered to the clerk of court:

   (1)      The original document identical to the facsimile filing in *number of pages and in content of each page including any attachments, exhibits, and orders.* A document not identical to the facsimile filing or which includes pages not included in the facsimile filing shall not be considered the original document.

   (2)      The fees for the facsimile filing and filing of the original document stated on the confirmation of receipt, if any. (This charge includes fees for (a) filing the faxed documents, (b) fax confirmation fee of $15.00 and (c) fee for filing of the original pleadings.)

   (3)      A transmission fee of five dollars.

C.      **If the filing party fails to comply with any of the requirements of Subsection B of this Section, the facsimile filing shall have no force or effect.** The various district courts may provide by court rule for other matters related to filings by facsimile transmission.

PLEASE CALL THE CLERK'S OFFICE IF YOU HAVE ANY QUESTIONS.
ATTENTION FILING CLERK

# Uniti Fiber Fax Service
## FAX DELIVERY NOTIFICATION

**Account: FB9858098777**
**5/27/2022 2:49:26 PM**

The following fax was **successfully** sent to the specified recipient.

**Fax Number:** **9855905112**
Remote CSID:  9855905112 (station ID of receiving fax device)
Pages:  1
Status:  No errors

# FAX TRANSMISSION DETAILS

Sent On:  5/27/2022 2:50:15 PM
Duration:  71 seconds
Speed:  14400 bps
Retries:  0
Event ID:  e24fd07a-f441-474a-9248-9533fa4f921e


Uniti Fiber



Melissa R. Henry
**CLERK OF COURT**
22nd Judicial District Court
Parish of St. Tammany

WE NOW OFFER E-FILING
PLEASE SEE OUR WEBSITE WWW.STTAMMANYCLERK.ORG

DATE OF CONFIRMATION: MAY 27, 2022    FILING PARTY: HERMES HEALTH ALLIANCE LLC

TO: TIFFANY M HUTDLEBAUGH, ATTY AT LAW      FAX#: 985-590-5112

FROM: ST TAMMANY PARISH CLERK OF COURT      Phone: 985-809-8700
                                            Fax:   985-809-8777

DATE FAX FILING RECEIVED: _MAY 26, 2022

SUIT CAPTION: HERMES HEALTH ALLIANCE LLC

DOCUMENT RECEIVED: LTR FROM ATTY: HERMES HEALTH ALLIANCE LLC TO WAIVE
FORMAL SERVICE OF EXCEPTION ON 5/23/22; SEND NTC LTR WHEN EXCEPTIONS
ARE SET FOR HEARING

SUIT NUMBER: 2021-14812 "H"    TOTAL AMOUNT DUE: $20.00

RECEIPT OF TRANSMISSION

PLEASE ATTACH THIS FAXED RECEIPT OF TRANSMISSION TO THE FRONT PAGE OF THE ORIGINAL
PLEADINGS WHEN FILING TO ENSURE THAT THE ORIGINALS ARE FILED IN THE SAME SUIT AS THE
FAX FILING. PLACE NEW SUIT NUMBER ON ALL PLEADINGS.

La. R.S. 13:850. Facsimile transmission; filings in civil actions; fees; equipment and supplies

A.    Any document in a civil action may be filed with the clerk of court by facsimile transmission. All clerks of court
shall make available for their use equipment to accommodate facsimile filing in civil actions. Filing shall be
deemed complete at the time the facsimile transmission is received by the clerk of court. No later than on the first
business day after receiving a facsimile filing, the clerk of court shall transmit to the filing party via facsimile a
confirmation of receipt and include a statement of the fees for the facsimile filing and filing of the original
document. The facsimile filing fee and transmission fee are incurred upon receipt of the facsimile filing by the clerk
of court and payable as provided in Subsection D of this Section. The facsimile filing shall have the same force and
effect as filing the original document, if the filing party complies with Subsection B of this Section.

B.    Within seven days, exclusive of legal holidays, after the clerk of court receives the facsimile filing, all of the
following shall be delivered to the clerk of court:

      (1)   The original document identical to the facsimile filing in number of pages and in content of each
            page including any attachments, exhibits, and orders. A document not identical to the facsimile
            filing or which includes pages not included in the facsimile filing shall not be considered the
            original document.
      (2)   The fees for the facsimile filing and filing of the original document stated on the confirmation of
            receipt, if any. (This charge includes fees for (a) filing the faxed document, (b) fax confirmation
            fee of $15.00 and (c) fee for filing of the original pleading.)
      (3)   A transmission fee of five dollars.

C.    If the filing party fails to comply with any of the requirements of Subsection B of this Section, the facsimile
filing shall have no force or effect. The various district courts may provide by court rule for other matters related
to filings by facsimile transmission.

PLEASE CALL THE CLERK'S OFFICE IF YOU HAVE ANY QUESTIONS.
ATTENTION FILING CLERK
THIS IS THE ORIGINAL OF A PREVIOUSLY FAXED PLEADING.

P.O. Box 1090 Covington LA 70434 (985) 809-8700            SJR

Suit 2021-14812 H
E-Filed on: 6/13/22 03:41 PM
Filed on: 6/13/22 03:49 PM

TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 2021-14812                                    DIVISION "H"

ST. LUKE #2, LLC

VERSUS

HERMES HEALTH ALLIANCE, LLC

FILED: _____     _____
                                         DEPUTY CLERK

## SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. ANSWER AND AFFIRMATIVE DEFENSES TO THIRD-PARTY DEMAND

NOW INTO COURT, through undersigned counsel, comes Defendant, SEDGWICK CLAIMS MANAGEMENT SERVICES INC. ("SCMS"), which submits this Answer to the Third-Party Demand filed by Hermes Health Alliance, LLC (hereinafter "Hermes") as follows:

## ANSWER TO THIRD-PARTYY DEMAND

The first unnumbered paragraph of the petition requires no response other than noting that St. Luke's failure to specify its Parish of domicile and affirmatively plead that St. Luke's is a Louisiana liability domiciled in the Parish of Orleans, State of Louisiana.

## THIRD PARTY DEMAND

35.    The allegations contained in Paragraph 35 of the Petition are denied for lack of sufficient information to justify a belief thereof.

36.    The allegations contained in Paragraph 36 of the Petition are denied for lack of sufficient information to justify a belief thereof.

37.    The allegations contained in Paragraph 37 of the Petition are denied.

38.    The allegations contained in Paragraph 38 of the Petition are denied.

39.    The allegations contained in Paragraph 39 of the Petition are denied for lack of sufficient information to justify a belief thereof.

40.    The allegations contained in Paragraph 40 of the Petition are denied for lack of sufficient information to justify a belief thereof.

42.    The allegations contained in Paragraph 42 of the Petition are denied for lack of sufficient information to justify a belief thereof.

43.    The allegations contained in Paragraph 43 of the Petition are denied for lack of sufficient information to justify a belief thereof.

44.    The allegations contained in Paragraph 44 of the Petition are denied for lack of sufficient information to justify a belief thereof.

45.    The allegations contained in Paragraph 45 of the Petition are denied for lack of sufficient information to justify a belief thereof.

46.    The allegations contained in Paragraph 46 of the Petition are denied for lack of sufficient information to justify a belief thereof.

47.    The allegations contained in Paragraph 47 of the Petition are denied for lack of sufficient information to justify a belief thereof.

48.    The allegations contained in Paragraph 48 of the Petition are denied for lack of sufficient information to justify a belief thereof.

49.    The allegations contained in Paragraph 49 of the Petition are admitted.

50.    The allegations contained in Paragraph 50 of the Petition are denied for lack of sufficient information to justify a belief hereof.

51.    The allegations contained in Paragraph 51 of the Petition are denied for lack of sufficient information to justify a belief thereof.

52.    The allegations contained in Paragraph 52 of the Petition are denied for lack of sufficient information to justify a belief thereof.

53.    The allegations contained in Paragraph 53 of the Petition are denied for lack of sufficient information to justify a belief thereof.

54.    The allegations contained in Paragraph 54 of the Petition are denied for lack of sufficient information to justify a belief thereof.

55. The allegations contained in Paragraph 55 of the Petition are denied for lack of sufficient information to justify a belief thereof.

56.    The allegations contained in Paragraph 56 of the Petition are denied for lack of sufficient information to justify a belief thereof.

information to justify a belief thereof.

58. The allegations contained in Paragraph 588 of the Petition are denied for lack of sufficient information to justify a belief thereof.

59. The allegations contained in Paragraph 59 of the Petition are denied for lack of sufficient information to justify a belief thereof.

60. The allegations contained in Paragraph 60 of the Petition are denied for lack of sufficient information to justify a belief thereof.

61. The allegations contained in Paragraph 61 of the Petition are denied for lack of sufficient information to justify a belief thereof.

62. The allegations contained in Paragraph 62 of the Petition are denied for lack of sufficient information to justify a belief thereof.

63. The allegations contained in Paragraph 63 of the Petition are denied for lack of sufficient information to justify a belief thereof.

64. The allegations contained in Paragraph 64 of the Petition are denied for lack of sufficient information to justify a belief thereof.

65. The allegations contained in Paragraph 65 of the Petition are denied for lack of sufficient information to justify a belief thereof.

66. The allegations contained in Paragraph 66 of the Petition are denied for lack of sufficient information to justify a belief thereof.

67. The allegations contained in Paragraph 67 of the Petition are denied for lack of sufficient information to justify a belief thereof.

68. The allegations contained in Paragraph 68 of the Petition are denied for lack of sufficient information to justify a belief thereof.

69. The allegations contained in Paragraph 69 of the Petition are denied for lack of sufficient information to justify a belief thereof.

70. The allegations contained in Paragraph 70 of the Petition are denied for lack of sufficient information to justify a belief thereof.

71. The allegations contained in Paragraph 71 of the Petition are denied for lack of sufficient information to justify a belief thereof.

72. The allegations contained in Paragraph 72 of the Petition are denied for lack of sufficient

73. The allegations contained in Paragraph 73 of the Petition are denied.

74. The allegations contained in Paragraph 74 of the Petition are denied for lack of sufficient information to justify a belief thereof.

75. The allegations contained in Paragraph 75 of the Petition are denied for lack of sufficient information to justify a belief thereof.

76. The allegations contained in Paragraph 76 of the Petition are denied.

77. The allegations contained in Paragraph 77 of the Petition are denied.

78. The allegations contained in Paragraph 78 of the Petition are denied.

79. The allegations contained in Paragraph 79 of the Petition are denied.

80. The allegations contained in Paragraph 80 of the Petition are denied.

81. The allegations contained in Paragraph 81 of the Petition are denied.

82. The allegations contained in Paragraph 82 of the Petition are denied.

83. The allegations contained in Paragraph 83 of the Petition are denied for lack of sufficient information to justify a belief thereof.

84. The allegations contained in Paragraph 84 of the Petition are denied for lack of sufficient information to justify a belief thereof.

85. The allegations contained in Paragraph 85 of the Petition are denied \

86. The allegations contained in Paragraph 86 of the Petition are denied for lack of sufficient information to justify a belief thereof.

87. The allegations contained in Paragraph 87 of the Petition are denied for lack of sufficient information to justify a belief thereof.

## V. AFFIRMATIVE DEFENSES

AND NOW, in further answer to the Third-Party Petition, and without assuming any burdens not otherwise imposed by law, SCMS asserts the following defenses that may be available to it in this matter. Upon the completion of discovery, and if the facts warrant, SCMS may withdraw any of these defenses as may be appropriate. Further, SCMS reserves the right to amend its answer to assert additional defenses as discovery progresses.

1. The Petition fails to state a claim upon which relief can be granted.

2. Plaintiff has no cause of action against SCMS.

4.    Plaintiff's damages, if any, are the result of acts and/or omissions, fault, negligence, breach of contract, violation of statute, and/or breach of duty, by or of persons, entities, and/or parties over whom SCMS had no control and for whom SCMS has no legal responsibility. Such acts and/or omissions were the sole cause, sole proximate cause, producing cause, or a new and independent intervening or superseding cause of the alleged injuries to Plaintiff.

5.    SCMS denies that it breached any contract or violated any statutory or common law duty owed to Plaintiff.

6.    SCMS denies that it is a party to any contract with Plaintiff and further denies privity of contract between SCMS and Plaintiff. Further, any of Plaintiff's claims against SCMS relating to or arising from contract are barred because Plaintiff is not a party to the Policy, which forms the basis of Plaintiff's breach of contract cause of action against SCMS, and because no other contract exists between Plaintiff and SCMS.

7.    SCMS denies it violated any statute, including LA-R.S. 22:1892 and LA-R.S. 22:1973.

8.    SCMS pleads the doctrine of comparative good faith and fair dealing as an equitable factor in adjudging the relative positions of the parties in this case.

9.    Plaintiff failed to exercise reasonable care to avoid and mitigate the damages it seeks to recover herein, which SCMS disputes; and accordingly, SCMS is not liable for any damages that could and should have been avoided or mitigated.

10.    Plaintiff's claims and the damages it seeks are barred because Plaintiff has failed to comply with or satisfy conditions precedent.

11.    Plaintiff's claims and the damages it seeks are barred because granting Plaintiff the relief it requests would result in unjust enrichment.

12.    Plaintiff claims, if any, may be barred or limited by the conditions, definitions, exclusions, limitations, deductible, and other terms/provisions in the Policy; and SCMS incorporates herein by reference the entirety of the Policy, and to the extent necessary, affirmatively asserts every condition, definition, exclusion, limitation, and every other

defendants to the extent such defenses are not inconsistent with the defenses asserted herein.

<div align="center"><strong><u>PRAYER</u></strong></div>

WHEREFORE, SCMS prays that the above and foregoing Answer be deemed good and sufficient, and that the demands of Third-Party Plaintiff be dismissed at their costs.

Respectfully submitted,

/s/ Bruce R. Wilkin
Bruce R. Wilkin, #40210
Shackelford, Bowen, McKinley & Norton, LLP
717 Texas Ave., 27th Floor
Houston, Texas 77002
832.415.1773 direct
832.565.9030 fax
bwilkin@shackelford.law

*Attorneys for Sedgwick Claims Management Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of June 2022 a true and correct copy of the foregoing has been served upon all known counsel of record by placing same in the United States Mail, postage prepaid and property addressed, via facsimile and/or electronically.

/s/ *Bruce R. Wilkin*
Bruce R. Wilkin

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
OFFICE OF THE CLERK

CAROL L. MICHEL

CLERK

500 POYDRAS ST. ROOM C-151

NEW ORLEANS, LA 70130

December 8, 2022

2021-14812 "H"

FILED

DEC 09 2022

MELISSA R. HENRY, CLERK
Deputy
Gretchen H. Moss, Deputy Clerk

Clerk
22nd Judicial District Court
Parish of St. Tammany
P.O. Box 1090
Covington, LA 70434

RE:  ST. LUKE #2, LLC
     v.
     HERMES HEALTH ALLIANCE, LLC
     Civil Action No. 22-1723 R(3)
     Your No. 21-14812

Dear Sir:

     I am enclosing herewith a certified copy of an order entered by this court on 12/8/2022 remanding the above-entitled case to your court.

                          Very truly yours,

                          CAROL L. MICHEL, CLERK

                     By: _M. Mullen_____
                          Deputy Clerk

Enclosure

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ST. LUKE #2, LLC | CIVIL ACTION |
| VERSUS | NO. 22-1723 |
| HERMES HEALTH ALLIANCE, LLC | SECTION "R" (3) |

## ORDER AND REASONS

Before the Court is plaintiff St. Luke #2, LLC's ("St. Luke") motion to remand[1] and defendant Hermes Health Alliance, LLC's ("Hermes") motion to remand.[2]  The removing third-party defendants (the "Insurers") oppose the motions to remand.[3]  For the following reasons, the Court grants the motions to remand.

2021-14812 "H"

FILED

DEC 09 2022

MELISSA R. HENRY / CLERK
Deputy
Gretchen H. Moss, Deputy Clerk

---

[1]  R. Doc. 11.
[2]  R. Doc. 8.
[3]  R. Doc. 16.  The removing third-party defendants are the following insurers: Certain Underwriters at Lloyd's, London Subscribing to Policy No. AMR-40526-06 (erroneously named as Certain Underwriters at Lloyds, London), Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, Safety Specialty Insurance Company, HDI Global Specialty SE, and Old Republic Union Insurance Company.

## I. BACKGROUND

This case arises from a landlord-tenant dispute between St. Luke and Hermes brought about by property damage following Hurricane Ida.[4] St. Luke operates a nursing facility for elderly residents located in New Orleans, Louisiana.[5] Hermes is the lessor for the property on which St. Luke operates its nursing facility, located at 4201 Woodland Drive in New Orleans.[6] Hermes and St. Luke originally entered into a seven-year lease agreement in 2009, which was extended for an additional five years in 2016.[7] In August of 2021, Hurricane Ida caused significant damage to the property, forcing the residents to evacuate the premises.[8] On November 8, 2021, St. Luke sued Hermes in the 22nd Judicial District Court for St. Tammany Parish. St. Luke alleged that Hurricane Ida rendered the property unfit for use in violation of the lease agreement, unless the lessor took certain affirmative steps to rectify the deficiency.[9] These remedial measures included notifying the tenant within 30 days that the lessor would repair the property, and following through with the repairs within 120 days.[10] In response, Hermes

---

[4]    R. Doc. 9-1 at 1.
[5]    R. Doc. 1-3 at 4 (Complaint ¶ 2).
[6]    *Id.*
[7]    *Id.* (Complaint ¶¶ 2-3).
[8]    *Id.* at 5 (Complaint ¶ 6).
[9]    *Id.* at 7 (Complaint ¶¶ 11-12).
[10]   *Id.*

2

asserted several affirmative defenses and counterclaims, including a third-party demand against the Insurers for alleged denial of coverage in bad faith.[11] Hermes contends that it could not meet its contractual obligation, in part, because "the denial of Hermes' insurance claim by Hermes' Property Insurers has made that financially impossible."[12]

On June 10, 2022, the Insurers removed this case to federal court.[13] Subsequently, plaintiff and defendant each moved to remand the case to state court.[14] In their motions to remand, plaintiff and defendant contend that neither 9 U.S.C. § 205, nor 28 U.S.C. § 1441(c) authorizes third-party defendants to remove cases to federal court.[15] The Insurers oppose the motions to remand.[16]

The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Federal courts have jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether a claim arises federal law must be determined by referring to the "well-pleaded complaint."

---

[11]   R. Doc. 1-3 at 21-30 (Third-Party Complaint ¶¶ 35-85).
[12]   *Id.* at 31 (Third-Party Complaint ¶ 86).
[13]   R. Doc. 1.
[14]   R. Docs. 8 & 11.
[15]   R. Doc. 9-1 at 2.
[16]   R. Doc. 16.

*Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 8808 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983)); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). For diversity jurisdiction to exist, there must be complete diversity between plaintiffs and defendants, and the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

A defendant may remove a civil action filed in state court if a federal court would have original jurisdiction over the suit. 28 U.S.C. § 1441(a). On a motion to remand, the removing party bears the burden of establishing that one of the bases of jurisdiction exists and that the removal was not procedurally defective. *Shearer v. Sw. Serv. Life Ins. Co.*, 516 F.3d 276, 278 (5th Cir. 2008). "[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014) (internal quotation marks omitted). A court "must remand a case if at any time before final judgment it appears that the district court lacks subject matter jurisdiction over a case removed from state court." *Id.* (internal quotation marks omitted).

## III. DISCUSSION

### A. Removal Under Section 205

The starting point for any jurisdictional issue is the axiom that "[f]ederal courts are court of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Thus, the Court "must presume that a suit lies outside [its] jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking [removal]." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Further, the right to removal is statutory. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005). Without a statutory basis for removal, the Court must dismiss this case for lack of jurisdiction. *Id.*

The Insurers assert that two different statutes authorize their removal of this case. The first statutory basis for removal asserted by the Insurers is 9 U.S.C. § 205, the removal provision in the implementing legislation for the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Section 205 states that:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the **defendant or the defendants** may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which its removed.

9 U.S.C. § 205 (emphasis added). The parties contest whether Section 205 authorizes third-party defendants to remove a case.

The parties propose two different interpretations of the term "defendant" in Section 205. The Insurers contend that "defendant" includes both the parties sued by the original plaintiff *and* third-party defendants brought into the case by a defendant. Plaintiff and defendant assert that this Court should interpret "defendant" in the same manner that the Supreme Court did when it analyzed 28 U.S.C. § 1441(a), the general removal statute, in *Home Depot. U.S.A., Inc. v. Jackson*, 139 S.Ct. 1743 (2019). Section 1441(a) states that:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the **defendant or the defendants**, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (emphasis added). The Supreme Court held that "defendant" as used in Section 1441(a) "refers only to the part[ies] sued by the original plaintiff," and not third-party defendants brought into the action by a counterclaim. *Id.* at 1746. The Court explained that this is so, in part, because "the general removal statute permits 'the defendant or the defendants' in a state-court action over which the federal courts would have original jurisdiction to remove that action to federal court." *Id.* The Court went on to explain that the determination of whether the district court would have had original jurisdiction requires courts

6

to view "the action as defined by the plaintiff's complaint." *Id.* And, "'the defendant' to that action is the defendant to that complaint, not a party named in a counterclaim." *Id.*

The Court finds that the reasoning of *Home Depot* is applicable here, and the term "defendant" in Section 205 likewise does not include third-party defendants. That *Home Depot* dealt with a different removal statute does not persuade the Court that the case is inapposite. When the language in one statute "tracks the wording of" another, this is "a strong indication that the two statutes should be interpreted [similarly]." *Northcross v. Bd. of Educ. of Memphis City Schools*, 412 U.S. 427, 428 (1973). This is especially so where the two statutes share a common purpose. *Id.* Despite the Insurers' contentions otherwise, *Home Depot* not only dealt with the same language that the Court must interpret here, but the context— defining which parties may remove a case—is also identical. Accordingly, the Court sees no reason to give the term "defendant" a different meaning than the Supreme Court did when analyzing the general removal statute in *Home Depot*.

But even before *Home Depot*, several courts in this circuit interpreted Section 205 as precluding removal by third-party defendants. *See, e.g., Kinder Morgan Louisiana Pipeline LLC v. Welspun Gujarat Stahl Rohren Ltd.*, 752 F. Supp. 2d 772, 778 (S.D. Tex. 2010) (holding that the term "defendant" as used in Section 205 "exclude[s] third-party defendants"); *Caringal v. Karteria Shipping,*

7

*Ltd.*, 108 F. Supp. 2d 651, 654 (E.D. La. 2000) (holding that under Section 205, third-party defendants "did not have any statutory authority to remove the case"); *IQ Holdings, Inc. v. Villa D'Este Condo. Owners Ass'n, Inc.*, No. 11-1770, 2011 WL 2600561, at *2 (S.D. Tex. June 29, 2011) (likewise).

The Insurers, on the other hand, do not point to a single case that analyzed the present issue and reached the conclusion they propose. Nor do they make any attempt to distinguish the cases holding that third-party defendants may not remove a case under Section 205. In fact, the only case the Insurers cite in which a court allowed removal by a third-party defendant under Section 205 is *Viator v. Dauterive Contractors, Inc.*, 638 F. Supp. 2d 641 (E.D. La. 2009). But that non-precedential case did not analyze the issue of the meaning of "defendant" in Section 205 and appeared to simply assume that third-party claims were removable if the dispute satisfied the requirements for arbitrability. Further, that case is no longer good law, if it ever was. The law on removal jurisdiction in the Fifth Circuit was different when *Viator* was decided, as explained in Section III.B, *infra*. *Viator* was decided before both the Supreme Court's *Home Depot* decision and a 2011 amendment to 28 U.S.C. 1441(c). *See* discussion, *infra*.

Most importantly, the interpretation proposed by plaintiff and defendant is the most faithful reading of Section 205. "[S]tatutory language cannot be construed in a vacuum," and it is axiomatic that "the words of a statute must be

8

read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) (citing *United States v. Morton*, 467 U.S. 822, 828 (1984)); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (stating that the duty of courts, "after all, is 'to construe statutes, not isolated provisions.'" (quoting *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010))). Here, the context makes clear that that plaintiff and defendant's proposed interpretation is the better of the two options. In the removal context, a "civil action" means "the entire case, not an individual claim." *Carey v. Bank of Am., N.A.*, 904 F. Supp. 2d 617, 620 (N.D. Tex. 2012); *see also Home Depot*, 139 S. Ct. at 1748 (emphasizing that Section 1441(a), which is similarly worded as Section 205, "refers to 'civil actions,' not 'claims'"). Accordingly, the phrase "action or proceeding" in Section 205 refers to the entire lawsuit and not individual claims such as defendant's claim against the Insurers here. But only Hermes is the "defendant" in the original state court action. The Insurers may be characterized as defendants with respect to Hermes' third-party claim, but they are not *the* "defendant or defendants" in the "action or proceeding." Because the statute tethers the term "defendant" to the "action," and not a claim, the proper reading of Section 205 is that "defendant" means only those parties sued by the original plaintiffs. The Supreme Court's construction of the analogous provisions in Section 1441(a) cements this reading as the proper

9

interpretation. *See Home Depot*, 139 S. Ct. at 1748 ("[B]ecause the action as defined by the plaintiff's complaint is the 'civil action of which the district court' must have 'original jurisdiction,' 'the defendant' to that action is the defendant to the complaint, not a [third-party defendant] named in a counterclaim.").

Comparison of Section 205 to broader removal statutes also confirms this reading of the text. In other instances, "Congress has shown the ability to clearly extend the reach of removal statutes to . . . third-party defendants." *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 333 (4th Cir. 2008). For example, 28 U.S.C. § 1452(a) authorizes "[a] party" in a civil action to "remove any claim or cause of action" over which a federal court would have bankruptcy jurisdiction. Additionally, §§ 1454(a) and (b) allow "any party" to remove "[a] civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights." Likewise, "the Federal Rules of Civil Procedure differentiate between third-party defendants, counterclaim defendants, and defendants." *Home Depot*, 139 S. Ct. at 1744; *see also* Fed. R. Civ. P. 14, 12(a)(1)(A)–(B). Congress could have used language indicating that third-party defendants may remove a case under Section 205, but it chose not to. Policy considerations notwithstanding, the Court will not stretch the definition of "defendant" beyond what Congress decided. *Cf. Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) ("Due regard for the rightful independence of state

10

governments . . . requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute has defined.").

The Insurers contend that binding precedent requires the Court to construe Section 205 broadly and resolve ambiguities in favor of removal, instead of applying the general rule that removal statutes are strictly construed in favor of remand.[17] They assert that, viewing the statute in this light, "defendant" should be understood as including third-party defendants. To be sure, the Fifth Circuit has characterized Section 205 as "one of the broadest removal provisions." *Acosta v. Master Maint. & Const. Inc.*, 452 F.3d 373, 377 (5th Cir. 2006). And, the *Acosta* court added that "the general rule of construing removal statutes strictly against removal 'cannot apply to Convention Act cases because in these instances, Congress created special removal rights to channel cases into federal court.'" *Id.* (citing *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1207-08 (5th Cir. 1991)). But *Acosta* dealt with a different question. That case was removed by a defendant, not a third-party defendant. It focused on when an action "relates to" an arbitration agreement or award under the Convention. *Id.* Moreover, *McDermott*, which *Acosta* quoted for the proposition that Section 205 should not be strictly construed, dealt with whether the removing defendant had contractually waived its removal right. 944 F.2d 1199, 1207-08. Those cases,

---

[17]   R. Doc. 11 at 3.

11

which address the kinds of disputes that may be removed under Section 205, do

not address the question of *who* may remove a case pursuant to Section 205.

Lastly, even construing Section 205 liberally as the Insurers ask the Court to, there

are no ambiguities to resolve in favor of removal here. Accordingly, the Court finds

that Section 205 does not permit removal by third-party defendants such as the

Insurers.


### B.     Removal Under Section 1441(c)

Without authorization for removal in Section 205, the Insurers offer an

alternate statute pursuant to which they claim removal is proper, 28 U.S.C. §

1441(c). Section 1441(c)(1) states, in relevant part:

> (1) If a **civil action** includes—
> (A) a claim arising under the Constitution, laws, or treaties of the
> United States (within the meaning of section 1331 of this title),
> and
> (B) a claim not within the original or supplemental jurisdiction
> of the district court or a claim that has been made nonremovable
> by statute,
>
> > the entire action may be removed if the action would be
> > removable without the inclusion of the claim described in
> > subparagraph (B).
>
> (2) Upon removal of an action described in paragraph (1), the
> district court shall sever from the action all claims described in
> paragraph (1)(B) and shall remand the severed claims to the
> State court from which the action was removed. Only
> **defendants** against whom a claim described in paragraph

> (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1).

8 U.S.C. § 1441(c) (emphasis added). The linchpin of the Insurers' position is not the current text of Section 1441(c), but a 1980 Fifth Circuit decision that construed an older version of the statute. *See Carl Heck Engineers, Inc. v. Lafourche Par. Police Jury*, 622 F.2d 133, 135 (5th Cir. 1980). In *Carl Heck*, the Fifth Circuit held that a third-party defendant could remove a case under Section 1441(c), if the third-party complaint states a "separate and independent" claim which, if sued upon alone, could have been brought properly in federal court. *Id.* at 135-37. But *Carl Heck* is no longer good law. Obviously, the Court is bound by Fifth Circuit precedent. Fifth Circuit panel decisions are binding on an issue, "absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or [the Fifth Circuit] en banc court." *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). Nevertheless, *Carl Heck*, if not superseded by statute, has been implicitly overruled by the Supreme Court. *Cf. Fishback Nursery, Inc. v. PNC Bank, N.A.*, No. 16-3267, 2017 WL 6497802, at *4 (N.D. Tex. Dec. 19, 2017), *aff'd sub nom. Fishback Nursery, Inc. v. PNC Bank, Nat'l Ass'n*, 920 F.3d 932 (5th Cir. 2019) (stating that "the rule of orderliness requires [district courts] to follow an earlier panel opinion until it is overruled by the en banc Fifth Circuit or the Supreme Court."); *see also Avalos-Lopez v. Wolf*, No. 20-22, 2020 WL 13556671, at *5 (W.D. Tex. May 14, 2020) (holding that the court was bound

by an earlier Fifth Circuit panel decision "because neither the Supreme Court nor the Fifth Circuit en banc have overruled it, explicitly or implicitly.").

The erosion of *Carl Heck*'s precedential authority arguably began when Section 1441(c) was amended in 2011 to remove the language on which the court relied in reaching its conclusion that third-party defendants could remove a case under that statute. When *Carl Heck* was decided, Section 1441(c) read as follows:

> Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

28 U.S.C. § 1441(c) (1976). The 2011 amendment that created the current version of the statute removed the "separate and independent" language that *Carl Heck* turned on, leaving courts with the current version of Section 1441(c), quoted above. *Cf. Air Liquide Mexico S. de R.L. de C.V. v. Hansa Meyer Glob. Transp. USA, LLC*, No. 15-0557, 2015 WL 4716033, at *2 (S.D. Tex. Aug. 7, 2015) ("Because the 2011 amendment deleted the 'separate and independent claim' language from § 1441(c), it is doubtful whether the exception [allowing third-party defendants to remove a case] recognized in *Heck* survives."). But whether or not *Carl Heck* survived the 2011 amendment to 1441(c), the Supreme Court's *Home Depot* decision vitiated *Carl Heck*'s precedential authority. Indeed, the Fifth Circuit has instructed that its

14

precedent may be "implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law inconsistent with' that precedent." *Gahagan v. United States Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) (quoting *Gonzalez v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010)). Further, "[t]hat two [Supreme Court] decisions involve different statutes is not dispositive." *Id.* "Sometimes a Supreme Court decision involving one statute implicitly overrules [Fifth Circuit] precedent involving another statute." *Id.* That is the case here. The United States Court of Appeals for the Eleventh Circuit, which was likewise bound by *Carl Heck* because it was decided before that court split from the Fifth Circuit, recently explained in detail how *Home Depot* abrogated *Carl Heck*. *See Bowling v. U.S. Bank Nat'l Ass'n, As Tr. for C-Bass Mortg. Loan Asset-Backed Certificates, Series 2007-SP2*, 963 F.3d 1030, 1036 (11th Cir. 2020) ("Though *Home Depot* deals with § 1441(a) and not § 1441(c), its analysis necessarily demands the same conclusion with respect to § 1441(c)."); *see also* 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3730 n.4 (4th ed. 2022) ("*Home Depot*, in holding that third-party counterclaim defendants cannot remove under Section 1441(a), abrogated Fifth Circuit precedent allowing removal of claims against third-party counterclaim defendants under Section 1441(c)."); *Williamson v. Cestaro*, No. 21-2465, 2021 WL 2075727, at *3 (E.D.N.Y. May 24, 2021) (holding that "the Supreme Court's reasoning in *Home Depot* supports the conclusion that

15

third-party counterclaim defendants cannot remove actions under Section 1441(c).").

In analyzing whether the Supreme Court abrogated *Carl Heck*, the *Bowling* court held that, in light of *Home Depot*, "it is impossible to read [Section 1441] as a whole and conclude that [the term 'defendant'] in (a) and (c) has different meanings." *Id.* The *Bowling* court held that this is so because of the well-established principle that "identical words and phrases within the same statute should normally be given the same meaning." *Id.* (quoting *SEC v. Levin*, 849 F.3d 995, 1003 (11th Cir. 2017)); *see also Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007) ("A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning."). Accordingly, because Section 1441(a) and 1441(c) both frame removal in terms of "defendants" in "civil actions," this Court agrees with the Eleventh Circuit's conclusion that there is no basis to interpret Section 1441(c) as allowing third-party defendants to remove a civil action when 1441(a) clearly does not. *See id.* at 1039 (holding that, just as a counterclaim is irrelevant to whether the district court had "original jurisdiction" over the civil action under § 1441(a), "it is not germane to whether the district court had federal-question jurisdiction over the 'civil action' under § 1441(c)." (quoting *Home Depot*, 139 S. Ct. at 1748)). Moreover, *Bowling* also held that the structure of Section 1441 as a whole compels

16

the interpretation that third-party defendants may not remove a case under Section 1441(c). *Id.* at 1038-39. The *Bowling* court explained that "the most natural reading of [Section 1441] is that removal is generally authorized under (a), with (c) providing additional criteria for a certain subset of civil actions." *Id.*

The Court agrees with this characterization of Section 1441 as a whole. Section 1441(a), on its face, deals with removal "generally." The sub-sections that follow, including (b) and (c), then address removal in specific contexts such as diversity of citizenship or joinder of federal claims to state-law claims. The Insurers make no attempt to persuade the Court that the Eleventh Circuit's characterization of *Carl Heck* is incorrect, nor do they cite a single case applying *Carl Heck* after the 2011 amendment that removed the "separate and independent" language on which *Carl Heck* based its holding. Further bolstering this reading is the rule that Section 1441 must be "strictly construed in favor of remand." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Accordingly, the Court finds that "the text of § 1441 as a whole compels the conclusion that "defendants" means the same in (c) as in (a)." *Id.* Because there is no statutory basis for removal jurisdiction, the Court grants the motions to remand this case to state court.

## IV. CONCLUSION

17

For the foregoing reasons, the Court GRANTS the motions to remand.  The

case is remanded to the 22nd Judicial District Court for the Parish of St. Tammany.


New Orleans, Louisiana, this ___8th___ day of December, 2022.


*Sarah Vance*

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

CLERK'S OFFICE
A TRUE COPY

Dec 08 2022

*m miller*

Deputy Clerk, U.S. District Court
Eastern District Of Louisiana
New Orleans, LA

1960 N HIGHWAY 190, SUITE D
COVINGTON, LA 70433

OFFICE: (985) 246-7933                                    ATTORNEYS OF COUNSEL:
FAX: (985) 590-5112                                       TIFFANY M. HITDLEBAUGH
EMAIL: TREY@LAPELAWFIRM.COM                               RICHARD L. MULLER
                                                         SYLVIA G. MULLER

December 8, 2022

Clerk of Court
Parish of St. Tammany
701 N. Columbia Street
Covington, LA  70433
*(Filed Electronically)*

                              Re:    *St. Luke #2, LLC v. Hermes Health Alliance, LLC*
                                     22nd Judicial District Court No. 2021-14812, Div."H"

Dear Clerk:

        I have enclosed the Judgment from the ruling in court on May 12, 2022, for filing in the above captioned matter. Please file, present to the Honorable Judge Zaunbrecher for signing, and provide counsel with a certified copy of the conformed Judgment. Should you have any questions or need anything further to expedite this filing, please contact me at your convenience.

        With kind regards, I remain

                                                    Sincerely,

                                                    Willard O. Lape, III (Trey)

WOL/mcs
Enclosure
cc *(Sent by email only)*:
        **William Peter Connick** pconnick@connicklaw.com
        **Bryan C. Reuter**  bcr@stanleyreuter.com
        **Thomas P. Owen, Jr** tpo@stanleyreuter.com
        **Virginia Y. Dodd** ginger.dodd@phelps.com
        **Kevin W. Welsh** kevin.welsh@phelps.com
        **Heather S. Duplantis** duplanth@phelps.com
        **Bruce R. Wilkin** bwilkin@shackelford.law
        **Henry Louis Ehrlich** hehrlich@shackelford.law
        **Richard G. Duplantier, Jr.** rduplantier@gallowaylawfirm.com

TWENTY-SECOND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 2021-14812                                      DIVISION "H"

ST. LUKE #2, LLC

VERSUS

HERMES HEALTH ALLIANCE, LLC

FILED: _____          _____

                                               DEPUTY CLERK

JUDGMENT

This matter came before the Court on the 12th day of May 2022 as a contradictory hearing

on the Dilatory Exception of Prematurity brought by Hermes Health Alliance, LLC to the petition

filed by St. Luke's #2, L.L.C. on November 15, 2021. Present at the hearing were:

    Willard O. Lape, III "Trey", counsel for Hermes Health Alliance, LLC; and

    William P. Connick and Bryan C. Reuter, counsel for St. Luke #2, LLC.

The Court, after reviewing the entire record and the memoranda filed by counsel, listening

to argument from counsel and ordering documentary exhibits be admitted into evidence, rendered

judgment as follows:

    IT IS ORDERED, ADJUDGED and DECREED that the Dilatory Exception the Dilatory

Exception of Prematurity brought by Hermes Health Alliance, LLC to the petition filed by St.

Luke's #2, L.L.C. on November 15, 2021 is DENIED.

    Judgment rendered and signed on this 12 day of December 2022, in Covington, Louisiana.

                                    _____
                                    HON. ALAN A. ZAUNBRECHER
                                    DISTRICT COURT JUDGE, DIV. "H"

Clerk: See Page 2 for Notice Instructions:

Please mail Notice to the following parties:

| St. Luke #2, LLC<br>Through Attorney of Record:<br>William P. Connick<br>Connick & Connick, LLC<br>3421 N. Causeway Blvd<br>Suite 408<br>Metairie, LA 70002 | Hermes Health Alliance, LLC<br>Through Attorney of Record:<br>Willard O. Lape, III<br>Willard O. Lape, III, LLC<br>1966 N. Hwy 190, Suite B<br>Covington, LA 70433 | Lawrence E. Stansberry<br>Through Attorney of Record:<br>William P. Connick<br>Connick & Connick<br>3421 N. Causeway Blvd<br>Suite 408<br>Metairie, LA 70002<br><br>And<br><br>Bryan C. Reuter<br>Thomas P. Owen, Jr.<br>Stanley, Reuter, Ross, Thornton &<br>Alford, LLC<br>909 Poydras Street, Suite 2500<br>New Orleans, LA 70112 |
|---|---|---|
| Certain Underwriters at Lloyd's,<br>London<br>Through Attorney of Record:<br>Virginia Y. Dodd<br>II City Plaza<br>400 Convention Street, Suite 1100<br>Baton Rouge, LA 70802-5618 | Indian Harbor Insurance Company<br>Through Attorney of Record:<br>Virginia Y. Dodd<br>II City Plaza<br>400 Convention Street, Suite 1100<br>Baton Rouge, LA 70802-5618 | QBE Specialty Insurance Company<br>Through Attorney of Record:<br>Virginia Y. Dodd<br>II City Plaza<br>400 Convention Street, Suite 1100<br>Baton Rouge, LA 70802-5618 |
| Steadfast Insurance Company<br>Through Attorney of Record:<br>Virginia Y. Dodd<br>Heather S. Duplantis<br>Kevin W. Welsh<br>II City Plaza<br>400 Convention Street, Suite 1100<br>Baton Rouge, LA 70802-5618 | General Security Indemnity<br>Company of Arizona<br>Through Attorney of Record:<br>Virginia Y. Dodd<br>Heather S. Duplantis<br>Kevin W. Welsh<br>II City Plaza<br>400 Convention Street, Suite 1100<br>Baton Rouge, LA 70802-5618 | United Specially Insurance<br>Company<br>Through Attorney of Record:<br>Virginia Y. Dodd<br>Heather S. Duplantis<br>Kevin W. Welsh<br>II City Plaza<br>400 Convention Street, Suite 1100<br>Baton Rouge, LA 70802-5618 |
| Lexington Insurance Company<br>Through Attorney of Record:<br>Virginia Y. Dodd<br>Heather S. Duplantis<br>Kevin W. Welsh<br>II City Plaza<br>400 Convention Street, Suite 1100<br>Baton Rouge, LA 70802-5618 | Safety Specialty Insurance<br>Company<br>Through Attorney of Record:<br>Virginia Y. Dodd<br>Heather S. Duplantis<br>Kevin W. Welsh<br>II City Plaza<br>400 Convention Street, Suite 1100<br>Baton Rouge, LA 70802-5618 | HDI Global Specialty SE<br>Through Attorney of Record:<br>Virginia Y. Dodd<br>Heather S. Duplantis<br>Kevin W. Welsh<br>II City Plaza<br>400 Convention Street, Suite 1100<br>Baton Rouge, LA 70802-5618 |
| Old Republic Union Insurance<br>Company<br>Through Attorney of Record:<br>Virginia Y. Dodd<br>Heather S. Duplantis<br>Kevin W. Welsh<br>II City Plaza<br>400 Convention Street, Suite 1100<br>Baton Rouge, LA 70802-5618 | Sedgwick Claims Management<br>Services, Inc.<br>Through Attorney of Record:<br>Bruce R. Wilkin<br>Henry L. Ehrlich<br>Shackelford, Bowen, McKinley &<br>Norton, LLP<br>717 Texas Avenue, 27th Floor<br>Houston, TX 77002 | Applied Building Sciences, Inc.<br>Through Attorney of Record:<br>Richard G. Duplantier, Jr.<br>Galloway Johnson Tompkins Burr<br>& Smith<br>701 Poydras Street, Suite 4040<br>New Orleans, LA 70139 |

STATE OF LOUISIANA

DOCKET NO. 2021-14812                                          DIVISION "H"

ST. LUKE #2, LLC

VERSUS

HERMES HEALTH ALLIANCE, LLC

FILED: _____        _____
                                                    DEPUTY CLERK

<u>RULE 9.5(b) CERTIFICATE</u>

It is certified that this proposed Judgment was circulated between counsel for all parties by electronic mail on the 23rd day of May 2022, and that after the discussed revisions were made, counsel for the parties have agreed to the form of proposed judgment.

Certified on this 9th day of December 2022.

_____
Willard O. Lape, III (Trey)
Counsel for Hermes Health Alliance

St Luke #2 LLC

22ND JUDICIAL DISTRICT COURT

VS  2021-14812 Division H

PARISH OF ST. TAMMANY

Hermes Health Alliance LLC

STATE OF LOUISIANA

## NOTICE OF JUDGMENT

William P. Connick
Attorney at Law
3421 N Causeway Blvd., Suite 408
Metairie LA  70002

Virginia Y. Dodd
Heather S. Duplantis
Kevin W. Welsh
Attorneys at Law
II City Plaza
400 Convention St, Ste. 1100
Baton Rouge, LA  70802-5618

Willard O. Lape, III
Attorney at Law
1966 N Hwy 190 Ste B
Covington LA  70433

Bruce R. Wilkin
Henry L. Ehrlich
Attorneys at Law
717 Texas Avenue, 27th Floor
Houston, TX  77002

Bryan C. Reuter
Thomas P. Owen, Jr.
Attorneys at Law
909 Poydras Street, Suite 1100
New Orleans, LA  70112

Richard G. Duplantier, Jr.
Attorney at Law
701 Poydras Street, Ste. 4040
New Orleans, LA  70139

You are hereby notified that judgment was rendered in this matter in accordance with the certified copy attached hereto as part hereof.

By order of the Honorable Judges of said Court, this    12th day of December, 2022

*Melissa R. Henry* Clerk of Court

By: *Tricia Breaux*

Tricia Breaux, Deputy Clerk

**NOTICE OF JUDGMENT AND
CERTIFIED COPY MAILED
TO ABOVE NAMED ON December 14, 2022**

Issued: 12/14/22

305-Ntc of Judgment - Mail
Rev 7/16

## 22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

## STATE OF LOUISIANA

NO. 2021-14812                                                    DIVISION "H"

### ST. LUKE #2, LLC

### VERSUS

### HERMES HEALTH ALLIANCE, LLC

FILED: _____         _____

                                                    DEPUTY CLERK

### MOTION TO RESET EXCEPTIONS

St. Luke #2, LLC ("St. Luke") and Lawrence Stansberry ("Mr. Stansberry"), through their undersigned counsel, respectively submit their Motion to Reset Exceptions. In particular, on May 4, 2022, St. Luke filed an Exception of Improper Cumulation of Actions. Mr. Stansberry likewise filed the same exception on May 23, 2022. The exceptions were set for hearing on June 30, 2022. Before the exceptions could be heard, this case was removed to federal court on June 10, 2022. On December 8, 2022, the federal court remanded this case back to this Court. As such, the Exceptions of Improper Cumulation of Actions should be reset for hearing.

**WHEREFORE,** St. Luke #2, LLC and Lawrence Stansberry respectfully request that the Court grant their motion and reset their exceptions.

Respectfully submitted,

William Peter Connick, 14158
CONNICK & CONNICK, LLC
3421 N. Causeway Boulevard, Suite 408
Metairie, Louisiana 70002
Telephone:    (504) 838-8777
Facsimile:    (504) 838-9903
pconnick@connicklaw.com

-and-

Bryan C. Reuter, 23910
Thomas P. Owen, Jr., 28181
STANLEY, REUTER, ROSS,
        THORNTON & ALFORD, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone:    (504) 523-1580
Facsimile:    (504) 524-0069
bcr@stanleyreuter.com
tpo@stanleyreuter.com

Attorneys for St. Luke #2, LLC and
Lawrence E. Stansberry

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record via email, facsimile, and/or by U.S. Mail, postage pre-paid and properly addressed, this 18th day of January, 2023.

E-Filed on: 1/18/23 05:00 PM
Filed on: 1/19/23 10:50 AM

## 22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

## STATE OF LOUISIANA

NO. 2021-14812                                               DIVISION "H"

### ST. LUKE #2, LLC

### VERSUS

### HERMES HEALTH ALLIANCE, LLC

FILED: _____          _____
                                                 DEPUTY CLERK

### RULE TO SHOW CAUSE

Considering the above and foregoing Exceptions of Improper Cumulation of Actions filed by St. Luke #2, LLC and Lawrence Stansberry;

**IT IS ORDERED** that Hermes Health Alliance, LLC appear and show cause on the 5 day of April, 2023 at 9:00 a.m./p.m., as to why the Exceptions filed by St. Luke #2, LLC and Mr. Stansberry should not be granted.

Covington, Louisiana, this 26 day of January, 2023.

_____
JUDGE ALAN A. ZAUNBRECHER

SERVICE WILL BE MADE PURSUANT TO
LA. CODE OF CIVIL PROCEDURE ART. 1313(C)

January 31, 2023

William P Connick
Attorney at Law
3421 N Causeway Blvd, Ste. 408
Metairie LA 70002

Bryan C. Reuter
Attorney at Law
909 Poydras St., Ste. 2500
New Orleans, LA 70112

Willard O. Lape, III
Attorney at Law
1966 N Hwy 190 Ste B
Covington LA 70433

Kevin W. Welsh
Attorney at Law
II City Plaza- Suite 1100
400 Convention Street
Baton Rouge, LA 70821-4412

Bruce R. Wilkin
Attorney at Law
717 Texas Ave, 27th Floor
Houston, TX 77002

Richard G. Duplantier, Jr.
Attorney at Law
701 Poydras St., 40th Floor
New Orleans, LA 70139

Re:     St Luke #2 LLC
        vs. 2021-14812 Division H
        Hermes Health Alliance LLC

Dear Counsel:

Please be advised that the **Exceptions of Improper Cumulation of Actions** filed on behalf of the **St. Luke #2 and Lawrence Stansberry** in the above captioned matter previously assigned for June 30, 2022 has been re-assigned for **April 05, 2023** at **9:00 a.m.** before **JUDGE ALAN A. ZAUNBRECHER, Division H** presiding.

**When applicable, a courtesy copy of all memoranda must be forwarded by FAX, mail OR hand delivery to the Judge's office. The only address for furnishing copies is: 701 N. Columbia St., Room 2010, Covington, LA 70433. The only FAX number for furnishing copies is 985-809-5344. Rule 3.3 of the Uniform rules of the Louisiana District Courts governs facsimile transmissions to Judges.**

Sincerely,

*Tricia Breaux*

Tricia Breaux
Deputy Clerk

St Luke #2 LLC

VS  2021-14812 Division H

Hermes Health Alliance LLC

22nd Judicial District Court

Parish of St. Tammany

State of Louisiana


TO:  Hermes Health Alliance LLC
     Via Art 1313

GREETINGS:

YOU ARE HEREBY ORDERED TO SHOW CAUSE BEFORE

the Honorable Judge **Alan Zaunbrecher**, **Division H** on **April 05, 2023**, at **9:00 a.m.**, at the St.

Tammany Parish Justice Center, 701 N. Columbia Street, Covington, Louisiana, why the

Exceptions filed by St. Luke #2 LLC and Mr. Stansberry should not be granted; **ALL AS**

**PRAYED FOR AND ACCORDING TO LAW.**

When applicable, a courtesy copy of all memoranda must be forwarded by FAX, mail **OR** hand delivery to the Judge's office. The only address for furnishing copies is: 701 N. Columbia St., Room 2010, Covington, LA 70433. The only FAX number for furnishing copies is 985-809-5344. Rule 3.3 of the Uniform rules of the Louisiana District Courts governs facsimile transmissions to Judges.


By order of the Honorable Judges of said Court this 26th day of January, 2023.


*Melissa R. Henry* Clerk of Court

By:    *Tricia Breaux*
       Tricia Breaux, Deputy Clerk

Issued: 01/31/2023


Counsel:
William Peter Connick
Attorney at Law
3421 N. Causeway Blvd, Ste. 408
Metairie LA  70002

104 – Rule – Rev 7/16

January 31, 2023


William P Connick
Attorney at Law
3421 N Causeway Blvd, Suite 408
Metairie LA  70002


Re:    St Luke #2 LLC
       VS. 2021-14812 Division H
       Hermes Health Alliance LLC


Dear Counsel or Self Represented Litigant:

Enclosed please find the rule to show cause along with certified copies of the Motion to Reset Exceptions, being returned to you per your request for service on Hermes Health Alliance, LLC, per Article 1313.

**After service has been made please file the necessary paperwork with our office as proof of service.**

Sincerely,

Tricia Breaux
Deputy Clerk

22nd JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 2020=14812                              DIVISION H

ST. LUKE #2, LLC

VERSUS

HERMES HEALTH ALLIANCE, LLC

## PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION

Third-Party Defendant, **SEDGWICK CLAIMS MANAGEMENT SERVICES INC.** (**"SCMS"**), as more fully set out in the accompanying memorandum in support, respectfully excepts to the claims of Third-Party Plaintiff, **HERMES HEALTH ALLIANCE, LLC** (**"Hermes"**) on the following grounds:

1.

The third-party petition fails to state a cause of action because it does not allege facts indicating that SCMS, or any other third-party defendant, is a warrantor of Hermes or is liable for all or part of the principal demand.

2.

The third-party petition also fails to state a cause of action against SCMS because Louisiana affords no cause of action to an insured against an insurance adjuster for the processing and handling of insurance claims. *Hoffman v. Ellender*, 2015 WL 4873342 (M.D. La. 7/23/15). Also, an independent insurance adjuster owes no duty to an insured to conduct a proper investigation. *Rich v. Bud's Boat Rentals, Inc.*, 1997 WL 785668 (E.D. La. 12/18/97).

**WHEREFORE**, SCMS prays that this Court grants its peremptory exception and dismiss Hermes' third-party petition.

Respectfully submitted,

**Shackelford, Bowen, McKinley & Norton, LLP**

Bruce R. Wilkin, LSBA #40210
Artis G. Ulmer, III, LSBA #36290
717 Texas Ave., 27th Floor
Houston, Texas 77002
832.415.1773 direct

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of March 2023 a true and correct copy of the foregoing pleading has been served upon all known counsel of record via email.

_Artis G. Ulmer, III_
Artis G. Ulmer, III

22nd JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 2020-14812                                    DIVISION H

ST. LUKE #2, LLC

VERSUS

HEREMES HEALTH ALLIANCE, LLC

## MEMORANDUM IN SUPPORT OF PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION

Defendant, **SEDGWICK CLAIMS MANAGEMENT SERVICES INC. ("SCMS")**, respectfully submits this memorandum in support of its Peremptory Exception of No Cause of Action.

### FACTUAL BACKGROUND

Plaintiff, St. Luke #2, LLC ("St. Luke"), filed a petition for declaratory judgment against Defendant, Hermes Health Alliance, LLC ("Hermes"), seeking a judgment to declare the termination of a lease agreement and the rights thereunder. In response, along with filing its answer, Hermes filed a third-party petition against SCMS, asserting that SCMS either negligently or intentionally processed an insurance claim, thereby causing Hermes to be inadequately compensated for property damage allegedly caused by Hurricane Ida. On August 29, 2021, Hurricane Ida struck Louisiana, allegedly damaging property owned by Hermes, which is the same property governed by the lease subject to the petition for declaratory judgment filed by St. Luke #2. After the property was allegedly damaged, Hermes' insurer retained SCMS to inspect said property and adjust Hermes' claim. The inspection and loss adjustment are in no way related to the whether St. Luke #2 is entitled to a declaration of rights under its lease agreement with Hermes.

### LAW AND ARGUMENT

**A. There is no connection between the petition for declaratory judgment and the third-party demand.**

The defendant in a principal action may bring in any person who is his warrantor or who is liable to him for all or part of the principal demand. *See* La. C.C.P. art. 1111. When a third-party plaintiff does not allege that the third-party defendant is liable to them for all or part of the principal demand, the incidental third-party demand fails to state a cause of action. *Haynes v. Haynes*, 848

In this case, the petition for declaratory judgment asserts that St. Luke #2 is entitled to have its lease with Hermes declared terminated because the subject property was wholly unfit and could not be repaired within 120 days as contemplated by the lease agreement. *See* ¶ XVIII: Petition for Declaratory Judgment. Further, the petition also claims that St. Luke is entitled to certain furniture, fixtures, equipment, and a return of rent and other payments made to Hermes. *See* ¶ XVIV-XXVII: Petition for Declaratory Judgment. The third-party petition does not allege any facts indicating that SCMS is liable to Hermes for all, or part, of the allegations contained in the petition for declaratory judgment. There is also no allegation indicating SCMS is the warrantor of Hermes because it is not. Consequently, the third-party petition fails to state a proper cause of action against SCSM. Furthermore, there is no possible way for SCSM to be liable for the lease being declared terminated because it isn't a party to such lease. In addition, SCSM could not be liable for returning rent, other payments, or property to St. Luke #2. Therefore, Hermes' third-party petition should be dismissed on these grounds alone.

**B.** **An insured does not have a cause of action against an insurance adjuster.**

In Louisiana, there is generally no cause of action against an insurance adjuster for the processing and handling of an insurance claim. *Hoffman v. Ellender*, 2015 WL 4873342 (M.D. La. 7/23/15). An independent insurance adjuster owes no duty to an insured to conduct a proper investigation. *Rich v. Bud's Boat Rentals, Inc.*, 1997 WL 785668 (E.D. La. 12/18/97). However, an adjuster may owe a tort duty to an insured when the adjuster undertakes such duty or engages in fraud toward the insured. *Pellerin v. Cashway Pharmacy of Franklin, Inc.* 396 So.2d 371 (La. App. 1st Cir. 1981).

In *Hoffman*, the plaintiff's house burned down after she left a pot on the stove. She submitted a claim to State Farm under her homeowner's policy, and State Farm assigned Cindy Ellender to investigate and adjust the claim. The plaintiff alleged that Ms. Ellender asked inappropriate questions about her children and living arrangements, which allegedly resulted in a verbal altercation and threats by Ms. Ellender to retaliate through her investigation. State Farm subsequently denied the claim. Plaintiff filed suit, asserting that State Farm breached the policy in bad faith. The plaintiff further alleged that Ms. Ellender's alleged threats and investigation caused the claim to be denied. State Farm removed the action based on diversity, claiming that Ellender

Plaintiff moved to remand on the basis there was not complete diversity and attached an affidavit describing the details of the alleged verbal altercation during the investigation. In addition to filing an opposition, Ellender filed a motion seeking her dismissal on the basis there was no cause of action against her. The trial court held that the petition did not contain any allegation that Ms. Ellender engaged in any fraud or misrepresentations that would possibly trigger an exception to the general rule that a claims adjuster cannot be held personally liable in tort with regard to the investigation, adjustment, and denial of an insurance claim. The court further held that at most, the plaintiff alleged that Ms. Ellender improperly investigated/adjusted her insurance claim, resulting in the ultimate denial of her claim. The plaintiff's disagreement with Ms. Ellender's method of adjusting claims and ultimate claims decision, in the absence of an allegation of fraud or misrepresentation, cannot form the basis of a claim against her under Louisiana law.

In this case, the third-party petition asserts that SCMS was negligent by failing to provide photographs to Applied Building Science (ABS), thereby affecting ABS' ability to properly evaluate the property damage. *See* ¶ 71: Third-Party Petition. The third-party petition further states that SCMS was either negligent in preparing its report or it intentionally prepared the report in such a way as to deprive Hermes of the insurance benefits to which it was entitled. *Id.* Both allegations go toward the handling of a claim or conducting a proper investigation. Thus, these allegations cannot form the basis of a claim against SCMS under Louisiana law. Therefore, the third-party petition should be dismissed.

In an attempt to get around this hurdle, Hermes claimed that SCMS and ABS colluded and engaged in a civil conspiracy. *See* ¶ 73: Third-Party Petition. However, an independent cause of action for civil conspiracy does not exist in Louisiana. *Jones v. Americas Insurance Company,* 226 So.3d 537 (La. App. 1st Cir. 8/16/17). Furthermore, in pleading fraud, the circumstances constituting fraud shall be alleged with particularity. *See* La. C.C.P. art. 856. A mere allegation of fraud, unaccompanied by factual allegations setting forth with particularity the circumstances that constitute the same, does not set forth a cause of action as to fraud. *Cola v. Cola,* 294 So.3d 6 (La. App. 1 Cir. 12/27/19). The third-party petition does not contain any specifics of fraudulent conduct.

The Louisiana First Circuit Court of Appeal held there is generally no relationship existing

However, there may be circumstances in which the adjuster may be said to have undertaken such duty. *Id.* Examples include the relative education of the parties, or the content of a promise made to the claimant. *Id.* Here, there are no allegations contained in the third-party petition to suggest SCMS undertook any duty towards Hermes. As such, Hermes does not have a valid cause of action against SCMS. Therefore, the third-party petition should be dismissed.

WHEREFORE, based on the foregoing argument, Sedgwick Claims Management Services moves to Honorable Court to sustain its peremptory exception and dismiss Hermes Health Alliance, LLC's third-party petition.

<div align="center">Respectfully submitted,</div>

**Shackelford, Bowen, McKinley & Norton, LLP**

*[signature]*

Bruce R. Wilkin, LSBA #40210
Artis G. Ulmer, III, LSBA #36290
717 Texas Ave., 27th Floor
Houston, Texas 77002
832.415.1773 direct
832.565.9030 fax
bwilkin@shackelford.law
aulmer@shackelford.law

*Attorneys for Sedgwick Claims Management Services, Inc.*

<div align="center">

### CERTIFICATE OF SERVICE

</div>

I hereby certify that on this 20th day of March 2023 a true and correct copy of the foregoing pleading has been served upon all known counsel of record via email.

*[signature]*

Artis G. Ulmer, III

22nd JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 2020-14812                                    DIVISION H

2021                    ST. LUKE #2, LLC

VERSUS

HEREMES HEALTH ALLIANCE, LLC

**RULE TO SHOW CAUSE**

Considering the Peremptory Exception of No Cause of Action filed by Third-Party

Defendant, Sedgwick Claims Management Services, Inc.,

**IT IS ORDERED** that Third-Party Plaintiff, Hermes Health Alliance, LLC show cause on

the **5th** day of **April 2023 at 9:00 a.m.** why the Peremptory Exception of No Cause of Action

should not be sustained, which is the same day as the hearing on Plaintiff, St. Luke #2, LLC and

Lawrence Stansberry's Exception of Improper Cumulation of Actions.

Covington, Louisiana, this 22 day of March 2023

_____
Honorable Alan A. Zaunbrecher
District Judge

**SERVICE WILL BE MADE VIA EMAIL
PURSUANT TO LA. CCP. ART. 1313(c).**

St Luke #2 LLC

VS  2021-14812 Division H

Hermes Health Alliance LLC

22nd Judicial District Court

Parish of St. Tammany

State of Louisiana

TO:  Hermes Health Alliance, LLC
Third Party Plaintiff
Via Art 1313

GREETINGS:

YOU ARE HEREBY ORDERED TO SHOW CAUSE BEFORE

the Honorable Judge **Alan Zaunbrecher, Division H** on **April 05, 2023**, at **9:00 a.m.**, at the St.

Tammany Parish Justice Center, 701 N. Columbia Street, Covington, Louisiana, why the

Peremptory Exception of No Cause of Action should not be sustained; **ALL AS PRAYED FOR**

**AND ACCORDING TO LAW.**

When applicable, a courtesy copy of all memoranda must be forwarded by FAX, mail **OR** hand delivery to the Judge's office. The only address for furnishing copies is: 701 N. Columbia St., Room 2010, Covington, LA 70433. The only FAX number for furnishing copies is 985-809-5344. Rule 3.3 of the Uniform rules of the Louisiana District Courts governs facsimile transmissions to Judges.

By order of the Honorable Judges of said Court this 22nd day of March, 2023.

*Melissa R. Henry* Clerk of Court

By: _____
Tricia Breaux, Deputy Clerk

Issued:  03/22/2023

**Counsel:**
Artis G. Ulmer, III
Attorney at Law
717 Texas Ave., 27th Floor
Houston TX 77002

104 – Rule – Rev 7/16

March 22, 2023

William P. Connick
Attorney at Law
3421 N Causeway Blvd, Suite. 408
Metairie LA 70002

Bryan C. Reuter
Attorney at Law
909 Poydras St., Ste. 2500
New Orleans, LA 70112

Willard O. Lape, III
Attorney at Law
1966 N Hwy 190 Ste B
Covington LA 70433

Kevin W. Walsh
Attorney at Law
II City Plaza-Suite 1100
400 Convention Street
Baton Rouge, LA 70821-4412

Bruce R. Wilkin
Artis G. Ulmer
Attorneys at Law
717 Texas Ave., 27th Floor
Houston, TX 77002

Richard G. Duplantier, Jr.
Attorney at Law
701 Poydras St., 40th Floor
New Orleans, LA 70139

Re:     St Luke #2 LLC
        vs. 2021-14812 Division H
        Hermes Health Alliance LLC

Dear Counsel:

Please be advised that the **Peremptory Exceptions of No Cause of Action** filed on behalf of the **third-party defendant Sedgwick Claims Management Services, Inc.** in the above captioned matter has been assigned for **April 05, 2023** at **9:00 a.m.** before **JUDGE ALAN A. ZAUNBRECHER, Division H** presiding.

**When applicable, a courtesy copy of all memoranda must be forwarded by FAX, mail OR hand delivery to the Judge's office. The only address for furnishing copies is: 701 N. Columbia St., Room 2010, Covington, LA 70433. The only FAX number for furnishing copies is 985-809-5344. Rule 3.3 of the Uniform rules of the Louisiana District Courts governs facsimile transmissions to Judges.**

Sincerely,

*Tricia Breaux*

Tricia Breaux
Deputy Clerk



March 22, 2023

Artis G. Ulmer
Attorney at Law
717 Texas Ave 27th Floor
Houston TA  77002

Re:     St Luke #2 LLC
        VS. 2021-14812 Division H
        Hermes Health Alliance LLC

Dear Counsel:

Enclosed please find the Rule to Show Cause along with certified copies of the Peremptory
Exception of No Cause of Action, being returned to you per your request for service on Hermes
Health Alliance, LLC, per Article 1313.

**After service has been made please file the necessary paperwork with our office as proof of
service.**

Sincerely,

Tricia Breaux
Deputy Clerk

Filed on: 3/27/23 02:06 PM

**TWENTY-SECOND JUDICIAL DISTRICT COURT**
**FOR THE PARISH OF ST. TAMMANY**

**STATE OF LOUISIANA**

DOCKET NO. 2021-14812                                   DIVISION "H"

**ST. LUKE #2, LLC**

**VERSUS**

**HERMES HEALTH ALLIANCE, LLC**

**AFFIDAVIT OF SERVICE OF RULE TO SHOW CAUSE**

**STATE OF TEXAS**

**COUNTY OF HARRIS**

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in the state and county aforesaid, personally appeared Artis G. Ulmer, III, who after being duly sworn, did depose and state the following:

1.  Pursuant to La. C.C.P. art. 1313(C), a signed copy of the Court's *Rule to Show Cause* relative to Third-Party Defendant, Sedgwick Claims Management Services, Inc.'s *Peremptory Exception of No Cause of Action* was <u>emailed</u> to counsel for Third-Party Plaintiff, Hermes Health Alliance, LLC on March 22, 2023. *See* Exhibit A.

2.  Said *Rule to Show Cause* was delivered on March 22, 2023. *See* Exhibit B.

_____
ARTIS G. ULMER, III

Sworn to and subscribed before me, Notary Public, on this 22 day of March 2023.

_____
NOTARY PUBLIC



CHRISTINE LILIANNA MASTROIANNI
Notary Public, State of Texas
Comm. Expires 12-18-2023
Notary ID 126355665

TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 2021-14812                                   DIVISION "H"

ST. LUKE #2, LLC

VERSUS

HERMES HEALTH ALLIANCE, LLC

SUPPLEMENTAL AFFIDAVIT OF SERVICE OF RULE TO SHOW CAUSE

STATE OF TEXAS

COUNTY OF HARRIS

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in the state and county aforesaid, personally appeared Artis G. Ulmer, III, who after being duly sworn, did depose and state the following:

1. On March 22, 2023, pursuant to La. C.C.P. art. 1313(C), a signed copy of the Court's *Rule to Show Cause* relative to Third-Party Defendant, Sedgwick Claims Management Services, Inc.'s *Peremptory Exception of No Cause of Action* was emailed to counsel for Third-Party Plaintiff, Hermes Health Alliance, LLC. *See* Exhibit A.[1]

2. Said *Rule to Show Cause* was delivered on March 22, 2023. *See* Exhibit B.

3. On March 28, 2023, a copy of the *Rule to Show Cause* signed by Judge Zaunbrecher was emailed to counsel for Hermes Health Alliance, LLC. Counsel acknowledged receipt of said email. See Exhibit C.[2]

_____
ARTIS G. ULMER, III

Sworn to and subscribed before me, Notary Public, on this 28th day of March 2023.

_____
NOTARY PUBLIC

CHRISTINE LILIANNA MASTROIANNI
Notary Public, State of Texas
Comm. Expires 12-18-2023
Notary ID 126355665

_____

[1] The Rule to Show Cause served on this date was generated and signed by the Clerk of Court by order of the judges of said court.

COURT MET THIS DAY IN REGULAR SESSION, PRESENT AND PRESIDING, THE HONORABLE, JUDGE ALAN A. ZAUNBRECHER, WARREN L. MONTGOMERY, DISTRICT ATTORNEY, RANDALL C. SMITH, SHERIFF AND MELISSA R. HENRY, CLERK OF COURT (Bailiff, Alicia D Gwynne and Court Reporter, Terry Owens)

202114812          ST LUKE #2 LLC

                 VS.

                 HERMES HEALTH ALLIANCE LLC

- This matter came on for hearing this day on Exceptions of Improper Cumulation of Actions and Alternative Exception of Prematurity filed on behalf of St. Luke #2 LLC; Exceptions of Improper Cumulation of Actions and Alternative Exception of Prematurity filed on behalf of Lawrence E. Stansberry and Exceptions of No Cause of Action filed by Sedgwick Claims Management Services.

Present, Bryan C. Reuter and William Peter Connick, counsel appearing on behalf of St. Luke #2, LLC and Lawrence E. Stansberry; Willard O. Lape, III counsel appearing on behalf of Hermes Health Alliance, LLC; and Artis G. Ulmer, counsel appearing on behalf of Sedgwick Claims Management Services, Inc.

Argument was presented to the Court on behalf of the parties and the matter was submitted. The Court ruled on the Exceptions as follows:

St. Luke #2, LLC's Exceptions of Improper Cumulation of Actions are sustained, rendering the Alternative Exception of Prematurity moot.

Lawrence Stansberry's Exceptions of Improper Cumulation of Actions are sustained, rendering the Alternative Exception of Prematurity moot.

Further, the Exceptions of No Cause of Action filed by Sedgwick Claims Management Services is continued to April 20, 2023 on the Court's own Motion. The Court will allow supplemental memoranda or oral argument.

COURT ADJOURNED SINE DIE         MINUTES READ AND APPROVED

_____     _____
MINUTE CLERK,                JUDGE ALAN A. ZAUNBRECHER
TRICIA BREAUX               DIVISION H

A TRUE AND CORRECT EXTRACT OF THE MINUTES OF COURT OF DATE.

_____
DEPUTY CLERK OF COURT

22ND JUDICIAL DISTRICT COURT

ST. TAMMANY PARISH, LOUISIANA

TWENTY-SECOND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 2021-14812                                    DIVISION " H "

ST. LUKE #2, LLC

VERSUS

HERMES HEALTH ALLIANCE, LLC

FILED: _____APR 0 5 2023_____        _____
                                     DEPUTY CLERK
                                     Suzette Rogers, Deputy Clerk

HERMES' MEMORANDUM IN OPPOSITION TO THE EXCEPTION OF
IMPROPER CUMULATION BROUGHT BOTH BY ST. LUKE #2, LLC
AND MR. LAWRENCE E. STANSBERRY

Hermes Healthcare Alliance, LLC respectfully submits this memorandum in opposition to

the Exception of Improper Cumulation brought both by St. Luke #2, LLC ("St. Luke") and Mr.

Lawrence E. Stansberry ("Mr. Stansberry"). St. Luke and Mr. Stansberry argue that "Hermes has

improperly cumulated its insurance-coverage claims with claims regarding the cancellation by

Hermes of that certain Lease...."[1] Cumulation of actions against multiple defendants is addressed

by LA-C.C.P. Art. 463. There are three requirements in LA-C.C.P. Art. 463 for cumulation of

multiple defendants. LA-C.C.P. Art. 463 provides:

> Two or more parties may be joined in the same suit, either as plaintiffs or
> as defendants, if:
>
> (1) There is a community of interest between the parties joined;
>
> (2) Each of the actions cumulated is within the jurisdiction of the court and
>     is brought in the proper venue; and
>
> (3) All of the actions cumulated are mutually consistent and employ the
>     same form of procedure.
>
> Except as otherwise provided in Article 3657, inconsistent or mutually
> exclusive actions may be cumulated in the same suit if pleaded in the
> alternative.

In support of their identical exceptions, St. Luke and Mr. Stansberry argue that "[Hermes']

insurance coverage-claim is **not related** to St. Luke or Mr. Stansberry."[2] (Emphasis added.)

Although they do not use the words "community of interest" in their argument that the various claims are "not related" this is still just an argument that there is no "community of interest" as required by LA-C.C.P. Art. 463. Neither St. Luke nor Mr. Stansberry have argued that Hermes' claims are outside of this Court's jurisdiction, were filed in an improper venue or employ an inconsistent form of procedure (i.e., summary or executory proceeding). Their pending exceptions focus solely on their argument that Hermes' claims are "not related" and have no "community of interest" to St. Luke's claims. To determine if a "community of interest" exists the Court must ask the question "do the cumulated causes of action arise out of the same facts, or do they present the same factual and legal issues?"[3] A community of interest is present between different actions or parties, where **enough factual overlap is present** between the cases to make it commonsensical to litigate them together.[4] (Emphasis added.) If there is enough factual overlap between the various cases to make it "commonsensical" to litigate them together then the Court may permit their cumulation under LA-C.C.P. Art. 463. As will be discussed below, there is more than enough factual overlap between the claims at issue to justify their cumulation.

<div align="center">THERE IS SIGNIFICANT FACTUAL OVERLAP MAKING
CUMULATION OF ACTIONS "COMMONSENSICAL"</div>

As the Court may recall, this matter last came before the Court on May 12, 2022 at the hearing on Hermes' Dilatory Exception of Prematurity. At that hearing the Court commented that, "It is undisputed that Hurricane Ida was a casualty that, quote, damaged the premises to such an extent as to render them wholly unfit for occupancy." Now, St. Luke and Mr. Stansberry argue that Hermes should not be permitted to cumulate its actions against Hermes' own property insurers because they argue that Hermes' insurance claims have nothing to do with the claims between Hermes and St. Luke. They are wrong. The Court reviewed the Original 2009 Lease and the 2016

---

[3] Sorrento Companies, Inc. v. Honeywell Int'l, Inc., 2004-1884, p. 5 (La.App. 1 Cir. 9/23/05); 916 So.2d 1156, 1161, writ denied, 2005-2326 (La. 3/17/06); 925 So.2d 541 quoting First Guaranty Bank v. Carter, 563 So.2d 1240, 1242 (La.App. 1st Cir.1990).

[4] Element Pictures, L.L.C. v. LIFT (Louisiana Inst. of Film Tech.), L.L.C., 2018-0054, p. 4 (La.App. 4 Cir. 4/6/18); 317 So.3d 859, 862, writ denied, 2018-0724 (La. 9/14/18); 252 So.3d 487; see also First Guaranty Bank v. Carter, 89–0862, 563 So.2d 1240 (La. App. 1 Cir.1990) (citing, The Official Revision Comments to Article 463 which states that a review of Louisiana case law indicates that a community of interest and common interest refer to exactly the same concept)

Agreement to Extend Lease in connection with the hearing on Hermes' Exception of Prematurity held on May 12, 2022. The Original 2009 Lease includes the following provisions that are relevant to the Court's present consideration of St. Luke and Mr. Stansberry's Exception of Improper Cumulation:

### 6. CONDITION AND MAINTENANCE

A. The within leased premises and appurtenances, including the locks, keys, plumbing, glass, elevator, air-conditioning and heating system, if any, and all other fixtures, **are accepted by the Lessee in their present condition**, except for such repairs and improvements as are written into this Lease. The Lessee agrees to keep said premises and appurtenances in the same order as received during the Term of this Lease, and no repairs shall be due Lessee except such as may be especially noted herein or needed to the roof or rendered necessary by fire or other casualty... (Emphasis added.)

\* \* \* \*

D. Lessor shall be solely responsible for the maintenance of and repairs to the roof, foundations, and outside walls (but excluding doors and floors) of the Building and for all major repairs of the plumbing and heating and air conditioning system, including without limitation when injured by freeze. **Lessee assumes sole responsibility and obligation for the maintenance of the premises and for all minor repairs of the plumbing and heating and air conditioning (including fixtures, outlets and drains) and for all other repairs not expressly made the responsibility of Lessor herein.** (Emphasis added.)

\* \* \* \*

### 7. INSURANCE

C. **Lessee is obligated to put nothing in the premises nor to do anything which would forfeit the insurance**, and should any installation made or action taken by Lessee, whether authorized or unauthorized under this Lease, increase the rate of insurance on the Building or contents as fixed by the Louisiana Fire Prevention Bureau, or any similar institution, then Lessee is obligated to pay such increased rate of insurance on the Building and all contents. ... (Emphasis added.)

These excerpts from the Original 2009 Lease memorialize obligations of St. Luke (and Mr. Stansberry as guarantor for St. Luke). St. Luke accepted the Leased Premises in 2009 when the lease began. St. Luke assumed responsibility for the maintenance of the Leased Premises including minor repairs to the air conditioning system including outlets and drains and all other repairs not expressly assumed by Hermes. Finally, St. Luke agreed that it would not do anything to forfeit Hermes' insurance coverage. Notably, Hermes, St. Luke and Mr. Stansberry all agree

Ida impacted the property.[5]  On May 12th, the Court noted that "Hurricane Ida was a casualty that 'damaged the premises to such an extent as to render them wholly unfit for occupancy'".  Because of the damage caused by Hurricane Ida to Hermes' building Hermes filed a claim with its Property Insurers.  Hermes' Property Insurers acknowledged Hermes' claim on September 10, 2021.[6] Hermes' Property Insurers sent a field adjuster on September 23, 2021 who didn't bother to inspect the interior of the building for any covered damages.[7]  At Hermes' request, its Property Insurers sent field adjusters back out to Hermes' building to inspect the entire insured property, including the Leased Premises, on October 6-8, 2021.[8]  On December 16, 2021, Hermes' Property Insurers sent Hermes a letter stating, in pertinent part:

> ...generally, **the widespread damages were related to HVAC and plumbing issues** unrelated to Hurricane Ida.[9] (Emphasis added.)

Without mincing any words, Hermes' Property Insurers' suggestion that the "widespread damages" to Hermes' building were caused by HVAC and plumbing issues rather than Hurricane Ida is ridiculous.  Nevertheless, this is one of the excuses that Hermes' Property Insurers gave Hermes in their attempt to justify their wholesale denial of Hermes' insurance claim for Hurricane Ida damages.  However, if Hermes' Property Insurers are right— that the widespread damages to the building were related to HVAC and plumbing issues rather than Hurricane Ida then St. Luke and Mr. Stansberry may be responsible under the terms of the lease.  They accepted the Leased Premises in 2009. They agreed to perform maintenance of the air conditioning systems and drains in the Leased Premises.[10]  They agreed not to do anything that would forfeit Hermes' insurance coverage.[11]  Clearly, there are overlapping factual and legal issues that include the maintenance of the air conditioning system within the former Leased Premises.  A community of interest exists between St. Luke, Hermes and Mr. Stansberry.  The Exceptions of Improper Cumulation should be denied.

---

[5] See Paragraph 7 to Mr. Stansberry's Answer to Hermes' Third-Party Demand, wherein he pled "...it is admitted that, prior to Hurricane Ida, St. Luke leased the Leased Premises and operated a functioning level 4 nursing home that met all legal requirements."
[6] See Paragraphs 48-40 of Hermes' Third-Party Demands
[7] See Paragraphs 51-52 of Hermes' Third-Party Demands
[8] See Paragraph 54 of Hermes' Third-Party Demands
[9] See Paragraph 65 of Hermes' Third-Party Demands and Exhibit C thereto, the Reservation of Rights Letter and partial report of Applied Building Science ("ABS").

CONCLUSION

If St. Luke not filed suit against Hermes seeking, among other things, to declare the lease agreement cancelled because of the damages to the building from Hurricane Ida, it is likely that Hermes would have filed its own petition against its commercial property insurers. Assuming that the same insurers raised "lack of maintenance" as a coverage defense, as they have in this case and there was the same contractual lease provisions at issue would Hermes not run the risk of having an "empty chair" at trial? An oversight of such magnitude would be inexcusable. The same is true here although the procedural path was different. The Exceptions of Improper Cumulation should be denied.

Respectfully submitted on the _5th_ day of _April_ 202_3_

_____

Willard O. Lape, III (Trey)
LA Bar Roll No. 31494
1966 N. Highway 190, Suite B
Covington, LA  70433
Telephone: (985) 246-7933
Email: trey@lapelawfirm.com
*Attorney for Hermes Health Alliance, LLC*


CERTIFICATE OF SERVICE

I certify that I have transmitted the foregoing pleading to all counsel of record on this _5th_ day of _April_ 202_3_ by electronic transmission.

_____

Willard O. Lape, III (Trey)

Lady Kas~~~ - Deputy Cl~~~
E-Filed on: 5/09/23 01:05 PM
Filed on: 5/09/23 02:57 PM

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 2021-14812                                              DIVISION "H"

ST. LUKE #2, LLC

VERSUS

HERMES HEALTH ALLIANCE, LLC

FILED: _____          _____
                                                DEPUTY CLERK

## JUDGMENT

The matters came for hearing before the Court on April 5, 2023 regarding (1) Exception of Improper Cumulation of Actions, including Improper Joinder of Parties, and Alternate Exception of Prematurity filed by St. Luke #2, LLC ("St. Luke") and by Lawrence E. Stansberry ("Mr. Stansberry"), (2) Peremptory Exception of No Cause of Action filed by Sedgwick Claims Management Services, Inc. ("Sedgwick"), and (3) Dilatory Exception of Insufficiency of Service of Process filed by Hermes Health Alliance, LLC ("Hermes").

Appearing for the parties were:

(1)    W. Peter Connick and Bryan C. Reuter for St. Luke;

(2)    Willard ("Trey") O. Lape, III, for Hermes; and,

(3)    Artis G. Ullmer, III for Sedgwick.

Considering the foregoing matters;

IT IS ORDERED that the Exception of Improper Cumulation of Actions, including Improper Joinder of Parties, filed by St. Luke and Mr. Stansberry is SUSTAINED. The claims between St. Luke, Hermes, and Mr. Stansberry, namely the Petition of St. Luke, the Reconventional Demand of Hermes, and the Third-Party Demand of Hermes against Mr. Stansberry (the "Lease Claims"), shall be severed and be an independent action from the Third-Party Demand of Hermes against those certain ten insurers and two insurance management

IT IS FURTHER ORDERED the St. Luke's Exception of Prematurity is DENIED as MOOT.

IT IS FURTHER ORDERED that Sedgwick's Exception of No Cause of Action is CONTINUED by the Court's own motion **until April 20, 2023 at 9:30 a.m.;**

IT IS FURTHER ORDERED that the Exception of Insufficiency of Service of Process is DENIED as MOOT.

Thus done and signed in Covington, Louisiana, this _10_ day of May, 2023.

_____
JUDGE ALAN A. ZAUNBRECHER

## RULE 9.5 CERTIFICATE

I certify that I circulated this proposed Judgment to counsel for Hermes Health Alliance, LLC and Sedgwick Claims Management Services, Inc. by email on April 6, 2023, and no opposition was received.

I have allowed at lease five (5) working days before presentation to the Court.

Certified this _9th_ day of May, 2023.

_____
Bryan C. Reuter, Esq.
Attorney for St. Luke #2, LLC

## CERTIFICATE OF SERVICE

I certify that the above and foregoing was electronically mailed to all counsel of record on the _9th_ day of May, 2023.

_____

St Luke #2 LLC

VS  2021-14812 Division H

Hermes Health Alliance LLC

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

## NOTICE OF JUDGMENT

To:

William P Connick
Attorney at Law
3421 N Causeway Blvd., Ste. 408
Metairie LA  70002

Willard O Lape, III
Attorney at Law
1966 N Hwy 190 Ste B
Covington LA  70433

Artis G. Ulmer, III
Attorney at Law
717 Texas Ave., 27th Floor
Houston, TX  77002

You are hereby notified that judgment was rendered in this matter in accordance with the certified copy attached hereto as part hereof.

By order of the Honorable Judges of said Court, this    10th day of May, 2023

*Melissa R. Henry,* Clerk of Court

By:    *Tricia Breaux*
Tricia Breaux, Deputy Clerk

**NOTICE OF JUDGMENT AND
CERTIFIED COPY MAILED
TO ABOVE NAMED ON May 12, 2023**

Issued:  05/11/23

305-Ntc of Judgment - Mail
Rev 7/16

# Fax

To: | 22nd JDC Clerk Of Court

Fax #: | (985) 809-8777

*From: | Theon A. Wilson

Date: | May 31, 2023

Subject: | Anderson vs Anderson

Pages: | 4

NOTES: | Motion To Continue and Reset.

# LAW OFFICES OF THEON A. WILSON

May 31, 2023

Clerk of Court
22th Judicial District Court for the Parish of St. Tammany
P.O. Box 1090
Covington, LA 70434

RE:    *Arthur Anderson vs Kenyatta Santiago Anderson*
       *22nd Judicial District Court for the Parish of St. Tammany*

Dear Clerk of Court:

    Enclosed please find a Motion To Continue and Reset which we are filing by fax. I have placed the original, two copies and a check in the mail. Please route it to the division and return true copy to me.

                                            Sincerely,

                                            THEON A. WILSON

TAW/tb
cc: Arthur Anderson

1100 Poydras Street
Suite 1160
New Orleans, LA 70163

Telephone: (504) 635-0072
Fax: (504) 635-0071



NO. 2023-12338                           DIVISION "K"

ARTHUR ANDERSON

VERSUS

KENYATTA SANTIAGO ANDERSON

FILED: _____         _____
                                        DEPUTY CLERK

### MOTION TO CONTINUE AND RESET

NOW INTO COURT, through undersigned counsel, comes ARTHUR ANDERSON, who respectfully represents:

1.

Mover has previously filed a Petition For Divorce Pursuant To Louisiana Civil Code Article 102 which was fax filed on May 17, 2023. The hearing Officer Conference on the Petition For Divorce Pursuant To Louisiana Civil Code Article 102 is set for hearing on July 25, 2023 at 9:00 a.m. with the Hearing Officer; however counsel for mover has a conflict with that date and time, namely the matter entitled Curtis C. Kronlage vs Parris Ann Amedee Kronlage, 2008-6286 in the Civil District Court for the Parish of Orleans.

2.

Therefore, mover request that the hearing on the Petition For Divorce Pursuant To Louisiana Civil Code Article 102 with the Hearing Officer be reset to a date and time determined by this Honorable Court.

Respectfully submitted,

_____
THEON A. WILSON, Bar No:13576
1160 Energy Center
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 635-0072
Fax : (504) 635-0071

### ORDER

Considering the foregoing,

IT IS ORDERED that the hearing on the Petition For Divorce Pursuant To Louisiana Civil Code Article 102 which is set for hearing on July 25, 2023 be reset for hearing on the _____ day of _____, 2023 at 9:00 a.m.

Covington, Louisiana this_____ day of June, 2023.

_____
                                        JUDGE

# TRANSACTION REPORT

MAY/31/2023/WED 12:46 PM

FAX(RX)

| # | DATE | START T. | SENDER | COM.TIME | PAGE | TYPE/NOTE | FILE |
|---|------|----------|--------|----------|------|-----------|------|
| 001 | MAY/31 | 12:44PM | FAX | 0:01:21 | 4 | OK    ECM | 9201 |

# THE LAPE
# LAW FIRM

Trey Lape <trey@lapelawfirm.com>

---

## FW: Claim Acknowledgement / Hermes Health Alliance / Hurricane Ida damage / SDA 4187997

---

Francisca Cruz <fcruz@pittmanassets.com>                                   Mon, Sep 13, 2021 at 11:04 AM
To: Trey Lape <trey@lapelawfirm.com>


*Francisca Cruz*

The Pittman Companies

3067 E. Causeway Approach

Mandeville, LA 70448

Direct Ph.(985)898-3828 Fax(985)787-3888


From: Bazarnic, Timothy [mailto:Timothy.Bazarnic@sedgwick.com]
Sent: Friday, September 10, 2021 12:52 PM
To: Francisca Cruz <fcruz@pittmanassets.com>
Subject: Claim Acknowledgement / Hermes Health Alliance / Hurricane Ida damage / SDA 4187997


Francisca,

I just left you a voicemail on this as well.


We acknowledge receipt of the claim for damage related to Hurricane Ida, for the property at 4201 Woodland Dr, New Orleans, LA.

I am assigning a field adjuster now. They will contact you to coordinate the site investigation and will report back to me.

Please let me know if you have any questions in the meantime.


Best regards,

Tim


Timothy Bazarnic, MBA | Account Manager
Sedgwick |Delegated Authority
OFFICE 407.849.0044 | CELL 321-320-1874

FAX 407.849.6710
12650 Ingenuity Drive Suite 200 | Orlando, FL 32826

EMAIL Timothy.Bazarnic@Sedgwick.com

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss



EXHIBIT

A

www.sedgwick.com/solutions/property | Caring counts®

sedgwick · delegated authority

Sedgwick Delegated Authority, Third Party Administrator for various insurance carriers, as applicable per your insurance policy, in accordance with the policy allocation page, including Certain Underwriters at Lloyd's, London, Steadfast Insurance Company, QBE Specialty Insurance Company, Indian Harbor Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Old Republic Insurance Company, Safety Specialty Insurance Company, Lexington Insurance Company, HDI Global Specialty SE (formerly known as International Insurance Company of Hannover SE) and Princeton Excess and Surplus Lines Insurance Company

---

Any personal data acquired, processed or shared by us will be lawfully processed in line with applicable data protection legislation. If you have any questions regarding how we process personal data refer to our Privacy Notice https://www.sedgwick.com/global-privacy-policy. Any communication including this email and files/attachments transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. If this message has been sent to you in error, you must not copy, distribute or disclose of the information it contains and you must notify us immediately (contact is within the privacy policy) and delete the message from your system.

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss



**THE LAPE**
**LAW FIRM**

Trey Lape <trey@lapelawfirm.com>

## Hermes Health

---

Ulrick, Lance S. <Lance.Ulrick@sedgwick.com>                    Thu, Oct 7, 2021 at 6:08 AM
To: "Chianese, John" <John.Chianese@sedgwick.com>, Timothy Eplee <teplee@jsheld.com>,
"aavery@appliedbuildingsciences.com" <aavery@appliedbuildingsciences.com>, "trey@lapelawfirm.com"
<trey@lapelawfirm.com>

Good morning

Enclosed is the sign in sheet fom yesterday.

**Lance S. Ulrick** | National General Adjuster
15 Benton Drive | East Longmeadow, MA. 01028
DIRECT 413.739-5600 | FAX 413.739.5700
CELL 413.896.7938 | EMAIL Lance.Ulrick@sedgwick.com

www.Sedgwick.com| Caring counts®

 **sedgwick.**

---

Any personal data acquired, processed or shared by us will be lawfully processed in line with applicable data protection legislation. If you have any questions regarding how we process personal data refer to our Privacy Notice https://www.sedgwick.com/global-privacy-policy. Any communication including this email and files/attachments transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. If this message has been sent to you in error, you must not copy, distribute or disclose of the information it contains and you must notify us immediately (contact is within the privacy policy) and delete the message from your system.

---

Hermes Health Sign In Sheet 100621pdf.pdf
311K

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss



EXHIBIT
B-1

Sign In Sheet - Hermes 10/6/21

Lance Ulrick - Sedgwick

John Chapin - Sedgwick

Patrick Wilkins - MKA

Benjamin Zembik - MKA

Ramon Ley - MKA

Bill Teigwell - MKA

Ashley Allard - MKA

J Randall Trahan - MKA

Doug Van Fleet - Js Held

Tom Epler - SS Held

Ken Dundoy - Life Safety

Daniel Cooper - United Environmental

Chris Courville - United

Ashley Ray Arceo - Applied Building Sciences, Inc.

Daniel Furr - Applied Building Sciences, Inc.

Jessie O'Dell - Building Damage Consultants

Rhody Thomson - Building Damage Consultants

Ryan Rahier - United Environmental

Peter Connick - St Wills

Heather McEwan - St Wills

Trey Lupe - Harris Attorney

EXHIBIT
B-2
ALL-STATE LEGAL®



sedgwick | delegated authority

*The Art of Adjusting*™

EXHIBIT
C

December 16, 2021

<u>CERTIFIED AND REGULAR MAIL</u>
Lape Law Firm
Mr. Trey Lape
1966 N Highway 190, Ste B
Covington, LA 70433

Re:       Insured:          HERMES HEALTH ALLIANCE LLC
             Policy Dates:     10/28/2020-10/28/2021
             Date of Loss:     08/29/2021
             SDA File #:       4187997
             Location:         4201 Woodland Dr, New Orleans, LA 70131
             Cause of Loss:    Hurricane Ida – CAT 2160
             Policy No.:       AMR-40526-06 - Certain Underwriters at Lloyd's, London
             Policy No.:       AMP7533627-03 - Indian Harbor Insurance
             Policy No.:       LEX-084297671-06 - Lexington Insurance Company
             Policy No.:       MSP-18695-06 - QBE Specialty Insurance Company
             Policy No.:       CPP1013915-06 - Steadfast Insurance Company
             Policy No.:       USI-12874-06 - United Specialty Insurance Company
             Policy No.:       10T029659-02907-20-05 - General Security Indemnity
                                Company Of Arizona
             Policy No.:       HAN-20848-02 - HDI Global  Specialty SE, formerly
                                known as  International Insurance Company of Hannover
                                SE
             Policy No.:       ORAMPR005949-02 - Old Republic Union Insurance
                                Company
             Policy No.:       SSI-14154-02 - Safety Specialty Insurance Company

Dear Mr. Lape:

With reference to the above captioned loss, Sedgwick Delegated Authority is the Claim Administrator, and is writing on behalf of the property coverage carried through Indian Harbor Insurance; Lexington Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; United Specialty Insurance Company; General Security Indemnity Company Of Arizona; Old Republic Union Insurance Company; Safety Specialty Insurance Company; HDI Global Specialty SE, formerly known as  International Insurance Company of Hannover SE; Certain Underwriters at Lloyd's, London ('the insurers').

We have reviewed the relevant information to date and based upon this review, your Insurers have determined a portion of the claim which has been filed for Hurricane Ida-caused damage may not

12650 Ingenuity Drive | Suite 200 | Orlando, FL 32826 | PHONE 407-849-0044 | FAX 407-849-6710 | EMAIL SDA-Admin@sedgwick.com

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

HERMES HEALTH ALLIANCE LLC
December 16, 2021
Page 2

be covered in whole or in part. This letter explains the basis for this determination. In order to explain the coverage issues, your Insurers must discuss the facts of this loss.

## FACTUAL SUMMARY

Claim has been reported for loss and damage caused by or resulting from Hurricane Ida. On behalf of the Insurers, we have retained Mr. John Chianese, with Sedgwick CMS as the field adjuster. Mr. Chianese inspected the property with representatives of J.S. Held, whom was also retained as a Building Consultant. It was then determined additional expert(s) would be required to comment on the cause(s) of loss to the property.

On behalf of the Insurers, we have retained an engineer, Mr. Ashley R. Avery, MSPC, PE, with Applied Building Sciences (hereinafter referred as "ABS") to investigate the cause(s) of loss to the subject property. Copy of the ABS report has been provided electronically and also enclosed herewith. ABS concluded their investigation as follows:

> *EVALUATION*
> *ABS evaluated the Hermes Health Alliance, LLC, property to determine the extent of wind-related damages associated with the passage of Hurricane Ida on or about August 29, 2021. Initial wind damage to low-slope roof assemblies normally includes deflection of light-gauge metal accessories and perimeter flashing components. Winds of adequate speed can produce displacement, peeling, and uplift to the roof membrane starting in high wind regions (edges and corners), and potentially throughout the field of the roof. Wind can also contribute to flying debris, which may impact and damage the roof and building envelope. At the time of ABS' site survey, limited wind damage to the roof and building envelope was present. Wind damage was limited to the following:*
> - *Displacement and detachment of east portion of the porte-cochère roof.*
> - *Displacement and detachment of approximately 8 square feet of tower roof covering above the northeast balcony.*
> - *Displaced and/or repaired roof vent #9 and #27.*
> - *Impact damage to skylight on annex roof near chiller.*
> - *Broken window on ground level, south tower entry near the elevator.*
> - *Disengaged exterior PMMA at Room 5 on Level 4.*
>
> *There was a broken tree on the annex roof which is consistent with wind damage. At the time of ABS' site survey, no evidence of roof punctures or damage were present; however, the roof membrane should be inspected following the removal of the tree debris. Evidence of wind-driven rain was present at isolated doors consistent with a directional storm event. Some locations exhibited evidence of persistent water intrusion beneath the doors indicating on-going conditions and a lack of maintenance. Interior water damage was present on the interior face of exterior walls at isolated locations. These locations had evidence of long-term water intrusion and could not be correlated with a breach in the roof or building envelope, ruling out the possibility of wind-related damage from Hurricane Ida causing the leaks. The windows lacked evidence of displacement, movement, or deflections*

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM  Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss



HERMES HEALTH ALLIANCE LLC
December 16, 2021
Page 3

*of fenestration components perpendicular to the surface of the fenestration, meaning there was no wind damage to the fenestrations except those previously identified.*

*ABS evaluated potential sources of interior moisture damage. Interior moisture damage was observed all on tower levels, the annex, and areas within the center of the building far removed from the exterior walls. Had the widespread moisture issues been related to Hurricane Ida or a breach in the roof and/or building envelope occurred, ABS would expect to see water damage on the upper levels and/or building perimeter. This was not the findings at the time of ABS' site survey. ABS observed widespread moisture damage below HVAC and plumbing system components throughout the building. Damage was worse in areas occupied by St. Luke's. Evidence of mitigation and repair attempts were more prevalent within areas occupied by the other tenants. Drawings for an interior upfit within the SBC annex occupied areas were dated in late 2019 indicating renovation efforts. The observed interior moisture conditions had evidence of repair attempts in some locations and exhibited long-term staining. Generally, the widespread damages were related to HVAC and plumbing system issues unrelated to Hurricane Ida.*

*As a courtesy, ABS provides the following general comments. ABS found the roof was not replaced in 2008 as reported. The roof was near, at, or has exceeded its useful service life. Repairs to the roof are worn and some are not in accordance with industry standards. Construction, installation, and deferred maintenance conditions are contributing to the vegetation growth and water within the roof assembly. These conditions have been present for years. The interior conditions of the building varied by tenant with some general same occurring conditions. The HVAC and plumbing issues are not storm related and should be evaluated by professionals in their respective areas to prevent further damage. The portions of displaced tower roof covering can be repaired with modified bitumen cap sheets fully adhered to the existing roof covering with an approved modified bitumen adhesive. This has been the primary method of repair to roof coverings over the subject buildings for an extended period of time.*

The adjustment team, and Building Consultant J.S. Held, has been requested to complete their estimate(s) for the damaged noted above which were caused by wind. Upon receipt of the estimate(s), we will remit those as soon as possible.

Please note, the applicable deductible for any loss arising out of a Hurricane is 5.0% of the Total Insured Value (TIV) at each location, with a minimum of $25,000.00. The subject risk is insured as one location, with a TIV of $16,710,000.00. Therefore, the applicable deductible is $835,500.00. We do not currently anticipate the covered wind-caused damage to exceed $835,500.00 in value. We will update you and remit copy of the estimate on receipt.

<div align="center">COVERAGE SUMMARY</div>

The applicable property form for this discussion forming a part of the policy is:
**AR COMPASS (04/18) AmRisc, LP Compass Commercial Property Form**

12650 Ingenuity Drive | Suite 200 | Orlando, FL 32826 | PHONE 407-849-0044 | FAX 407-849-6710 | EMAIL SDA-Admin@sedgwick.com



Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

HERMES HEALTH ALLIANCE LLC
December 16, 2021
Page 4

In consideration of the premium charged, this policy covers for direct physical loss of or damage to the Covered Property caused by a Covered Cause of Loss occurring during the policy period. Coverage shall be subject to the terms, conditions, definitions, exclusions, limitations and provisions contained herein.

...

## SECTION II – COVERED CAUSES OF LOSS

A. COVERED CAUSES OF LOSS:  This Policy insures against all risks of direct physical loss or damage to Covered Property, except as excluded.

B. EXCLUSIONS: The Companies do not insure for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

...

10.    Faulty workmanship, material, construction, installation, or design from any cause; or faulty planning, zoning, development, surveying or siting; all unless physical damage not excluded by this Policy ensues, in which event, this Policy will cover only such resulting damage.

...

12.    Deterioration, depletion, rust, corrosion, erosion, wet or dry rot, decay, evaporation, leakage, wear and tear, animal, insect or vermin damage, inherent vice or latent defect, shrinkage or change in color, flavor, texture or finish, extremes or changes of temperature damage or changes in relative humidity damage, all whether atmospheric or not; all unless physical damage not excluded by this Policy results, in which event, this Policy shall cover only such resulting damage.

13.    Settling, cracking, shrinking, bulging, or expansion of pavements, paved surfaces, walkways, drainage systems or roadways, foundations, walls, floors, or ceilings; all unless physical damage not excluded by this Policy results, in which event, this Policy will cover only such resulting damage.

...

18.    Loss or damage in the form of, caused by, arising out of, contributed to, or resulting from Fungus, Mold(s), Mildew, Spores or Yeast; or any spores or toxins created or produced by or emanating from such Fungus, Mold(s), Mildew, Spores or Yeast.

However, this exclusion shall not apply provided the Insured establishes that the fungus, mold(s), mildew, spores or yeast is a direct result of a covered loss from a Defined Cause

12650 Ingenuity Drive | Suite 200 | Orlando, FL 32826 | PHONE 407-849-0044 | FAX 407-849-6710 | EMAIL SDA-Admin@sedgwick.com

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

HERMES HEALTH ALLIANCE LLC
December 16, 2021
Page 5

of Loss or Flood (provided Flood is a covered peril) and provided this loss is reported to the Companies within twelve (12) months from the expiration date of the policy. The Companies' liability shall then be limited to the sublimit stated elsewhere.

...

26.     Loss or damage by rain, snow, or dust, whether driven by wind or not, to the interior of any building or structure, or the property inside the building or structure, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters. This exclusion shall not apply to loss or damage caused by or resulting from the thawing of snow, sleet or ice on the Building or structure (also known as ice damming).

...

33.     Pre-existing Damage: This policy shall exclude any loss or damage directly or indirectly caused by, resulting from or contributed to, any pre-existing building damage at the time of this Policy's inception or attachment of coverage. This exclusion shall not apply: a) upon the substantial completion of repair or reconstruction of the damaged building; or b) if the affected building is a renewal of an expiring policy written by the Program Manager.

...

**SECTION VII – CONDITIONS**

...

C.     ARBITRATION CLAUSE: All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred. If the Arbitrators cannot agree to an Umpire, either may request the selection be made by a judge of a New York court.

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery,

Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

HERMES HEALTH ALLIANCE LLC
December 16, 2021
Page 6

inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

Each party will pay its chosen Arbitrator, and also bear the other expenses of the Arbitration and Umpire equally.

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature.

A decision agreed to by any two members of the Arbitration Tribunal shall be binding. The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

...

S.    REQUIREMENTS IN CASE OF LOSS: The Insured shall:

1.    Give immediate written notice of any loss or damage to the Program Manager's Claims Department;
2.    Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority;
3.    Protect the property from further loss or damage;
4.    Separate the damaged and undamaged personal property;
5.    Maintain such property in the best possible order;
6.    Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed;
7.    Furnish all other documents or insurance policies that the Companies may reasonably require;
8.    Allow the Companies to access and inspect any of the damaged or undamaged property; and
9.    Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;

Within ninety (90) days after the loss, unless such time is extended in writing by the Companies, the Insured shall provide the Companies with a Proof of Loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:
1.    The time and origin of the loss;
2.    The interest of the Insured and of all others in the property;

Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM   Case Number: 2021 14812   St. Tammany Parish, LA   Deputy Clerk: Gretchen Moss

HERMES HEALTH ALLIANCE LLC
December 16, 2021
Page 7

3.  The value of each item thereof determined in accordance with the Valuation Provisions of this Policy and the amount of loss thereto and all encumbrances thereon;

4.  All other contracts of insurance, whether collectible or not, covering any of said property; and

5.  Any changes in the title, use, occupation, location, possession or exposures of said property subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground

...

## SECTION VIII – POLICY DEFINITIONS

...

I.  **Defined Cause of Loss** means Fire, Lightning, Explosion, Windstorm or Hail, Smoke, Aircraft or Vehicle Impact, Riot, Strike or Civil Commotion, Vandalism and Malicious Mischief, or Leakage from Fire Protection Equipment.

...

R.  **Fungus, Mold(s), Mildew, Spores Or Yeast:**

Fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms.

Mold includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s).

Spore means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms.

...

Please also see **Endorsement 1**, effective 10/28/2020, which states as follows:
...

2.  Replacement Cost Valuation shall apply as regards to Real Property; Except roof coverings to be Actual Cash Value if originally installed or last fully replaced prior to 2008.

...

12650 Ingenuity Drive | Suite 200 | Orlando, FL 32826 | PHONE 407-849-0044 | FAX 407-849-6710 | EMAIL SDA-Admin@sedgwick.com



Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

HERMES HEALTH ALLIANCE LLC
December 16, 2021
Page 8

Please also see form **Compass CCP 01 17 CAT COVERED PROPERTY ENDORSEMENT,** which states as follows:

...

## PROPERTY NOT COVERED

1. **The Companies do not cover:**
   a. Other Structures
      The Companies do not cover other structures on the insured Location set apart from the Building by clear space. Thi8s includes structures connected to the Building or mobile home by only a fence, utility line or similar connection.

...

## CONCLUSION

We are issuing this reservation of rights letter as we undertake additional investigation into the cause(s) of loss, necessary to make the necessary determinations of coverages for the various aspects of the claim.

Please note that this letter is not intended to explain each, and every, reason why no coverage may be available under the policy for this claim. The Insurers will honor all their contractual obligations to its insureds; however, the coverage provided by the policy is limited by its terms and conditions. The Insurers reserve all rights they have under the policy or at law, including but not limited to the policy provisions discussed for the reasons stated, but also for any other reason that may become apparent. In addition, as additional information comes to light, your Insurers may modify this reservation of rights to reflect changes in the coverage issues presented. Any action taken by your insurers before or after this reservation of rights, investigating facts that may be the basis of any claim or any other action shall not in any way create or enlarge the coverage afforded under the policy, if any, or your insurers right to deny coverage should it subsequently be determined that all or part of the claims fall outside the scope of coverage.

Kind Regards,

Timothy Bazarnic
Account Manager
(407)849-0044
SDA-Admin@sedgwick.com

Enclosure:    ABS Report, Attachments

12650 Ingenuity Drive | Suite 200 | Orlando, FL 32826 | PHONE 407-849-0044 | FAX 407-849-6710 | EMAIL SDA-Admin@sedgwick.com



Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

HERMES HEALTH ALLIANCE LLC
December 16, 2021
Page 9

Cc:

AmRisc, LLC
claims@amrisc.com

12650 Ingenuity Drive | Suite 200 | Orlando, FL 32826 | PHONE 407-849-0044 | FAX 407-849-6710 | EMAIL SDA-Admin@sedgwick.com

Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM Case Number: 2021148812   St. Tammany Parish, LA   Deputy Clerk: Gretchen Moss

## AGREEMENT TO EXTEND LEASE

HERMES HEALTH ALLIANCE, L.L.C. (hereinafter called "Landlord"), represented herein by its Managing Member, Michael N. Pittman, M.D. and St. Luke #2, L.L.C. (hereinafter called "Tenant"), represented herein by its duly authorized Manager, Lawrence Stansberry, III, pursuant to the unanimous consent of members attached hereto and made part hereof, hereby enter into this Agreement to Extend Lease (the "Extension Agreement") on the terms, conditions, and provisions set forth herein below.

WHEREAS, Landlord and Tenant executed a Lease for the following described Leased Premises which commenced on November 10, 2009 and will terminated according to its terms on November 9, 2016 (the "Lease"); and

WHEREAS, the Lease afforded Tenant the option to extend the Lease for three successive five (5) year terms on the conditions therein provided; and

WHEREAS, Tenant desires to exercise its option and extend the term of the Lease; and

WHEREAS, Tenant has notified Landlord timely of its desire to extend the Lease; and

WHEREAS, Landlord and Tenant have agreed to extend, amend, modify and supplement the Lease as set forth in this Extension Agreement;

NOW THEREFORE, in consideration of the mutual obligations set forth in the Lease and this Extension Agreement, Landlord and Tenant agree, as follows:

### Article I.
### AGREEMENT TO EXTEND LEASE

A. Extended Term. Landlord and Tenant hereby agree to extend the Term of the Lease, in accordance with the provisions of this Extension Agreement. As extended, the Option Term, as defined in the Lease, shall commence on November 10, 2016 and end on November 9, 2021, unless sooner terminated under the provisions of the Lease and this Extension Agreement.

B. Reconciliation of Provisions of Lease. The terms, conditions and other provisions of the Lease shall remain in full force and effect, except as they are specifically amended, modified and supplemented herein. Once amended, modified or supplemented by execution of this Extension Agreement, the amendment modification and/or supplement to the Lease shall control.

### Article II.
### DEFINITIONS

A. "Lease" shall mean the Lease identified in the recitals above as amended, modified and supplemented by this Extension Agreement.

B. "Leased Premises" shall mean the following described space:

> Approximately 51,372 square feet of space and the rights attendant thereto more specifically set forth hereinafter, including existing tenant improvements, if any, therein and thereon, consisting of a portion of the 1st floor, a portion of the 2nd floor, the entire 5th floor, and the entire 6th floor of the Building, as delineated in bright yellow highlight on the floor plans prepared by Perez Architects, attached hereto as Exhibit A, located in the

Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM Case Number: 202114812   St. Tammany Parish, LA   Deputy Clerk: Gretchen Moss





Landlord        Tenant        Surety

Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM Case Number: 2021114812   St. Tammany Parish, LA   Deputy Clerk: Gretchen Moss

immovable property described on Exhibit B hereto (the "Real Estate").

Notwithstanding the descriptions shown on the floor plan by Perez Architects, attached hereto as Exhibit A, the Chapel, Vestibule and Reception areas are Common Areas and therefore not included in the Leased Premises (these Common Areas are shown in red cross-hatching on Exhibit "A"). Furniture, fixtures and equipment that is or may be owned by Landlord located in or on the Leased Premises may be used and maintained by Tenant for its purposes, at its risk, but is not part of the Leased Premises for which Rent is charged. Therefore, Landlord has no responsibility to replace same if it becomes unusable. Tenant shall be allowed to insure Landlord's furniture, fixtures, and equipment located in or on the Leased Premises under its insurance policies if Tenant so chooses. If any such furniture or equipment of Landlord's located in or on the Leased Premises becomes unusable and is replaced by Tenant, such replacement item shall be deemed the property of Tenant.

C. "Property" shall mean the Leased Premises, the Building and the Real Estate.

D. "Rent" shall mean Base Rent, Additional Rent (CAM Charges, NNN Expenses and other charges as identified hereinafter) and Holdover Rent unless the context clearly indicates otherwise.

E. "Term" shall mean the Option Term having the commencement date and ending date set forth in Article I, Section A hereof.

## Article III.
## AGREEMENT TO AMEND AND MODIFY LEASE

Landlord and Tenant agree to amend and modify the Lease in effect during the Primary Term in the following particulars:

A. Rent.

(1) Base Rent for the Term shall be Sixty-seven Thousand Two Hundred Twelve ($67,212) Dollars per month, with the first monthly payment of Base Rent due and payable on November 10, 2016 and each additional payment of Base Rent due and payable on the 10th day of each succeeding month thereafter during the Term (the "Due Date"). The Base Rent is calculated at the rate of $15.70 per square foot of Leased Space rounded to the nearest Dollar.

(2) In consideration for Landlord permitting Tenant to occupy and use the Reception Area identified and delineated on the 1st floor plan included as part of Exhibit A, Tenant agrees, at its expense, to staff the Reception Area with qualified personnel employed by Tenant, charged with the responsibility of greeting persons entering the Building through the main entrance, directing such persons to the person he/she is seeking, and performing other tasks and responsibilities currently being performed by Tenant. Tenant and its staff shall keep the Reception Area clean and in an orderly condition befitting a Building housing hospitals, nursing homes, and similar health related facilities. The number of square feet comprising the Reception Area is not and shall not be included in the calculation of the total number of square feet comprising the Leased Space leased by Tenant from Landlord hereunder; and, therefore will not be a factor when calculating Tenant's portion of Shared Expenses.



Landlord

options, the Base Rent for the second Option Term shall equal the monthly Base Rent for the current Term increased by an amount proportional to the increase in the Consumer Price Index ("CPI") from the inception of this Term (or the immediately preceding five year period, if applicable) to the inception of the next Option Period, as the case may be. The CPI shall mean the "Consumer Price Index – for All Urban Consumers, South Region, All Items (1982-84 = 100)" as published by the United States Department of Labor Statistics, or if such index shall be discontinued, the successor index, or if there shall be no successor index, such comparable index as mutually agreed upon by the parties. To determine the increase in monthly Base Rent to be paid by Tenant after the current Term has expired and the second Option Period begins, the Base Rent for the current Term shall be multiplied by a percentage figure, computed from a fraction, the numerator of which shall be the CPI on the date (or at the closest time thereto the CPI is reported) that the new Option Term begins and the denominator of which shall be the CPI on the date the current Option Period commenced (or at the closest time thereto the CPI is reported). Such fraction (plus the current rate added as a factor equal to 100) shall be converted to a percentage equivalent designated the "CPI Percentage Increase. For instance, if the difference in the CPI over the 5 year period is 10% (2% per year), the CPI Percentage Increase shall equal 110%. According to this formula, the Base Rent for the new Option Term shall be calculated by multiplying the Base Rent for the first five years of the Term (or current Option Term) by the CPI Percentage Increase. For the example cited, the monthly Base Rent for the new term will be $73,933 ($67,212 x 110%). In no event shall the monthly Base Rent for any month be less than the Base Rent for the immediately preceding month.

(4) In addition to Base Rent, Tenant shall pay Landlord, as "Additional Rent", a sum equal to property (ad valorem) taxes and assessments, commercial general liability and casualty insurance, and utilities (herein referred to as "NNN Expenses") and Common Area maintenance expenses ("CAM Charges") (each a "Shared Expense" and collectively, "Shared Expenses") attributable to the Leased Premises ("Tenant Shared Expenses"). Attribution of Tenant Shared Expenses shall be calculated by multiplying the total cost of the Shared Expense by a factor, the numerator of which is 51,372 (the number of square feet in the Leased Premises), and the denominator of which is 93,368, the total number of leasable space in the St. Luke's Medical Center building (hereinafter "Tenant's Sharing Ratio"). The amount of ad valorem taxes and insurance premiums billed as Additional Rent shall be prorated for the first and last year of the Term. Ad valorem taxes and insurance premiums and will be billed prospectively as provided herein below.

(5) Certain Tenant Shared Expenses, such as insurance and property taxes will be billed, as hereinbefore and hereinafter provided. Other Shared expenses will be billed according to the following:

(a) CAM Charges will be billed monthly at the flat rate of $2.00 per square foot per year or $8,562 per month during the first Option Term. At the end of each calendar year, Landlord will total all CAM expenses incurred by Landlord during the previous calendar year and shall reconcile the total amount of CAM expenses billed Tenant according to its Sharing Ratio to the total amount of CAM Charges paid by Tenant during the previous calendar year. In the event that Tenant's proportionate share of CAM expenses actually incurred by Landlord is less than $2.00 per square foot per year, Tenant will receive a credit following the reconciliation on the next bill sent by Landlord, that is, a reduction from the flat $8,562 per month CAM Charge until the overage paid by Tenant is zeroed out. In the event that Tenant's proportionate share of CAM expenses actually incurred by Landlord is more than $2.00 per square foot per year, Tenant will be billed the additional amount on the first bill sent by Landlord following the reconciliation;

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss



Landlord

calendar-year basis more than $2.50 per foot per year for its proportionate share of CAM Charges. CAM Charges are due by Tenant in the month that the bill for same is sent to it by Landlord and payable at the same time as the Base Rent for that month is due. The charges for a generator to provide air conditioning and heating in the event of an emergency power outage will be charged as a special assessment to all tenants of the Building and will not be subject to the $2.50 cap on CAM Charges, because the renting of a generator is a request of Tenant and for the purpose, among others, of Tenant avoiding the expense of moving residents from the Building to another facility.

(b) Certain NNN Expenses, including but not limited to utilities and any other expenses that are currently billed to Tenant as NNN Expenses under the terms of the existing Lease, are due and payable at the same time that monthly Base Rent is due and payable. NNN Expenses shall be apportioned to Tenant according to its Sharing Ratio based on bills or other supporting documentation that Landlord receives from third party providers. The bill for NNN Expenses shall be sent each month accompanied by a copy of the supporting information and a tally sheet showing apportionment among the tenants according to each tenant's sharing ratio.

(c) Certain other NNN Expenses, more particularly, property (ad valorem) taxes and assessments lawfully imposed on the Property (collectively, the "Property Taxes") and the premiums for General Liability and Casualty Insurance coverage on the Property ("Insurance") are due and payable at least seven (7) days prior to the date Landlord is required to pay the Property Taxes and/or special assessments to the tax collector (generally, before January 31st of each year) or Insurance. Landlord shall bill Tenant as NNN Expenses for its proportionate share of Property Taxes and Insurance in proportion to Tenant's Sharing Ratio. Promptly upon receiving the bill for Property Taxes or special assessments (generally, in December of each year) and for Insurance, Landlord shall give Tenant written notice of Tenant's pro rata share of the Property Taxes and/or Insurance. Should Tenant fail to pay its prorata portion of the Property Taxes and/or Insurance timely as herein provided, it will be in default of this Agreement and subject to all remedies available to Landlord hereunder. Landlord may in its sole discretion delay paying property taxes and insurance until Tenant and other tenants of the St. Luke's Medical Center building have paid their attributed share and any such decision by Landlord to delay payment of the Shared Expense(s) shall not be cause for Tenant to withhold payment of its Tenant Shared Expenses on the Due Date. In the event that Tenant (I) timely pays Landlord its pro-rata share of property taxes and insurance attributable to the Building, and (ii) Landlord delays payment of the property taxes or insurance attributable to the Building, Tenant shall not be responsible in any way for any penalty or loss that results therefrom.

(7) In addition to CAM Charges and NNN Expenses, the term Additional Rent shall mean and include all sums and accounts paid by Landlord on behalf of Tenant, which under the terms of this Lease are the responsibility of, and chargeable to Tenant, which have not been paid timely by Tenant. Before paying such Tenant expenses, Landlord shall give reasonable notice to Tenant and afford Tenant the opportunity to be heard. Expenses paid by Landlord on behalf of Tenant which are the sole responsibility of Tenant (expenses which are not Shared Expenses) shall be due and payable within ten (10) days after receipt of the bill from Landlord.

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss


Landlord

Tenant

(8) Tenant, after giving Landlord reasonable notice, shall have the right to inspect at Landlord's business office, during normal business hours, the primary documentation for CAM Charges, NNN Expenses, and other charges to Tenant (i.e. property tax bills, insurance bills, invoices for services and repairs, and the like), and such other documentation as may be reasonably requested, upon which Additional Rent is predicated.

(9) Should Tenant fail or refuse to vacate the Leased Premises at the expiration of the Term or any written extension of the Term, or after the Lease has been terminated as elsewhere provided in the Lease, Landlord has the option to interpret such actions as creating a month-to-month lease. During such holdover period, Tenant shall pay Landlord monthly in advance Holdover Rent equal to 150% of the monthly Base Rent charged during the immediately preceding Lease Year, as well as Additional Rent accruing during the holdover period. Payment of Holdover Rent and Additional Rent by Tenant shall not serve to extend the term of the Lease, and receipt of Holdover Rent by Landlord shall not constitute a waiver of Landlord's right to invoke remedies available to it under the terms of this Lease, including eviction by judicial process. Holdover Rent shall be payable in the same manner as Base Rent.

(10) Tenant shall be allowed a grace period of ten (10) calendar days from the Due Date to present the Rent payment in good and currently available funds to Landlord without premium or penalty. However, if Tenant fails to pay Landlord the full amount due within the ten (10) day grace period, Tenant shall be in default of this Lease. Landlord shall have no obligation to give Tenant notice of non-payment of the Rent or to place Tenant in default. Landlord may allow Tenant to pay the Rent after the Due Date and after the ten (10) day grace period, plus a late fee equal to 10% of the Rent then due, but Landlord has no obligation to do so. Allowing Tenant to make a late payment of Rent plus a late fee shall be construed only as an indulgence by Landlord and not a waiver of any rights and remedies otherwise available to Landlord.

(11) All Rent due and payable hereunder shall be payable by check drawn on the account of Tenant maintained at any federally insured financial institution. In the event any check paid to Landlord by Tenant is returned by Tenant's financial institution on one or more occasions for any reason, Landlord may require that all future Rent be paid by Tenant with certified funds.

(12) All payments of Rent hereunder shall be tendered to Landlord on or before the due date at 328 East Boston Street, Covington, Louisiana 70433 or at such other location as Landlord may from time to time designate by written notice to Tenant.

B. Tenant Default.

(1) Should Tenant fail to pay Rent promptly on the Due Date, and said failure to pay continues for a period of ten (10) days after the Due Date (that is, if Base Rent, CAM Charges, NNN Expenses, other Additional Rent (except Tenant's proportionate share of insurance and property tax expenses, which are separately billed) and/or, Holdover Rent, if applicable, are not paid in full within the times hereinbefore provided), Tenant shall be automatically in default of this Lease. Landlord shall have no obligation to give Tenant notice of non-payment of Rent or to take any other action to declare Tenant in default. Neither does Landlord have the obligation to give Tenant the opportunity to cure the default of non-payment of Rent. In the event of such default, Landlord shall have available to it all remedies prescribed hereinafter and by Louisiana law.

(2) In the event that Tenant breaches any other covenant, obligation, or term of the Lease; or, Tenant files for or is placed in bankruptcy, receivership, insolvency, or assignment for the benefit of creditors; or, Tenant fails to maintain or operate a business,



Landlord

Premises or business operations, or any of the permits or licenses required for the conduct of business in the Leased Premises are revoked, then Tenant shall be in default of this Lease. Landlord shall give Tenant written notice of such default in the manner provided in Article III, Section D of this Extension Agreement. Tenant shall have the opportunity to cure said default within thirty (30) calendar days from the date the written notice is received or deemed received, pursuant to the provisions of Article III, Section D hereof. If Tenant has made a good faith effort to cure the noticed default within the thirty (30) day cure period, but despite the good faith effort of Tenant the default has not been cured, then Landlord, in its sole discretion, may grant such additional reasonable time as is necessary for Tenant to cure such default.

(3) In the event of Tenant's default, and its failure to cure same within the time provided (none if the default is non-payment of the Rent), Landlord shall have the right, at its sole option, to seek the following remedies: (a) if Tenant has not paid all Rents in full and when due for three (3) consecutive months, accelerate all Rents due for the unexpired term of this Lease and declare same immediately due and payable; or to sue for the Rent in intervals as they accrue; or (b) dissolve the Lease and regain possession of the Leased Premises in the manner provided by law, saving to Landlord the right to recover from Tenant the loss of Rent and Additional Rent that Landlord is owed by Tenant at the time of Tenant's eviction and such future Rent and Additional Rent, as permitted by law, that would have been realized had Tenant continued under the terms of the Lease, and any other damages that are recoverable by Landlord under Louisiana law. Should Landlord elect to exercise its rights under (b) above, and recover possession of the Leased Premises it shall reduce the amount owed by Tenant in future Rent, as hereinbefore stated, by the amount of any Rent it receives from subsequent tenants. Landlord will make a good faith effort to diligently pursue replacement tenants, for the Leased Premises during the period that would have been the remainder of the Term of the Lease with the defaulting Tenant. The foregoing provisions are without prejudice to Landlord's lien and privilege on Tenant's movable property or any other remedy which might otherwise be used under the laws of Louisiana for collection of arrearages of rent or breaches of contract. In the event Landlord elects to regain possession of the Leased Property by eviction in accordance with Louisiana law, Tenant hereby waives the 5-day notice of eviction proscribed by LA CCP Art. 4701.

### C. Landlord Default.

(1) Should Landlord default under any provision of this Lease Tenant shall give Landlord written notice of such default in the manner provided in Article III, Section E of this Extension Agreement. Landlord shall have the opportunity to cure said default within thirty (30) calendar days from the date the written notice is received or deemed received, pursuant to the provisions of Article III, Section D hereof. If Landlord has made a good faith effort to cure the noticed default within the thirty (30) day cure period, but despite the good faith effort of Landlord the default has not been cured, then Tenant, in its sole discretion, may grant such additional reasonable time as is necessary for Tenant to cure such default.

(2) In the event Landlord does not cure its default as provided in Article III, Section C (1) above, Tenant shall have the right to cure said default at its own expense and to recover from Landlord the actual costs incurred by Tenant in curing the default or sue for specific performance. Landlord shall not be responsible for consequential or punitive damages occasioned by failure on its part to cure a default hereunder or to cure such default timely. Under no circumstances shall Tenant's cost to cure be offset against any Rent that may be due Landlord; nor shall the curing of Landlord's default by Tenant be just cause to terminate this Lease. During the Term, termination of this Lease by Tenant for cause or Landlord breach may only be accomplished through the grant of a final judgment of a court of law as provided below.

Landlord

Tenant

(3) In the event it becomes necessary for Landlord or Tenant to employ an attorney to enforce compliance with any of the covenants and agreements herein contained, the party to whom substantial relief is granted shall be entitled to recover from the party against whom relief has been granted reasonable attorney's fees, costs and expenses incurred by the Tenant.

D. Contact Information.

(1) All notices required to be given under the terms of this Lease Shall be in writing and delivered by hand or certified mail, return receipt requested:

If to Landlord, at:

Hermes Health Alliance, L.L.C.
328 E. Boston Street
Covington, Louisiana 70433
Attention: Michael N. Pittman, M.D., Manager
Tel. No.: (985) 898-3838
Fax No.: (985) 898-3827
E-mail Address: Mike@pittmanassets.com

With a copy for information purposes to:

Richard L. Muller
Muller Law Group, L.L.C.
19349 N. 12th Street
Covington, LA 70433
Tel. No.: (985) 888-1500
Fax No. (985) 888-1450
E-mail Address: richardsr@mullerlawgroup.net

If to Tenant, at:

St. Luke #2, L.L.C.
Lawrence Stansberry, III
4201 Woodland Drive
New Orleans, LA  70131
Tel. No.:
Fax No.:
E-mail Address: larrystansberry@stmargaretsno.org

With a copy for information purposes to:

Mr. William P. Connick
Connick and Connick, LLC
3421 N. Causeway Blvd
Suite 408
Metairie, LA 70002
Tel. No.: (504)838-8777
Fax No. (504)838-9903
E-mail Address: pconnick@connicklaw.com


Landlord

Tenant

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

received suit 022176 03 Sut

a. on the date of delivery, if delivered by hand; or

b. if sent by certified mail, return receipt requested, on the date of addressee's receipt, as reflected on the green "return receipt card"; or

c. if sent by certified mail, return receipt requested, on the date of mailing, whether said date is established by postmark or affidavit of the sender, if a "return receipt green card" signed by the addressee is not returned to sender within two weeks of the date of mailing to the address given above.

A copy of a notice given to an attorney listed above may be delivered by ordinary mail. Whether delivered by ordinary mail, certified mail, or hand delivered, notice to an attorney listed above shall not constitute notice to a party.

<div align="center">

Article IV

AGREEMENT TO SUPPLEMENT LEASE

</div>

For the consideration set forth in the Settlement Agreement, executed on August __, 2016, by and among Landlord, Tenant, the members of Landlord, the members of Tenant, and other parties, the Landlord and Tenant agree to supplement the Lease by adding the following additional provisions.

A. Landlord's Obligation to Make Capital Improvements

Within two and one-half years from the commencement date of this Lease, Landlord shall invest the sum of up to Two Million Five-Hundred Thousand and 00/100 ($2,500,000.00) Dollars, or so much thereof as may be borrowed in connection with the refinancing of the New Market Tax Credit Loans and other debt of Landlord existing as of this date, for capital improvements in and to the Building and/or on the Real Estate, as listed and described in Exhibit C attached hereto, including, replacing the roof of the Building, replacing elevators, replacing the flooring in certain common areas, installing additional landscaping on the Real Estate, replacing/refurbishing the HVAC of the Building, painting the Building and performing such other improvements to the Building deemed necessary and appropriate by Landlord in its sole judgment. If after the capital improvements have been funded and have been paid in full, there are sufficient funds available from the aforementioned loan(s), Landlord shall provide a Building generator on site sized appropriately to handle air conditioning/heating loads for climate control in all leased space in the Building. If there are not sufficient funds available from said loan to purchase a generator sized as aforesaid, in the event of an extended power outage, Landlord will lease an appropriately sized generator, if one is available, the cost of which shall be a Shared Expense, which will be billed to all tenants of the Building as a special assessment that is not subject to the $2.50 annual CAM Charge cap rate. It will not be an event of Landlord default if Landlord is unable to obtain refinancing of the Hermes Loans (as defined in the Settlement, Release, and Indemnity Agreement executed by the parties and other parties contemporaneously herewith) and financing for the Capital Improvements predicated on the Building and Real Estate as security, Provided that Landlord has completed the Capital Improvements identified in this Article and in Exhibit C hereto, Tenant agrees to execute an estoppel certificate acknowledging satisfaction of Landlord's obligation under this Section 4 a.

B. Affirmative Obligation of Tenant

Landlord _____   Tenant _____   _____

2021) (the "Extended Term"), Tenant will not terminate the Lease and relocate St. Luke's Nursing Home and its 104 beds authorized for use at the Leased Premises described on the sketch attached to the Agreement to Extend Lease or otherwise vacate the Leased Premises unless (1) there is a final judgment of a Louisiana State court that the Leased Premises is not suited by reason of its physical condition for use as a nursing home which is principally funded by Medicaid and Medicare for Medicare and Medicaid eligible residents" or (2) within 6 months from the date the Option Term is to expire (November 9, 2021), Tenant may voluntarily vacate the Leased Premises, provided that Tenant continues to abide by its obligations under the Lease by paying timely the Base Rent and Additional Rent (CAM Charges, NNN Expenses, and other Shared Expenses) as provided in this Agreement to Extend Lease. Should Tenant exercise its right to vacate the Leased Premises within the time period provided above and continues to pay timely Base Rent and Additional Rent (CAM Charges, NNN Expenses, and other Shared Expenses), Landlord may nevertheless lease the Leased Premises or part thereof to third parties and collect rentals from the third party during the time from the inception of the third party lease to the end of the Option Term without Tenant being entitled to any set-off or credit for the rental collected from the third party. Should Tenant default in paying Base rent and Additional Rent (CAM Charges, NNN Expenses, and other Shared Expenses) during the period it voluntarily vacated the Leased Premises, the Base Rent for the remainder of the term shall be 150% of the Base Rent and Additional Rent (CAM Charges, NNN Expenses, and other Shared Expenses) provided for in the Lease.

C. Surety.

During the Term of this Lease identified in Section 1 hereof, Lawrence Stansberry III hereby binds himself as "Surety", jointly, severally, and *in solido* with Tenant and all other persons signing this Lease as Surety, to do and perform all acts, covenants and agreements required by the terms of this Lease to be done and performed by Tenant to the same extent as if this Lease had been executed for and in the name of Surety. The suretyship created hereby is and shall be construed as a commercial suretyship, governed by Louisiana law applicable thereto.

D. Keeper.

In connection with the Landlord's privilege granted Landlord by Louisiana law, and to the extent the hereinafter described right to be appointed a keeper which is hereby granted Landlord by Tenant does not conflict with the right to be appointed keeper of an existing Lender who acquired a security interest perfected by a lender prior to the Landlord's Privilege attaching to Tenant's movable property, furniture, fixtures and equipment or to the right of a subsequent lender who acquires a security interest perfected on Tenant's movable property, furniture, fixtures and equipment after Landlord has acquired it's Landlord's Privilege, to be appointed a keeper, Tenant hereby consents to the following:

1. Landlord is appointed the keeper of Tenant's Movables subject to the Landlord's Privilege as set forth in LSA-R.S. 9:5136 *et seq.*, without the need of posting any bond or any type of security;

2. Landlord is appointed the keeper of Tenant's Movables in the event Tenant's Movables are seized under a writ of sequestration, pursuant to LSA-C.C. Article 2707 through 2710, without the need of posting any bond or any type of security;

3. The Landlord shall have the right to seize, sequester, and/or inventory the Tenant's Movables in accordance with law, and store Tenant's Movables in a facility of its choosing; and


Landlord

Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM   Case Number: 202114812   St. Tammany Parish, LA   Deputy Clerk: Gretchen Moss

4. In accordance with this Section, the Landlord shall be the keeper of all Tenant's Movables wherever situated, regardless of whether Tenant's Movables have been removed from the Leased Premises.

Article V.
MISCELLANEOUS

A. Multiple Originals. This agreement may be executed in multiple originals.

B. Amendment of Lease. This Lease shall not be amended or modified except in a written agreement signed by all parties hereto.

IN FAITH WHEREOF, witness the official signatures of the Landlord at Covington, Louisiana, on this the 7th day of September, 2016.

WITNESSES:

LANDLORD:

Hermes Health Alliance, LLC

By: Michael N. Pittman, M.D.
Managing Member

IN FAITH WHEREOF, witness the official signatures of the Tenant at _____, Louisiana, on this the ____ day of _____ 2016.

WITNESSES:

TENANT:

St. Luke #2, LLC

By: Lawrence Stansberry, III,
Manager

IN FAITH WHEREOF, witness the official signatures of the Surety at _____, Louisiana, on this the ____ day of _____ 2016.

WITNESSES:

SURETY:

Lawrence Stansberry, III, Individually

Landlord

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

Sketch of Leased Premises



Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

**WORK ORDER**     No. 45122

## Chiller Specialties

COMMERCIAL, INDUSTRIAL, & RESIDENTIAL
AIR CONDITIONING,
HEATING, & REFRIGERATION SERVICES

P.O. BOX 11168
JEFFERSON, LA 70181-1168
PHONE: (504) 837-4837
FAX: (504) 733-0292

| Job # | Technician #1 | Technician #2 |
|---|---|---|
| | | |

MANUFACTURER:
MODEL NO:
SERIAL NO:

☑ TIME & MATERIAL          ☐ QUOTED JOB
☐ SERVICE CONTRACT        ☐ WARRANTY CLAIM

| P.O. # | Quantity | Material / Parts | Unit Price |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

### JOB LOCATION

NAME
ADDRESS
CITY          STATE     ZIP
PHONE NO.

### BILLING INFORMATION

NAME
ADDRESS
CITY          STATE     ZIP
PHONE NO.
P.O./JOB/AUTHORIZATION

### WORK PERFORMED

DATE

### LABOR TIME AND EXPENSE RECORD

| DATE OF LABOR | REGULAR ON-SITE | OVERTIME ON SITE | TRAVEL DIST | OUT OF POCKET EXPENSES | TECH ID | WORK COMPLETE |
|---|---|---|---|---|---|---|
| | | | | | | ☐ YES ☐ NO |
| | | | | | | ☐ YES ☐ NO |
| | | | | | | ☐ YES ☐ NO |
| | | | | | | ☐ YES ☐ NO |
| | | | | | | ☐ YES ☐ NO |
| | | | | | | ☐ YES ☐ NO |
| | | | | | | ☐ YES ☐ NO |
| | | | TOTAL HOURS | | | |

### FOR OFFICE USE ONLY

LABOR

_____ HRS @ $_____ /HR     $_____

_____ HRS @ $_____ /HR     $_____

TRUCK FEE                      $_____

MATERIALS/PARTS                $_____

TOTAL DUE                      $_____

I HEREBY ACKNOWLEDGE SATISFACTORY COMPLETION OF WORK DESCRIBED AND AGREE TO THE CONDITIONS OF SALE AS STATED ON REVERSE SIDE.
☐ CASH ☐ CHECK ☐ CREDIT CARD (3% PROCESSING FEE)

X _____
DATE          CUSTOMER SIGNATURE

White * Office        Yellow * Technician        Pink * Customer

Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss



CHILLER SPECIALTIES

4712 Jefferson Hwy.
Jefferson, LA 70121
(504) 837-4837 - Phone
(504) 733-0292 - Fax

# Invoice

| Date | Invoice # |
|---|---|
| 9/20/2021 | 69190 |

| Bill To |
|---|
| Hermes Health Alliance<br>3063 E Causeway Approach<br>Mandeville, LA 70448 |

| Location |
|---|
| Hermes Health Alliance<br>4201 Woodland Drive<br>New Orleans, LA 70131 |

| S.O. No. | P.O. No. | Terms | Rep | Project |
|---|---|---|---|---|
|  |  | Upon Receipt | JB | 69190- Hurricane ... |

| Item | Qty | Description | Rate | Amount |
|---|---|---|---|---|
|  |  | Manufacturer: Air Handler Units<br>Model: AHU-7 / AHU-6A<br>Serial: N/A<br><br>Hurricane AHU-7 & AHU-6A Repairs<br><br>8/31/21<br>Air handler units AHU-7 and AHU-6A are not restating after hurricane Ida passed through the metropolitan area Sunday-8/29/21.<br>Check the motor start panels for both. Found a blown fuse on center phase and both units had faulted motors. Picked up new motors and replace.<br>AHU-6A Amps=4.3, 4.2, 4.3 (RLA=6.6). AHU-7A Amps=7.4, 7.5, 7.6. (RLA=12.7). |  |  |
| LabMat |  | Labor and Material charges | 4,663.00 | 4,663.00 |

| | |
|---|---|
| Total | $4,663.00 |
| Payments/Credits | $0.00 |
| Balance Due | $4,663.00 |

Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM Case Number: 202114812   St. Tammany Parish, LA   Deputy Clerk: Gretchen Moss

Hermes Health Alliance, L.L.C. (hereinafter called "Lessor") and St. Luke #2, LLC (hereinafter called "Lessee") hereby enter into this lease agreement (the "Lease") on the terms, conditions, and provisions set forth hereinbelow.

## 1. PREMISES

Lessor hereby leases to Lessee, the following described premises:

That certain space of the building (the "Building") located at 4201 Woodland Drive, New Orleans, Louisiana, which Building is situated on the real estate described on Exhibit A hereto (the "Real Estate"), which is made a part hereof, which consists of 51,372 square feet of space;

(the aforedescribed premises hereby leased to Lessee being hereinafter referred to as the "property" or the "premises").

## 2. TERM

A.     This Lease is for a term of seven (7) years (the "Primary Term") commencing on the date on which the appropriate governing authority issues a certificate of occupancy (the date of commencement of the Primary Term being hereinafter referred to as the "Commencement Date") and ending on the date that immediately precedes the date on which the seventh anniversary of the Commencement Date occurs.

B.     The Primary Term may be extended three (3) times, for a period of five (5) years immediately following the last day of the Primary Term, at Lessee's sole option, provided Lessee is not in default under the terms and provisions of this Lease either at the time of exercising said option (the "Option") or as of the last day of the Primary Term.  The three (3) proposed additional five (5) year term(s) so extended at Lessee's Option is hereinafter each referred to as the "Option Term." Lessee's exercise of the Option shall be made by giving Lessor notice, in writing, of Lessee's intent to exercise the Option.  Said written notice of Lessee's intent to exercise the Option shall be given not less than ninety (90) days nor more than one hundred and fifty (150) days before the end of the Primary Term.

C.     The Primary Term as extended by the Option Term is hereinafter referred to as the "Term."  If there is no Option Term, any reference herein to "Term" shall mean the Primary Term.

## 3. RENT

A.     This Lease is made for and in consideration of the payment of an annual rent for each Lease Year during the Term, as set forth below in this Section 3.  The phrase "Lease Year" as used herein means the one year period (1) beginning on the Commencement Date or any anniversary of the Commencement Date (said date of beginning being hereinafter referred to as the "Date of Beginning"), and (2) ending on the day that immediately precedes the one year anniversary of the Date of Beginning.

B.     The annual rent owed for each Lease Year during the Primary Term shall be Fifteen and Seventy One-hundreths ($15.70) Dollars per square foot, or $805,833.90.  The rent owed in any Option Term after said Primary Term shall be equal to the rent for the Lease Year then ending increased by an amount equal to the increase in the Consumer Price Index ("CPI").  The CPI shall mean the "Consumer Price Index - for All Urban Consumers, South Urban, All Items (1982-84 = 100)" as published by the United States Department of Labor Statistics, or if such index shall be discontinued, the successor index, or if there shall be no successor index,

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird



shall be multiplied by a percentage figure, computed from a fraction, the numerator of which shall be the CPI for the third quarter of the preceding year and the denominator of which shall be the CPI for the corresponding quarter of one year earlier. Such fraction shall be converted to a percentage equivalent. The resulting percentage fixture shall be multiplied by the previous year's rent. Notwithstanding anything to the contrary in this Section 3 of the Lease, if Lessee's annual rent, whether in the Primary Term or any Option Term, is not equal to or greater than Lessee's Minimum Annual Rent, Lessee agrees that its annual rent for such Lease Year shall be Lessee's Minimum Annual Rent. Lessee's Minimum Annual Rent shall bean amount equal to fifty-two (52%) percent of Total Lessor Rent. Total Lessor Rent shall be the total amount of rent owed to Lessor under all lease or occupancy agreement(s) Lessor may have with lessees/occupants (including this Lease) for leased and/or occupied space within the Building in a given Lease Year. Lessee agrees to make any adjustments as required during any Lease Year to maintain an annual rent equal to Lessee's Minimum Annual Rent. Upon written request by Lessee, Lessor shall furnish to Lessee such information Lessor used to determine Total Lessor Rent in order to permit Lessee to verify the amount Lessee owes under Lessee's Minimum Annual Rent.

C.    The annual rent for each Lease Year during the Term shall be due and payable, in advance, in twelve equal monthly installments. Each of said monthly installments shall be calculated by dividing the annual rent for the Lease Year during which said monthly installments are due, by the numeral 12. For example, each of the twelve monthly installments that are due and payable during the first Lease Year shall be equal to Sixty-seven Thousand One Hundred Fifty-two and Eighty-three One-hundreths Dollars ($67,152.83), which is calculated by dividing the first Lease Year's annual rent of Eight Hundred Five Thousand Eight Hundred Thirty-three and Ninety One-hundreths Dollars ($805,833.90) by the numeral 12.

D.    The monthly installment of rent due and payable for and during any month during the Term shall be payable on the day of that month that is the same day of the month as the Commencement Date. For example, if the Commencement Date is May 1, 2009, the first monthly installment of rent shall be due and payable on May 1, 2009, and all subsequent monthly installments of rent shall be due and payable on the first day of each succeeding month during the Term. The date on which any monthly installment of rent owed hereunder is due and payable is hereinafter referred to as the "Due Date."

E.    All rent due and payable hereunder shall be payable by certified check or by check drawn on the account of Lessee drawn on any federally insured financial institution.

F.    All payments of rent hereunder shall be tendered to Lessor at 4201 Woodland Dr., New Orleans, Louisiana 70131 or at such other location as Lessor may from time to time designate by written notice to Lessee.

G.    Lessee has other obligations to pay money to Lessor, separate from and in addition to the obligation to pay rent under this section 3, set forth below in this Lease.

## 4. SECURITY DEPOSIT

Upon Lessee's execution of this Lease, Lessee is obligated to pay a security deposit (the "Deposit") in the amount of Sixty-five Thousand Seven Hundred Forty-five Dollars ($65,745) to be held as security for the performance by Lessee of Lessee's obligations under this Lease. The Deposit is not and shall not be considered as an advance payment of rent or a measure of Lessor's damage in case of a default by Lessee under this Lease. Lessor shall hold the Deposit without interest. Lessee hereby grants to Lessor a continuing security interest in the Deposit to secure the full performance by Lessee of all of Lessee's obligations hereunder. Lessor may,

Submitted Date: 5/10/2022 9:21 AM   File Date: 5/10/2022 4:06 PM   Case Number: 2021114812   St. Tammany Parish, LA   Deputy Clerk: April Laird



to make good any interest or loss or damage or expense incurred by Lessor by Lessee's default hereunder, any remaining balance of the Deposit to be returned to Lessee upon termination of the Lease.

## 5. USE OF PREMISES

A.     The premises herein leased are to be used only for the purpose of nursing home and related services. Lessee is obligated not to use the premises for any purpose or in any way that is unlawful or that tends to injure or depreciate the property.

B.     Lessee shall, at Lessee's cost and expense, obtain and maintain any and all licenses and permits required or necessary for use of the premises by Lessee. Lessee shall comply with all laws, ordinances, and governmental regulations applicable to use of the premises and promptly and fully comply with all governmental orders and directives for the corrections, preventions, and abatement of nuisances in, upon, or connected with the premises.

C.     Without Lessor's prior written consent, Lessee shall not receive, store, or otherwise handle any product, material, or merchandise which is explosive or highly flammable or considered to be a Hazardous Material (as the phrase "Hazardous Material" is defined below). Lessor shall be entitled to take into account such facts and factors as Lessor may reasonably determine to be relevant in determining whether to grant or to withhold consent to Lessee's proposed activity with respect to Hazardous Material. In no event, however, shall Lessor be required to consent to the installation or use of any storage tanks on the premises or the Real Estate.

D.     As used in this Lease, the term "Hazardous Material" means any flammable items, explosives, radioactive materials, hazardous or toxic substances, material or waste or related materials, including any substances defined as or included in the definition of "hazardous substances," "hazardous waste," "hazardous materials" or "toxic substances" now or subsequently regulated under any applicable federal, state or local laws or regulations, including without limitation petroleum-based products, paints, solvents lead cyanide, DDT, printing inks, acids, pesticides, ammonia compounds and other chemical products, asbestos, PCBs and similar compounds, and including any different products and materials which are subsequently found to have adverse effects on the environment or the health and safety of persons.

## 6. CONDITION AND MAINTENANCE

A.     The within leased premises and appurtenances, including the locks, keys, plumbing, glass, elevator, air-conditioning and heating system, if any, and all other fixtures, are accepted by the Lessee in their present condition, except for such repairs and improvements as are written into this Lease. The Lessee agrees to keep said premises and appurtenances in the same order as received during the Term of this Lease, and no repairs shall be due Lessee except such as may be especially noted herein or needed to the roof or rendered necessary by fire or other casualty; to comply at the Lessee's expense with all ordinances and laws, now existing or to be enacted, and at the termination or cancellation of this Lease to return the premises broom-clean and free from trash, and in like good order as received by actual delivery of the keys to Lessor, the usual decay, wear and tear excepted.

B.     If there are any equipment, inventory, machinery, glass or plate glass on premises, Lessee assumes sole responsibility and obligation for the care, maintenance and repair of same, together with all related liability or claims for damages, and Lessee shall maintain liability insurance (as set forth below) and plate glass insurance as an additional safeguard.

C.     Lessee assumes sole responsibility and obligation for the care, maintenance, repairs and franchise charges, if any, of or related to any switchboards serving the property.

Submitted Date: 5/10/2022 9:21 AM   File Date: 5/10/2022 4:06 PM   Case Number: 202114812   St. Tammany Parish, LA   Deputy Clerk: April Laird



foundations, and outside walls (but excluding doors and floors) of the Building and/or all major repairs of the plumbing and heating and air conditioning system, including without limitation when injured by freeze. Lessee assumes sole responsibility and obligation for the maintenance of the premises and for all minor repairs of the plumbing and heating and air conditioning (including fixtures, outlets and drains) and for all other repairs not expressly made the responsibility of Lessor herein.

E.    Lessee agrees not to store items or leave trash outside the premises. All trash shall be kept in containers.

## 7. INSURANCE

A.    Lessor will procure, pay for, and maintain fire and other hazard insurance, including flood insurance if the property is in a flood zone, on the Building and general liability insurance (against claims for personal injury, claims for death, and claims for property damage) on the Real Estate exclusive of the space within the premises, in such coverage amounts and on such other terms as are determined by Lessor, in its sole discretion, to be reasonably necessary and appropriate.

B.    Lessee will procure, pay for, and maintain general liability insurance (against claims for personal injury, claims for death, and claims for property damage) covering all activities and occurrences in the premises and the property items described in section 5.B above, and personal property insurance on all equipment, furniture and other items of personal property used or situated within the premises, in such coverage amounts and on such other terms as are reasonably determined by Lessee following receipt of Lessor's written approval, which shall not be unreasonably withheld. Said policy of general liability insurance shall name Lessor as an additional insured and provide for waivers of subrogation naming in favor of Lessor as additional insured. A certificate confirming this general liability insurance coverage and these requirements shall be delivered to Lessor prior to Lessee's occupancy of the premises. Lessee's obligation to pay the premiums for the insurance required under this section 7.B is separate from, and in addition to, Lessee's obligation to pay rent hereunder.

C.    Lessee is obligated to put nothing in the premises nor to do anything which would forfeit the insurance, and should any installation made or action taken by Lessee, whether authorized or unauthorized under this Lease, increase the rate of insurance on the Building or contents as fixed by the Louisiana Fire Prevention Bureau, or any similar institution, then Lessee is obligated to pay such increased rate of insurance on the Building and all contents. Should the Lessee's occupancy or business render the Lessor unable to secure hazard or general liability insurance on the Building or the Real Estate, then Lessee hereby grants to Lessor the option of cancelling this Lease, Lessee waiving all delays, and agreeing to surrender possession at once, if notified by Lessor to do so. Lessee is obligated to notify Lessor, in writing, any time the premises will be unoccupied, so that necessary vacancy permits may be obtained from Lessor's insurer, and failure to comply with this condition will make Lessee liable for any loss or damage sustained by Lessor.

D.    All policies of insurance required hereunder shall be written and maintained by responsible insurance companies duly authorized and licensed to do business in and to issue policies in Louisiana.

## 8. UTILITIES

Lessee shall be solely responsible and obligated for paying its proportional share of utilities (including without limitation phone, water, gas, electricity, garbage pick-up, removal and disposal of medical waste, and cable television) required for operation of the premises as

Submitted Date: 5/10/2022 9:21 AM   File Date: 5/10/2022 4:06 PM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird

utilities shall be calculated by dividing the number of square feet in the premises by the total number of square feet in the Building exclusive of the areas containing Indoor Common Area Improvements (as the term "Indoor Common Area Improvements" is defined in section 12 below) and multiplying the quotient so calculated by the total amount of the utilities. Lessee's obligation to pay for all utilities is separate from, and in addition to, Lessee's obligation to pay rent hereunder. Lessor shall not be liable for any interruption whatsoever in or any inability to provide utility services, and no such interruption or inability shall entitle Lessee to damages from the Lessor or an abatement or reduction of rent.

## 9. TAXES

A.      Lessor shall pay all ad valorem and property taxes assessed on the Building and the Real Estate (collectively, the "Property Taxes"). However, immediately upon Lessor's payment of the Property Taxes, Lessor shall give Lessee written notice of Lessee's pro rata share of the Property Taxes, and within 15 days after receipt of said written notice Lessee shall pay and reimburse Lessor for Lessee's pro rata share of the Property Taxes. Lessee's pro-rata share of the Property Taxes shall be calculated by dividing the number of square feet in the premises by the total number of square feet in the Building exclusive of the areas containing Indoor Common Area Improvements (as the term "Indoor Common Area Improvements" is defined in section 12 below) and multiplying the quotient so calculated by the total amount of the Property Taxes. Lessee's obligation to reimburse Lessor for Lessee's pro rata share of the Property Taxes is separate from, and in addition to, Lessee's obligation to pay rent hereunder.

B.      Lessee shall be responsible for paying all income, sales, and other taxes associated with Lessee's use or occupancy of the premises, including without limitation property taxes, if any, assessed on items of personal property within the premises.

## 10. DELAYED POSSESSION

Should Lessee be unable to obtain possession on the Commencement Date because construction of the Building has not been completed to a condition permitting occupancy by the Commencement Date (except as provided herein with respect to construction of the Leasehold Improvements), or should there be any other delay in granting possession by the Commencement Date not caused by the personal fault or design of Lessor, this Lease shall not be affected thereby, and Lessee shall not be entitled to any damages beyond the remission of rent for such term during which Lessee is deprived of possession.

## 11. ALTERATIONS

A.      Lessee shall not make or cause to be made any additions or alterations whatever to the premises without Lessor's prior written permission. All additions, alterations or improvements made by Lessee with or without consent of Lessor, no matter how attached (except movable trade fixtures), must remain the property of Lessor, unless otherwise stipulated herein or otherwise agreed to in writing by Lessor, Lessee, however, expressly waiving all right to compensation therefor. The Lessor, at his option, may require the premises to be replaced in or restored to the original condition of the premises.

B.      Lessor and its agent and workmen shall have the right to enter the premises at any time for the purpose of making repairs necessary for the preservation of the Building and the Real Estate.

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM  Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird



A.   Lessor and Lessee acknowledge that, on the Real Estate surrounding the Building, Lessor has made or constructed certain improvements (said improvements being hereinafter referred to as the "Outdoor Common Area Improvements"), including without limitation areas for vehicle parking (the "Parking Area"), access road, driveways, sidewalks, and landscaped and planting areas. Lessor hereby grants, to Lessee and persons deriving their rights to be on the premises from or in relation to Lessee, a non-exclusive right of access to the premises over and across the Real Estate and a non-exclusive right to use the Parking Area and such other components of the Outdoor Common Area Improvements as may be reasonably required for access to and use of the premises, during the Term of this Lease.

B.   Lessor and Lessee acknowledge that within the Building there are areas (such as the main lobby) and improvements (such as the lobby elevators) that will be used or available for use by all tenants in the Building. Said areas and improvements within the Building are hereinafter referred to as the "Indoor Common Area Improvements." Lessor hereby grants, to Lessee and persons deriving their rights to be on the premises from or in relation to Lessee, non-exclusive rights of access to and use of the Indoor Common Area Improvements, during the Term of this Lease.

C.   Lessee understand that Lessor has granted, or will grant, to other tenants of the Building, similar non-exclusive rights of access over and across the Real Estate and non-exclusive rights of use of the Indoor Common Area Improvements and Outdoor Common Area Improvements. The Indoor Common Area Improvements and the Outdoor Common Area Improvements are hereinafter collectively referred to as the "Common Area Improvements." Lessor reserves the right, should Lessor in its sole discretion deem necessary or appropriate, to establish, to modify, and to enforce reasonable rules and regulations with respect to the use of the Real Estate and the Common Area Improvements. Pursuant to such rules and regulations, Lessor may, for example, restrict the use, by Lessee and persons deriving their rights to be on the premises from or in relation to Lessee, of the Parking Area to a designated portion of the Parking Area based on the proportion that the square footage in the premises bears to the total square footage in the Building exclusive of the areas containing the Common Area Improvements.

D.   Lessor shall be responsible for the maintenance and repair of the Common Area Improvements and, as set forth in section 7.A above, for obtaining and maintaining general liability insurance on the Common Area Improvements that is determined by Lessor to be reasonably necessary or appropriate.

E.   Lessee shall pay Lessor, on each Due Date during Term, the amount of $2 per square foot per month (the "CAM Charge") in consideration of Lessor's agreement to maintain, to repair, and to insure the Real Estate and the Common Area Improvements as required in this Section 12. The amount of the CAM Charge will be adjusted annually, when and by the factor and method by which the amount of the rent is adjusted in accordance with section 3 of this Lease. Lessee's obligation to pay CAM Charges herein is separate from, and in addition to, Lessee's obligation to pay rent under section 3 of this Lease.

## 13. RESPONSIBILITY FOR DAMAGES

A.   Lessee assumes full and exclusive responsibility for the condition of the premises. Lessor will not be responsible for damage caused by leaks in the roof, by bursting of pipes by freezing or otherwise, or by any vices or defects of the property; or the consequences thereof, except in the case of Lessor's positive neglect or failure to take action toward the remedying of such defects within reasonable time after having received written notice from Lessee of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor, in

Submitted Date: 5/10/2022 9:21 AM   File Date: 5/10/2022 4:06 PM   Case Number: 2021114812   St. Tammany Parish, LA   Deputy Clerk: April Laird



B.    Lessee agrees:

1.    to indemnify and hold harmless Lessor from any and all losses, damages, and liability, whether in the nature of personal injury, property damage, environmental contamination, or otherwise; and

2.    at Lessee's expense to defend Lessor from all claims and actions of whatever kind or nature;

arising from or relating to the use of the premises, the Building, or the Real Estate by Lessee or any person who derives his right to be on the premises from or in relation to Lessee, or arising from or relating to any acts or failures to act occurring in or relating to the use or occupancy of the premises, regardless of Lessee's negligence or fault or intention, provided, however that this indemnity shall not cover any loss, damage or liability to the extent caused by Lessor's own negligence, fault or intentional act.

## 14. SIGNS OR DECORATIONS

A.    Lessee is obligated not to display in, on or above the premises any sign or decoration, the nature of which, in the judgment of Lessor, is dangerous, unsightly or detrimental to the Building or the Real Estate. Lessee is prohibited from painting any signs on the Building or the premises without the written consent of Lessor, and Lessee is obligated to promptly remove at or before the expiration of this Lease, any and all signs painted or placed in or upon any part of the leased premises, to Lessor's satisfaction, and Lessee is obligated to pay the cost of said removal, plus agent's or attorney's fees, in event of failure to carry out this obligation.

B.    Lessor also reserves the right to keep posted on the premises

1.    signs "For Sale" or "By Auction" at any time during the Term of this Lease; and

2.    cards "For Rent" during the 120 days preceding the expiration of this Lease unless and until the Option has been timely exercised;

and Lessee must allow parties authorized by Lessor to visit the premises in view of buying during the Term of this Lease, and in view of renting for 120 days prior to expiration of the Term unless and until the Option has been timely exercised, from 10 A.M. to 5 P.M. local time.

## 15. VACATING PREMISES

A.    In the event of the Lessee being absent from the premises, Lessee shall notify Lessor in writing where keys may be had in order that the premises may be shown to prospective tenants or purchasers. In case of the failure of the Lessee to comply with the foregoing conditions, or should Lessee not permit the posting of signs or allow prospective tenants or purchasers to inspect the property, as provided herein, Lessor has the option to consider this Lease renewed for one year under the same terms and conditions, or may hold Lessee responsible for damages, and Lessor has the further option to enter the premises by any means, without responsibility to Lessee for any loss or damage resulting therefrom.

B.    Should the premises be vacated or abandoned by Lessee because of ejectment for breach hereof, or otherwise, or should the Lessee begin to remove personal property or goods in the prejudice of the Lessor's lien and privilege, then the rent for the unexpired Term, with reasonable attorney's fees related and costs, shall at once become due and exigible, and Lessor,

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM  Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: April Laird



## 16. SURRENDER OF PREMISES

At the expiration of this Lease, or its termination for other causes, Lessee is obligated to immediately surrender possession, and should Lessee fail to do so, he consents to pay any and all damages, but in no case less than five times the rent per day, with attorney's fees and related court and other costs. Lessee also expressly waives any notice to vacate and notice of the expiration or termination of this Lease and all legal delays, and hereby confesses judgment with costs placing Lessor in possession to be executed at once. Should Lessor allow or permit Lessee to remain in the premises after the expiration or termination of this Lease, this fact shall not be construed as a reconduction of this Lease.

## 17. SUB-LEASE

A.    Lessee is not permitted to rent or sub-let or grant use or possession of the premises to any other party without the written consent of the Lessor, and then only in accordance with the terms of this Lease. Should Lessee desire to sub-let, permission must be obtained in writing through Lessor.

B    No auction sales, or any sales of furniture, fixtures, or other personal property shall be conducted on the premises without the written consent of the Lessor.

## 18. DEFAULT

A.    Should the Lessee at any time violate any of the conditions of this Lease, or discontinue the use of the premises for the purpose for which they are rented, or fail to pay or discharge the rent or other expenses or obligations assumed by Lessee under this Lease, punctually when due or at maturity; or upon the adjudication of Lessee in bankruptcy, the appointment of a receiver for Lessee, or the filing of a bankruptcy, receivership or respite petition by the Lessee; or upon Lessee's suspension, failure or insolvency; and should such violation continue for a period of

1.    ten days in the case of non-payment of rent or other monetary default, or

2.    thirty days in the case of a non-monetary default,

after written notice has been given by Lessor to Lessee, then, at the option of the Lessor, the rent for the whole unexpired Term of this Lease shall at once become due and exigible; and Lessor shall have the further option at once to demand the entire rent for the whole Term, or immediately to cancel this Lease, or to proceed for past due installments only, reserving Lessor's right later to proceed for the remaining installments, all without putting Lessee in default. Lessee to remain responsible for all damages or losses suffered by Lessor, Lessee hereby assenting thereto and expressly waiving the legal notices to vacate the premises. Should an agent or attorney be employed by Lessor to give special attention to the enforcement or protection of any claim of Lessor arising from this Lease, Lessee shall pay, as fees and compensation to such agent or attorney, an additional sum of fifteen per cent of the amount of such claim, which sum is hereby agreed to be reasonable, or if the claim be not for money, then such sum as will constitute a reasonable fee, together with all related costs, charges and expenses regardless of the nature of such claim.

B.    Should Lessee at any time use the premises or any portion thereof for any illegal or unlawful purpose, or commit, or permit or tolerate the commission therein of any act made punishable by fine or imprisonment under the laws of the United States or the State of Louisiana,

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM Case Number: 2021148312  St Tammany Parish, LA  Deputy Clerk: April Laird



C.    Failure strictly and promptly to enforce Lessor's rights and the conditions set forth herein shall not operate as a waiver of Lessor's rights, Lessor expressly reserving the rights always to enforce prompt payment of rent, or to cancel this Lease, regardless of any indulgences or extensions previously granted. The receiving by Lessor or Lessor's representative of any rent in arrears, or after notice or institution of any suit for possession, or for cancellation of this Lease, will not be considered as a waiver of such notice of suit, or of any of the rights of Lessor.

## 19. FIRE CLAUSE

If through no fault, neglect, or design of Lessee, the premises are destroyed by fire or other casualty or damaged to such an extent as to render them wholly unfit for occupancy, then this Lease shall be cancelled. If, however, the premises can be repaired within 120 days from date of fire or casualty, then this Lease shall not be cancelled, and Lessor shall notify Lessee within 30 days from the date of fire or casualty that Lessor will repair the damage, and Lessee shall be entitled only to such a reduction or remission of rent as shall be just and proportionate.

## 20. MISCELLANEOUS

A.    All notices required to be given under the terms of this Lease shall be in writing and sent by hand delivery or certified mail, return receipt requested:

if to Lessor, at

Hermes Health Alliance, L.L.C.
4201 Woodland Drive
New Orleans, Louisiana 70131

if to Lessee, at
St. Luke #2, L.L.C.
926 Amelia Street
Gretna, Louisiana 70053

Each said notice shall be deemed given, regardless of whether the addressee received such notice or not,

1.    on the date of delivery, if delivered by hand delivery; or

2.    if sent by certified mail, return receipt requested, on the date of addressee's receipt, as reflected on the green "return receipt card";

3.    if sent by certified mail, return receipt requested, on the date of mailing, whether said date is established by postmark or affidavit of the sender, if a "return receipt green card" signed by the addressee is not returned to sender within two weeks of the date of mailing.

B.    The parties to this Lease understand and agree that the provisions herein shall, between them, have the effect of law, but in reference to matters not provided herein, this Lease shall be governed by the laws of the State of Louisiana.

C.    This Lease shall not be amended or modified except in a written agreement signed by all parties hereto.

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM  Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird



Hermes Health Alliance, L.L.C., Lessor

By: _____
Michael N. Pittman

Its:    Manager

St. Luke #2, L.L.C., Lessee

By: _____
Lawrence E. Stansberry, III

Its:    Manager

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird

THIS FIRST AMENDMENT TO LEASE (the "Amendment") is made effective this _____ day of _____, 20__ (the "Effective Date") by and between Hermes Health Alliance, L.L.C. (hereinafter called "Lessor") and St. Luke #2, L.L.C. (hereinafter called "Lessee") on the terms, conditions, and provisions set forth hereinbelow.

WHEREAS, Lessor and Lessee entered into a Lease for certain space of the building located at 4201 Woodland Drive, New Orleans, Louisiana, which building is situated on the real estate described in the Lease, which consists of 51,372 square feet of space (the "Leased Premises").

WHEREAS, Lessor and Lessee desire (i) to eliminate Lessee's obligation to pay a deposit and (ii) to amend the computation of CAM Charges related to the Leased Premises.

NOW, THEREFORE, in consideration of the forgoing recitals, which are incorporated by reference, Lessor and Lessee agree as follows:

1. The obligation of Lessee to pay a security deposit to Lessor under Section 4 of the Lease is hereby released and eliminated. Lessee is under no obligation in the future to pay to Lessor any form of a security deposit, unless otherwise agreed in writing between Lessor and Lessee.

2. The first sentence of Section 12 E. of the Lease is hereby amended and restated as follows:

   "Lessee shall pay Lessor, on each Due Date during Term, the amount of $2 per square foot per year (the "CAM Charge") in consideration of Lessor's agreement to maintain, to repair, and to insure the Real Estate and the Common Area Improvements as required in this Section 12."

3. Except as modified herein, the terms and conditions of the Lease shall remain in full force and effect.

4. This Amendment shall not be amended or modified except in a written agreement signed by all parties hereto.

This Amendment is made and signed, this _____ day of October, 2010.

Hermes Health Alliance, L.L.C., Lessor

By: _____
Michael N. Pittman
Its:    Manager

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: April Laird



## AGREEMENT TO EXTEND LEASE

HERMES HEALTH ALLIANCE, L.L.C. (hereinafter called "Landlord"), represented herein by its Managing Member, Michael N. Pittman, M.D. and St. Luke #2, L.L.C. (hereinafter called "Tenant"), represented herein by its duly authorized Manager, Lawrence Stansberry, III, pursuant to the unanimous consent of members attached hereto and made part hereof, hereby enter into this Agreement to Extend Lease (the "Extension Agreement") on the terms, conditions, and provisions set forth herein below.

WHEREAS, Landlord and Tenant executed a Lease for the following described Leased Premises which commenced on November 10, 2009 and will terminated according to its terms on November 9, 2016 (the "Lease"); and

WHEREAS, the Lease afforded Tenant the option to extend the Lease for three successive five (5) year terms on the conditions therein provided; and

WHEREAS, Tenant desires to exercise its option and extend the term of the Lease; and

WHEREAS, Tenant has notified Landlord timely of its desire to extend the Lease; and

WHEREAS, Landlord and Tenant have agreed to extend, amend, modify and supplement the Lease as set forth in this Extension Agreement;

NOW THEREFORE, in consideration of the mutual obligations set forth in the Lease and this Extension Agreement, Landlord and Tenant agree, as follows:

### Article I.
### AGREEMENT TO EXTEND LEASE

A. Extended Term. Landlord and Tenant hereby agree to extend the Term of the Lease, in accordance with the provisions of this Extension Agreement. As extended, the Option Term, as defined in the Lease, shall commence on November 10, 2016 and end on November 9, 2021, unless sooner terminated under the provisions of the Lease and this Extension Agreement.

B. Reconciliation of Provisions of Lease. The terms, conditions and other provisions of the Lease shall remain in full force and effect, except as they are specifically amended, modified and supplemented herein. Once amended, modified or supplemented by execution of this Extension Agreement, the amendment modification and/or supplement to the Lease shall control.

### Article II.
### DEFINITIONS

A. "Lease" shall mean the Lease identified in the recitals above as amended, modified and supplemented by this Extension Agreement.

B. "Leased Premises" shall mean the following described space:

> Approximately 51,372 square feet of space and the rights attendant thereto more specifically set forth hereinafter, including existing tenant improvements, if any, therein and thereon, consisting of a portion of the 1st floor, a portion of the 2nd floor, the entire 5th floor, and the entire 6th floor of the Building, as delineated in bright yellow highlight on the floor plans prepared by Perez Architects, attached hereto as Exhibit A, located in the


Landlord

Tenant


Surety



**EXHIBIT 2**

Submitted Date: 3/14/2022 1:37 PM· File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird





St. Luke's Medical Center building, 4201 Woodland Drive, New Orleans, Louisiana 70131 (the "Building"), which Building is situated on the immovable property described on Exhibit B hereto (the "Real Estate").

Notwithstanding the descriptions shown on the floor plan by Perez Architects, attached hereto as Exhibit A, the Chapel, Vestibule and Reception areas are Common Areas and therefore not included in the Leased Premises (these Common Areas are shown in red cross-hatching on Exhibit "A"). Furniture, fixtures and equipment that is or may be owned by Landlord located in or on the Leased Premises may be used and maintained by Tenant for its purposes, at its risk, but is not part of the Leased Premises for which Rent is charged. Therefore, Landlord has no responsibility to replace same if it becomes unusable. Tenant shall be allowed to insure Landlord's furniture, fixtures, and equipment located in or on the Leased Premises under its insurance policies if Tenant so chooses. If any such furniture or equipment of Landlord's located in or on the Leased Premises becomes unusable and is replaced by Tenant, such replacement item shall be deemed the property of Tenant.

C. "Property" shall mean the Leased Premises, the Building and the Real Estate.

D. "Rent" shall mean Base Rent, Additional Rent (CAM Charges, NNN Expenses and other charges as identified hereinafter) and Holdover Rent unless the context clearly indicates otherwise.

E. "Term" shall mean the Option Term having the commencement date and ending date set forth in Article I, Section A hereof.

<div align="center">

Article III.
AGREEMENT TO AMEND AND MODIFY LEASE

</div>

Landlord and Tenant agree to amend and modify the Lease in effect during the Primary Term in the following particulars:

A. Rent.

(1) Base Rent for the Term shall be Sixty-seven Thousand Two Hundred Twelve ($67,212) Dollars per month, with the first monthly payment of Base Rent due and payable on November 10, 2016 and each additional payment of Base Rent due and payable on the 10th day of each succeeding month thereafter during the Term (the "Due Date"). The Base Rent is calculated at the rate of $15.70 per square foot of Leased Space rounded to the nearest Dollar.

(2) In consideration for Landlord permitting Tenant to occupy and use the Reception Area identified and delineated on the 1st floor plan included as part of Exhibit A, Tenant agrees, at its expense, to staff the Reception Area with qualified personnel employed by Tenant, charged with the responsibility of greeting persons entering the Building through the main entrance, directing such persons to the person he/she is seeking, and performing other tasks and responsibilities currently being performed by Tenant. Tenant and its staff shall keep the Reception Area clean and in an orderly condition befitting a Building housing hospitals, nursing homes, and similar health related facilities. The number of square feet comprising the Reception Area is not and shall not be included in the calculation of the total number of square feet comprising the Leased Space leased by Tenant from Landlord hereunder; and, therefore will not be a factor when calculating Tenant's portion of Shared Expenses.



Landlord                                    Tenant                                    Surety




Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird

(3) After the Term has ended, in the event Tenant exercises the second of its three options, the Base Rent for the second Option Term shall equal the monthly Base Rent for the current Term increased by an amount proportional to the increase in the Consumer Price Index ("CPI") from the inception of this Term (or the immediately preceding five year period, if applicable) to the inception of the next Option Period, as the case may be. The CPI shall mean the "Consumer Price Index – for All Urban Consumers, South Region, All Items (1982-84 = 100)" as published by the United States Department of Labor Statistics, or if such index shall be discontinued, the successor index, or if there shall be no successor index, such comparable index as mutually agreed upon by the parties. To determine the increase in monthly Base Rent to be paid by Tenant after the current Term has expired and the second Option Period begins, the Base Rent for the current Term shall be multiplied by a percentage figure, computed from a fraction, the numerator of which shall be the CPI on the date (or at the closest time thereto the CPI is reported) that the new Option Term begins and the denominator of which shall be the CPI on the date the current Option Period commenced (or at the closest time thereto the CPI is reported). Such fraction (plus the current rate added as a factor equal to 100) shall be converted to a percentage equivalent designated the "CPI Percentage Increase. For instance, if the difference in the CPI over the 5 year period is 10% (2% per year), the CPI Percentage Increase shall equal 110%. According to this formula, the Base Rent for the new Option Term shall be calculated by multiplying the Base Rent for the first five years of the Term (or current Option Term) by the CPI Percentage Increase. For the example cited, the monthly Base Rent for the new term will be $73,933 ($67,212 x 110%). In no event shall the monthly Base Rent for any month be less than the Base Rent for the immediately preceding month.

(4) In addition to Base Rent, Tenant shall pay Landlord, as "Additional Rent", a sum equal to property (ad valorem) taxes and assessments, commercial general liability and casualty insurance, and utilities (herein referred to as "NNN Expenses") and Common Area maintenance expenses ("CAM Charges") (each a "Shared Expense" and collectively, "Shared Expenses") attributable to the Leased Premises ("Tenant Shared Expenses"). Attribution of Tenant Shared Expenses shall be calculated by multiplying the total cost of the Shared Expense by a factor, the numerator of which is 51,372 (the number of square feet in the Leased Premises), and the denominator of which is 93,368, the total number of leasable space in the St. Luke's Medical Center building (hereinafter "Tenant's Sharing Ratio"). The amount of ad valorem taxes and insurance premiums billed as Additional Rent shall be prorated for the first and last year of the Term. Ad valorem taxes and insurance premiums and will be billed prospectively as provided herein below.

(5) Certain Tenant Shared Expenses, such as insurance and property taxes will be billed, as hereinbefore and hereinafter provided. Other Shared expenses will be billed according to the following:

(a) CAM Charges will be billed monthly at the flat rate of $2.00 per square foot per year or $8,562 per month during the first Option Term. At the end of each calendar year, Landlord will total all CAM expenses incurred by Landlord during the previous calendar year and shall reconcile the total amount of CAM expenses billed Tenant according to its Sharing Ratio to the total amount of CAM Charges paid by Tenant during the previous calendar year. In the event that Tenant's proportionate share of CAM expenses actually incurred by Landlord is less than $2.00 per square foot per year, Tenant will receive a credit following the reconciliation on the next bill sent by Landlord, that is, a reduction from the flat $8,562 per month CAM Charge until the overage paid by Tenant is zeroed out. In the event that Tenant's proportionate share of CAM expenses actually incurred by Landlord is more than $2.00 per square foot per year, Tenant will be billed the additional amount on the first bill sent by Landlord following the reconciliation;



Landlord                Tenant                Surety

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird




however, in no event will Tenant be liable or responsible for paying on an annual, calendar year basis more than $2.50 per foot per year for its proportionate share of CAM Charges. CAM Charges are due by Tenant in the month that the bill for same is sent to it by Landlord and payable at the same time as the Base Rent for that month is due. The charges for a generator to provide air conditioning and heating in the event of an emergency power outage will be charged as a special assessment to all tenants of the Building and will not be subject to the $2.50 cap on CAM Charges, because the renting of a generator is a request of Tenant and for the purpose, among others, of Tenant avoiding the expense of moving residents from the Building to another facility.

(b) Certain NNN Expenses, including but not limited to utilities and any other expenses that are currently billed to Tenant as NNN Expenses under the terms of the existing Lease, are due and payable at the same time that monthly Base Rent is due and payable. NNN Expenses shall be apportioned to Tenant according to its Sharing Ratio based on bills or other supporting documentation that Landlord receives from third party providers. The bill for NNN Expenses shall be sent each month accompanied by a copy of the supporting information and a tally sheet showing apportionment among the tenants according to each tenant's sharing ratio.

(c) Certain other NNN Expenses, more particularly, property (ad valorem) taxes and assessments lawfully imposed on the Property (collectively, the "Property Taxes") and the premiums for General Liability and Casualty Insurance coverage on the Property ("Insurance") are due and payable at least seven (7) days prior to the date Landlord is required to pay the Property Taxes and/or special assessments to the tax collector (generally, before January 31st of each year) or Insurance. Landlord shall bill Tenant as NNN Expenses for its proportionate share of Property Taxes and Insurance in proportion to Tenant's Sharing Ratio. Promptly upon receiving the bill for Property Taxes or special assessments (generally, in December of each year) and for Insurance, Landlord shall give Tenant written notice of Tenant's pro rata share of the Property Taxes and/or Insurance. Should Tenant fail to pay its prorata portion of the Property Taxes and/or Insurance timely as herein provided, it will be in default of this Agreement and subject to all remedies available to Landlord hereunder. Landlord may in its sole discretion delay paying property taxes and insurance until Tenant and other tenants of the St. Luke's Medical Center building have paid their attributed share and any such decision by Landlord to delay payment of the Shared Expense(s) shall not be cause for Tenant to withhold payment of its Tenant Shared Expenses on the Due Date. In the event that Tenant (I) timely pays Landlord its pro-rata share of property taxes and insurance attributable to the Building, and (ii) Landlord delays payment of the property taxes or insurance attributable to the Building, Tenant shall not be responsible in any way for any penalty or loss that results therefrom.

(7) In addition to CAM Charges and NNN Expenses, the term Additional Rent shall mean and include all sums and accounts paid by Landlord on behalf of Tenant, which under the terms of this Lease are the responsibility of, and chargeable to Tenant, which have not been paid timely by Tenant. Before paying such Tenant expenses, Landlord shall give reasonable notice to Tenant and afford Tenant the opportunity to be heard. Expenses paid by Landlord on behalf of Tenant which are the sole responsibility of Tenant (expenses which are not Shared Expenses) shall be due and payable within ten (10) days after receipt of the bill from Landlord.


Landlord                                    Tenant                                    Surety




Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM Case Number: 202114812   St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

Submitted Date: 5/10/2022 4:06 PM Case Number: 202114812   St. Tammany Parish, LA  Deputy Clerk: April Laird

Submitted Date: 5/10/2022 9:21 AM   File Date: 5/10/2022

(8) Tenant, after giving Landlord reasonable notice, shall have the right to inspect at Landlord's business office, during normal business hours, the primary documentation for CAM Charges, NNN Expenses, and other charges to Tenant (i.e. property tax bills, insurance bills, invoices for services and repairs, and the like), and such other documentation as may be reasonably requested, upon which Additional Rent is predicated.

(9) Should Tenant fail or refuse to vacate the Leased Premises at the expiration of the Term or any written extension of the Term, or after the Lease has been terminated as elsewhere provided in the Lease, Landlord has the option to interpret such actions as creating a month-to-month lease. During such holdover period, Tenant shall pay Landlord monthly in advance Holdover Rent equal to 150% of the monthly Base Rent charged during the immediately preceding Lease Year, as well as Additional Rent accruing during the holdover period. Payment of Holdover Rent and Additional Rent by Tenant shall not serve to extend the term of the Lease, and receipt of Holdover Rent by Landlord shall not constitute a waiver of Landlord's right to invoke remedies available to it under the terms of this Lease, including eviction by judicial process. Holdover Rent shall be payable in the same manner as Base Rent.

(10) Tenant shall be allowed a grace period of ten (10) calendar days from the Due Date to present the Rent payment in good and currently available funds to Landlord without premium or penalty. However, if Tenant fails to pay Landlord the full amount due within the ten (10) day grace period, Tenant shall be in default of this Lease. Landlord shall have no obligation to give Tenant notice of non-payment of the Rent or to place Tenant in default. Landlord may allow Tenant to pay the Rent after the Due Date and after the ten (10) day grace period, plus a late fee equal to 10% of the Rent then due, but Landlord has no obligation to do so. Allowing Tenant to make a late payment of Rent plus a late fee shall be construed only as an indulgence by Landlord and not a waiver of any rights and remedies otherwise available to Landlord.

(11) All Rent due and payable hereunder shall be payable by check drawn on the account of Tenant maintained at any federally insured financial institution. In the event any check paid to Landlord by Tenant is returned by Tenant's financial institution on one or more occasions for any reason, Landlord may require that all future Rent be paid by Tenant with certified funds.

(12) All payments of Rent hereunder shall be tendered to Landlord on or before the due date at 328 East Boston Street, Covington, Louisiana 70433 or at such other location as Landlord may from time to time designate by written notice to Tenant.

B. Tenant Default.

(1) Should Tenant fail to pay Rent promptly on the Due Date, and said failure to pay continues for a period of ten (10) days after the Due Date (that is, if Base Rent, CAM Charges, NNN Expenses, other Additional Rent (except Tenant's proportionate share of insurance and property tax expenses, which are separately billed) and/or, Holdover Rent, if applicable, are not paid in full within the times hereinbefore provided), Tenant shall be automatically in default of this Lease. Landlord shall have no obligation to give Tenant notice of non-payment of Rent or to take any other action to declare Tenant in default. Neither does Landlord have the obligation to give Tenant the opportunity to cure the default of non-payment of Rent. In the event of such default, Landlord shall have available to it all remedies prescribed hereinafter and by Louisiana law.

(2) In the event that Tenant breaches any other covenant, obligation, or term of the Lease; or, Tenant files for or is placed in bankruptcy, receivership, insolvency, or assignment for the benefit of creditors; or, Tenant fails to maintain or operate a business,



Landlord                                    Tenant                                    Surety

 

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird

in the Leased Premises; or, Tenant fails to maintain continuous occupancy of the Leased Premises as a business concern ; or, any of the permits or licenses required for the conduct of business in the Leased Premises are revoked, then Tenant shall be in default of this Lease. Landlord shall give Tenant written notice of such default in the manner provided in Article III, Section D of this Extension Agreement. Tenant shall have the opportunity to cure said default within thirty (30) calendar days from the date the written notice is received or deemed received, pursuant to the provisions of Article III, Section D hereof. If Tenant has made a good faith effort to cure the noticed default within the thirty (30) day cure period, but despite the good faith effort of Tenant the default has not been cured, then Landlord, in its sole discretion, may grant such additional reasonable time as is necessary for Tenant to cure such default.

(3) In the event of Tenant's default, and its failure to cure same within the time provided (none if the default is non-payment of the Rent), Landlord shall have the right, at its sole option, to seek the following remedies: (a) if Tenant has not paid all Rents in full and when due for three (3) consecutive months, accelerate all Rents due for the unexpired term of this Lease and declare same immediately due and payable; or to sue for the Rent in intervals as they accrue; or (b) dissolve the Lease and regain possession of the Leased Premises in the manner provided by law, saving to Landlord the right to recover from Tenant the loss of Rent and Additional Rent that Landlord is owed by Tenant at the time of Tenant's eviction and such future Rent and Additional Rent, as permitted by law, that would have been realized had Tenant continued under the terms of the Lease, and any other damages that are recoverable by Landlord under Louisiana law. Should Landlord elect to exercise its rights under (b) above, and recover possession of the Leased Premises it shall reduce the amount owed by Tenant in future Rent, as hereinbefore stated, by the amount of any Rent it receives from subsequent tenants. Landlord will make a good faith effort to diligently pursue replacement tenants, for the Leased Premises during the period that would have been the remainder of the Term of the Lease with the defaulting Tenant. The foregoing provisions are without prejudice to Landlord's lien and privilege on Tenant's movable property or any other remedy which might otherwise be used under the laws of Louisiana for collection of arrearages of rent or breaches of contract. In the event Landlord elects to regain possession of the Leased Property by eviction in accordance with Louisiana law, Tenant hereby waives the 5-day notice of eviction proscribed by LA CCP Art. 4701.

C. Landlord Default.

(1) Should Landlord default under any provision of this Lease Tenant shall give Landlord written notice of such default in the manner provided in Article III, Section E of this Extension Agreement. Landlord shall have the opportunity to cure said default within thirty (30) calendar days from the date the written notice is received or deemed received, pursuant to the provisions of Article III, Section D hereof. If Landlord has made a good faith effort to cure the noticed default within the thirty (30) day cure period, but despite the good faith effort of Landlord the default has not been cured, then Tenant, in its sole discretion, may grant such additional reasonable time as is necessary for Tenant to cure such default.

(2) In the event Landlord does not cure its default as provided in Article III, Section C (1) above, Tenant shall have the right to cure said default at its own expense and to recover from Landlord the actual costs incurred by Tenant in curing the default or sue for specific performance. Landlord shall not be responsible for consequential or punitive damages occasioned by failure on its part to cure a default hereunder or to cure such default timely. Under no circumstances shall Tenant's cost to cure be offset against any Rent that may be due Landlord; nor shall the curing of Landlord's default by Tenant be just cause to terminate this Lease. During the Term, termination of this Lease by Tenant for cause or Landlord breach may only be accomplished through the grant of a final judgment of a court of law as provided below.

Landlord                    Tenant                    Surety

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird




(3) In the event it becomes necessary for Landlord or Tenant to employ an attorney to enforce compliance with any of the covenants and agreements herein contained, the party to whom substantial relief is granted shall be entitled to recover from the party against whom relief has been granted reasonable attorney's fees, costs and expenses incurred by the Tenant.

D. Contact Information.

(1) All notices required to be given under the terms of this Lease Shall be in writing and delivered by hand or certified mail, return receipt requested:

If to Landlord, at:

Hermes Health Alliance, L.L.C.
328 E. Boston Street
Covington, Louisiana 70433
Attention: Michael N. Pittman, M.D., Manager
Tel. No.: (985) 898-3838
Fax No.: (985) 898-3827
E-mail Address: Mike@pittmanassets.com

With a copy for information purposes to:

Richard L. Muller
Muller Law Group, L.L.C.
19349 N. 12th Street
Covington, LA 70433
Tel. No.: (985) 888-1500
Fax No. (985) 888-1450
E-mail Address: richardsr@mullerlawgroup.net

If to Tenant, at:

St. Luke #2, L.L.C.
Lawrence Stansberry, III
4201 Woodland Drive
New Orleans, LA 70131
Tel. No.:
Fax No.:
E-mail Address: larrystansberry@stmargaretsno.org

With a copy for information purposes to:

Mr. William P. Connick
Connick and Connick, LLC
3421 N. Causeway Blvd
Suite 408
Metairie, LA 70002
Tel. No.: (504)838-8777
Fax No. (504)838-9903
E-mail Address: pconnick@connicklaw.com



Landlord                              Tenant                              Surety





Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird



(2) Each said notice shall be deemed given, regardless of whether the addressee received such notice or not,

    a. on the date of delivery, if delivered by hand; or

    b. if sent by certified mail, return receipt requested, on the date of addressee's receipt, as reflected on the green "return receipt card"; or

    c. if sent by certified mail, return receipt requested, on the date of mailing, whether said date is established by postmark or affidavit of the sender, if a "return receipt green card" signed by the addressee is not returned to sender within two weeks of the date of mailing to the address given above.

A copy of a notice given to an attorney listed above may be delivered by ordinary mail. Whether delivered by ordinary mail, certified mail, or hand delivered, notice to an attorney listed above shall not constitute notice to a party.

Article IV

AGREEMENT TO SUPPLEMENT LEASE

For the consideration set forth in the Settlement Agreement, executed on August ___, 2016, by and among Landlord, Tenant, the members of Landlord, the members of Tenant, and other parties; the Landlord and Tenant agree to supplement the Lease by adding the following additional provisions.

A. Landlord's Obligation to Make Capital Improvements

Within two and one-half years from the commencement date of this Lease, Landlord shall invest the sum of up to Two Million Five-Hundred Thousand and 00/100 ($2,500,000.00) Dollars, or so much thereof as may be borrowed in connection with the refinancing of the New Market Tax Credit Loans and other debt of Landlord existing as of this date, for capital improvements in and to the Building and/or on the Real Estate, as listed and described in Exhibit C attached hereto, including, replacing the roof of the Building, replacing elevators, replacing the flooring in certain common areas, installing additional landscaping on the Real Estate, replacing/refurbishing the HVAC of the Building, painting the Building and performing such other improvements to the Building deemed necessary and appropriate by Landlord in its sole judgment. If after the capital improvements have been funded and have been paid in full, there are sufficient funds available from the aforementioned loan(s), Landlord shall provide a Building generator on site sized appropriately to handle air conditioning/heating loads for climate control in all leased space in the Building. If there are not sufficient funds available from said loan to purchase a generator sized as aforesaid, in the event of an extended power outage, Landlord will lease an appropriately sized generator, if one is available, the cost of which shall be a Shared Expense, which will be billed to all tenants of the Building as a special assessment that is not subject to the $2.50 annual CAM Charge cap rate. It will not be an event of Landlord default if Landlord is unable to obtain refinancing of the Hermes Loans (as defined in the Settlement, Release, and Indemnity Agreement executed by the parties and other parties contemporaneously herewith) and financing for the Capital Improvements, predicated on the Building and Real Estate as security. Provided that Landlord has completed the Capital Improvements identified in this Article and in Exhibit C hereto, Tenant agrees to execute an estoppel certificate acknowledging satisfaction of Landlord's obligation under this Section 4.a.

B. Affirmative Obligation of Tenant



Landlord                 Tenant                 Surety

Submitted Date: 3/14/2022 1:37 PM File Date: 3/17/2022 11:40 AM Case Number: 202114812 St. Tammany Parish, LA Deputy Clerk: Gretchen Moss

Submitted Date: 5/10/2022 9:21 AM File Date: 5/10/2022 4:06 PM Case Number: 202114812 St. Tammany Parish, LA Deputy Clerk: April Laird




Tenant affirmatively covenants and agrees that from the inception of the Option Term of the Lease (November 10, 2016) until the end of the Option Term (November 9, 2021) (the "Extended Term"), Tenant will not terminate the Lease and relocate St. Luke's Nursing Home and its 104 beds authorized for use at the Leased Premises described on the sketch attached to the Agreement to Extend Lease or otherwise vacate the Leased Premises unless (1) there is a final judgment of a Louisiana State court that the Leased Premises is not suited by reason of its physical condition for use as a nursing home which is principally funded by Medicaid and Medicare for Medicare and Medicaid eligible residents" or (2) within 6 months from the date the Option Term is to expire (November 9, 2021), Tenant may voluntarily vacate the Leased Premises, provided that Tenant continues to abide by its obligations under the Lease by paying timely the Base Rent and Additional Rent (CAM Charges, NNN Expenses, and other Shared Expenses) as provided in this Agreement to Extend Lease. Should Tenant exercise its right to vacate the Leased Premises within the time period provided above and continues to pay timely Base Rent and Additional Rent (CAM Charges, NNN Expenses, and other Shared Expenses), Landlord may nevertheless lease the Leased Premises or part thereof to third parties and collect rentals from the third party during the time from the inception of the third party lease to the end of the Option Term without Tenant being entitled to any set-off or credit for the rental collected from the third party. Should Tenant default in paying Base rent and Additional Rent (CAM Charges, NNN Expenses, and other Shared Expenses) during the period it voluntarily vacated the Leased Premises, the Base Rent for the remainder of the term shall be 150% of the Base Rent and Additional Rent (CAM Charges, NNN Expenses, and other Shared Expenses) provided for in the Lease.

C. Surety.

During the Term of this Lease identified in Section 1 hereof, Lawrence Stansberry III hereby binds himself as "Surety", jointly, severally, and *in solido* with Tenant and all other persons signing this Lease as Surety, to do and perform all acts, covenants and agreements required by the terms of this Lease to be done and performed by Tenant to the same extent as if this Lease had been executed for and in the name of Surety. The suretyship created hereby is and shall be construed as a commercial suretyship, governed by Louisiana law applicable thereto.

D. Keeper.

In connection with the Landlord's privilege granted Landlord by Louisiana law, and to the extent the hereinafter described right to be appointed a keeper which is hereby granted Landlord by Tenant does not conflict with the right to be appointed keeper of an existing Lender who acquired a security interest perfected by a lender prior to the Landlord's Privilege attaching to Tenant's movable property, furniture, fixtures and equipment or to the right of a subsequent lender who acquires a security interest perfected on Tenant's movable property, furniture, fixtures, and equipment after Landlord has acquired it's Landlord's Privilege, to be appointed a keeper, Tenant hereby consents to the following:

1. Landlord is appointed the keeper of Tenant's Movables subject to the Landlord's Privilege as set forth in LSA-R.S. 9:5136 *et seq.*, without the need of posting any bond or any type of security;

2. Landlord is appointed the keeper of Tenant's Movables in the event Tenant's Movables are seized under a writ of sequestration, pursuant to LSA-C.C. Article 2707 through 2710, without the need of posting any bond or any type of security;

3. The Landlord shall have the right to seize, sequester, and/or inventory the Tenant's Movables in accordance with law, and store Tenant's Movables in a facility of its choosing; and



Landlord                          Tenant.                          Surety





4. In accordance with this Section, the Landlord shall be the keeper of all Tenant's Movables wherever situated, regardless of whether Tenant's Movables have been removed from the Leased Premises.

### Article V.
### MISCELLANEOUS

A. Multiple Originals. This agreement may be executed in multiple originals.

B. Amendment of Lease. This Lease shall not be amended or modified except in a written agreement signed by all parties hereto.

IN FAITH WHEREOF, witness the official signatures of the Landlord at Covington, Louisiana, on this the 7th day of September, 2016.

WITNESSES:                              LANDLORD:

                                        Hermes Health Alliance, LLC

_____               _____
                                        By: Michael N. Pittman, M.D.
                                        Managing Member

_____


IN FAITH WHEREOF, witness the official signatures of the Tenant at _____, Louisiana, on this the ____ day of _____ 2016.

WITNESSES:                              TENANT:

                                        St. Luke #2, LLC

_____               _____
                                        By: Lawrence Stansberry, III,
                                        Manager

_____


IN FAITH WHEREOF, witness the official signatures of the Surety at _____, Louisiana, on this the ____ day of _____ 2016.

WITNESSES:                              SURETY:

_____               _____
                                        Lawrence Stansberry, III, Individually


_____



Landlord                                Tenant                    Surety




Submitted Date: 3/14/2022 1:37 PM   File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: April Laird




Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM  Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM  Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

EXHIBIT "A"

S. Luke's Leased Spaced (in yellow highlights)
Common Area (in red stripes)

1ST FLOOR

Sketch of Leased Premises

Exhibit A

**WORK ORDER**     No. 45122

# Chiller Specialties

COMMERCIAL, INDUSTRIAL, & RESIDENTIAL
AIR CONDITIONING,
HEATING, & REFRIGERATION SERVICES

P.O. BOX 11168
JEFFERSON, LA 70181-1168
PHONE: (504) 837-4837
FAX: (504) 733-0292

| Job # | Technician #1 | Technician #2 |
|---|---|---|
| | | |

| MANUFACTURER: | |
| MODEL NO: | |
| SERIAL NO: | |

☑ TIME & MATERIAL  ☐ QUOTED JOB
☐ SERVICE CONTRACT  ☐ WARRANTY CLAIM

| P.O. # | Quantity | Material / Parts | Unit Price |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**JOB LOCATION** | **BILLING INFORMATION**

| JOB LOCATION | | | BILLING INFORMATION | | |
|---|---|---|---|---|---|
| NAME | | | NAME | | |
| ADDRESS | | | ADDRESS | | |
| CITY | STATE | ZIP | CITY | STATE | ZIP |
| PHONE NO: | | | PHONE NO: | | |
| | | | P.O./JOB/AUTHORIZATION | | |

**WORK PERFORMED**

DATE

**LABOR TIME AND EXPENSE RECORD** | **FOR OFFICE USE ONLY**

| DATE ON LABOR | REGULAR ON SITE | OVERTIME ON SITE | TRAVEL DIST | OUT OF POCKET EXPENSES | TRUCK | JOB COMPLETE |
|---|---|---|---|---|---|---|
| | | | | | | ☐ YES ☐ NO |
| | | | | | | ☐ YES ☐ NO |
| | | | | | | ☐ YES ☐ NO |
| | | | | | | ☐ YES ☐ NO |
| | | | | | | ☐ YES ☐ NO |
| | | | | | | ☐ YES ☐ NO |
| | | | | | | ☐ YES ☐ NO |
| | | | | TOTAL HOURS | | |

LABOR

_____ HRS @ $_____ /HR  $_____

_____ HRS @ $_____ /HR  $_____

TRUCK FEE  $_____

MATERIALS/PARTS  $_____

TOTAL DUE  $_____

I HEREBY ACKNOWLEDGE SATISFACTORY COMPLETION OF WORK DESCRIBED AND AGREE TO THE CONDITIONS OF SALE AS STATED ON REVERSE SIDE.
☐ CASH ☐ CHECK ☐ CREDIT CARD (3% PROCESSING FEE)

X_____

DATE                CUSTOMER SIGNATURE

White * Office     Yellow * Technician     Pink * Customer

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

Submitted Date: 5/10/2022 4:06 PM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: April Laird

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022  St. Tammany Parish, LA  Deputy Clerk: April Laird








CHILLER SPECIALTIES

4712 Jefferson Hwy.
Jefferson, LA 70121
(504) 837-4837 - Phone
(504) 733-0292 - Fax

# Invoice

| Date | Invoice # |
|---|---|
| 9/20/2021 | 69190 |

| Bill To |
|---|
| Hermes Health Alliance |
| 3063 E Causeway Approach |
| Mandeville, LA 70448 |

| Location |
|---|
| Hermes Health Alliance |
| 4201 Woodland Drive |
| New Orleans, LA 70131 |

| | S.O. No. | P.O. No. | Terms | Rep | Project |
|---|---|---|---|---|---|
| | | | Upon Receipt | JB | 69190- Hurricane ... |

| Item | Qty | Description | Rate | Amount |
|---|---|---|---|---|
| | | Manufacturer: Air Handler Units<br>Model: AHU-7 / AHU-6A<br>Serial: N/A<br><br>Hurricane AHU-7 & AHU-6A Repairs<br><br>8/31/21<br>Air handler units AHU-7 and AHU-6A are not restarting after hurricane Ida passed through the metropolitan area Sunday 8/29/21.<br>Check the motor start panels for both. Found a blown fuse on center phase and both units had faulted motors. Picked up new motors and replace.<br>AHU-6A  Amps=4.3, 4.2, 4.3 (RLA=6.6).  AHU-7A  Amps=7.4, 7.5, 7.6. (RLA=12.7). | | |
| Lab/Mat | | Labor and Material charges | 4,663.00 | 4,663.00 |

| | |
|---|---|
| **Total** | $4,663.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $4,663.00 |

Submitted Date: 3/14/2022 1:37 PM  File Date: 3/17/2022 11:40 AM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: Gretchen Moss

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM Case Number: 2021114812  St. Tammany Parish, LA  Deputy Clerk: April Laird



# CONNICK AND CONNICK, L.L.C.

## ATTORNEYS AT LAW

WILLIAM PETER CONNICK
MICHAEL S. FUTRELL
MICHAEL F. NOLAN
─────────────
ELIZABETH O. CLINTON
MICHAEL J. MONISTERE
MATTHEW D. MOGHIS
BRENDAN P. CONNICK
TIMOTHY P. MCSWEENEY

3421 NORTH CAUSEWAY BOULEVARD
SUITE 408
METAIRIE, LOUISIANA 70002
TELEPHONE (504) 838-8777
FACSIMILE (504) 838-9903
Website: www.connicklaw.com

OF COUNSEL

PAUL D. CONNICK, JR.

Direct Dial: (504) 681-6648
Email: pconnick@connicklaw.com

October 15, 2021

**VIA EMAIL:** richardsr@mullerlawgroup.net
Mr. Richard L. Muller, J.D.
Muller Law Group
P.O. Box 472
Covington, LA  70433

      Re:     Hermes/St. Luke's/Ida

Dear Richard,

The purpose of this letter is to inform you that the lease agreement between St. Luke's #2, L.L.C. ("St. Luke's), as Lessee, and Hermes Health Alliance, L.L.C. ("Hermes"), as Lessor, as amended, has terminated by its terms. Section 19 of the Lease provides, in pertinent part, the following: "If through no fault, neglect, or design of Lessee, the premises are destroyed by fire or other casualty or damaged to such an extent as to render them wholly unfit for occupancy, then this Lease shall be cancelled. If, however, the premises can be repaired within 120 days from the date of casualty, then this Lease shall not be cancelled, and Lessor shall notify Lessee within 30 days from the date of casualty that Lessor will repair the damage, and Lessee shall be entitled only to such a reduction or remission of rent as shall be just and proportionate."

As you are aware, the casualty causing damage or destruction to the premises occurred because of Hurricane Ida on August 30, 2021. This event damaged or destroyed the premises to the extent that it is wholly unfit for its intended use under the Lease as a nursing home. The damage to the premises is of such a condition that is not possible to repair the premises to be fit for its intended use as a nursing home within the required 120-day window much less the 26 days that remain on the lease term. More dispositive is that to date, October 15, 2021, St. Luke's has not received any notice from Hermes to notify St. Luke's of Hermes intent to repair the premises. As a result, in accordance with the governing terms of the Lease, the Lease has terminated by its own terms. If for sake of argument notice was provided timely, which St. Luke disputes, under Section 19 St. Luke would still be entitled to "a reduction or remission of rent as shall be just and proportionate." Given that St. Luke was forced to vacate the premises on September 2, 2021, any

Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM Case Number: 2021148125  St. Tammany Parish, LA  Deputy Clerk: April Laird

Page 1 of 2

**EXHIBIT 3**





rent paid for the period after September 2, 2021, would be reimbursable and any rent due would not be required as a result of the condition of the building damaged by Ida.

In addition, please find enclosed an air quality report by TES which is dated September 30, 2021. This report was requested by St. Luke's to assure that the air quality was safe to repopulate the leased space with our elderly residents. As of that date TES indicates that the space leased to St. Luke's needs remedial efforts before St. Luke can safely move back to the facility. St. Luke is not aware of any remedial measures performed in the leased space since Ida damaged the building. Please feel free to contact me if you have any questions.

<div style="margin-left:50%">

Sincerely,

**CONNICK AND CONNICK, L.L.C.**

WILLIAM P. CONNICK

</div>

WPC/pml

<div style="text-align:right; writing-mode: vertical;">Submitted Date: 5/10/2022 9:21 AM  File Date: 5/10/2022 4:06 PM Case Number: 202114812  St. Tammany Parish, LA  Deputy Clerk: April Laird</div>



**To:** trey@lapelawfirm.com
**Cc:** bcr@stanleyreuter.com; tpo@stanleyreuter.com; pconnick@connicklaw.com; rduplantier@gallowaylawfirm.com; hweber@gallowaylawfirm.com; Bruce Wilkin; Joseph Colvin; Darvi Jeffery
**Subject:** RE: St. Luke #2, LLC v Hermes Health Alliance, LLC
**Attachments:** 2023-03-22 - Signed Rule to Show Cause (Sedgwick's Exception of No Cause of Action).pdf

| Tracking: | Recipient | Delivery |
|---|---|---|
| | trey@lapelawfirm.com | |
| | bcr@stanleyreuter.com | |
| | tpo@stanleyreuter.com | |
| | pconnick@connicklaw.com | |
| | rduplantier@gallowaylawfirm.com | |
| | hweber@gallowaylawfirm.com | |
| | Bruce Wilkin | Delivered: 3/22/2023 2:45 PM |
| | Joseph Colvin | Delivered: 3/22/2023 2:45 PM |
| | Darvi Jeffery | Delivered: 3/22/2023 2:45 PM |

Good Afternoon Trey,

In accordance with La. CCP art. 1313(C), attached you will find a copy of the signed Rule to Show Cause, directed to your client, Hermes Health Alliance, LLC.

Thank you and have a great day.

**Artis G. Ulmer, III**
**Licensed in LA & TX**
**Shackelford, Bowen, McKinley & Norton, LLP**
717 Texas Ave. | 27th Floor | Houston, TX 77002
(832) 669-6054 *direct*
Bio| https://shackelford.law/profiles/artis-g-ulmer-iii/



Sent:
Subject:      Relayed: RE: St. Luke #2, LLC v Hermes Health Alliance, LLC

**Delivery to these recipients or groups is complete, but no delivery notification was sent by the destination server:**

trey@lapelawfirm.com (trey@lapelawfirm.com)

Subject: RE: St. Luke #2, LLC v Hermes Health Alliance, LLC

1

# Exhibit B

**Sent:** Wednesday, March 22, 2023 2:45 PM
**To:** trey@lapelawfirm.com
**Cc:** bcr@stanleyreuter.com; tpo@stanleyreuter.com; pconnick@connicklaw.com; rduplantier@gallowaylawfirm.com; hweber@gallowaylawfirm.com; Bruce Wilkin; Joseph Colvin; Darvi Jeffery
**Subject:** RE: St. Luke #2, LLC v Hermes Health Alliance, LLC
**Attachments:** 2023-03-22 - Signed Rule to Show Cause (Sedgwick's Exception of No Cause of Action).pdf

| Tracking: | Recipient | Delivery |
|---|---|---|
| | trey@lapelawfirm.com | |
| | bcr@stanleyreuter.com | |
| | tpo@stanleyreuter.com | |
| | pconnick@connicklaw.com | |
| | rduplantier@gallowaylawfirm.com | |
| | hweber@gallowaylawfirm.com | |
| | Bruce Wilkin | Delivered: 3/22/2023 2:45 PM |
| | Joseph Colvin | Delivered: 3/22/2023 2:45 PM |
| | Darvi Jeffery | Delivered: 3/22/2023 2:45 PM |

Good Afternoon Trey,

In accordance with La. CCP art. 1313(C), attached you will find a copy of the signed Rule to Show Cause, directed to your client, Hermes Health Alliance, LLC.

Thank you and have a great day.

**Artis G. Ulmer, III**
Licensed in LA & TX
Shackelford, Bowen, McKinley & Norton, LLP
717 Texas Ave. | 27th Floor | Houston, TX 77002
(832) 669-6054 *direct*
Bio | https://shackelford.law/profiles/artis-g-ulmer-iii/

 **Shackelford**

**To:** trey@lapelawfirm.com
**Sent:** Wednesday, March 22, 2023 2:45 PM
**Subject:** Relayed: RE: St. Luke #2, LLC v Hermes Health Alliance, LLC

**Delivery to these recipients or groups is complete, but no delivery notification was sent by the destination server:**

trey@lapelawfirm.com (trey@lapelawfirm.com)

Subject: RE: St. Luke #2, LLC v Hermes Health Alliance, LLC

1

# Exhibit B

**To:** Artis Ulmer

**Cc:** alex@mrmlaw.com; Bryan Reuter; tpo@stanleyreuter.com; pconnick@connicklaw.com; rduplantier@gallowaylawfirm.com; Henry Weber; ginger.dodd@phelps.com; trainorg@phelps.com; duplanth@phelps.com; kevin.welsh@phelps.com; Bruce Wilkin; Joseph Colvin

**Subject:** Re: St. Luke #2, LLC v Hermes Health Alliance, LLC

Artis, I received and thank you for your email but do not agree that it was either valid or sufficient service of your client's exception.

Thanks,

Trey Lape
1966 N. Highway 190, Ste. B, Covington, LA 70433
985-246-7933 | trey@lapelawfirm.com

On Tue, Mar 28, 2023 at 3:07 PM Artis Ulmer <aulmer@shackelford.law> wrote:

Good afternoon Trey,

Attached you will find a second Order for Hermes Health Alliance to appear on April 5, 2023. The attached Order has the Judge's signature.

Thank you.

**Artis G. Ulmer, III**

**Licensed in LA & TX**

**Shackelford, Bowen, McKinley & Norton, LLP**

717 Texas Ave. | 27th Floor | Houston, TX 77002

(832) 669-6054 *direct*

Bio | https://link.edgepilot.com/s/dcb09079/6VAVxMX4-UmtfvNpO_ZI9A?u=https://shackelford.law/profiles/artis-g-ulmer-III/

1