### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**HERMES HEALTH ALLIANCE, LLC**                    **CIVIL ACTION**

**VERSUS**                    **NO. 23-2276**

**CERTAIN UNDERWRITERS AT**                    **SECTION "O"**
**LLOYD'S, LONDON, ET AL.**

### ORDER AND REASONS

Before the Court in this surplus lines insurance case is the motion[1] of Defendants[2] to compel arbitration and stay the lawsuits of Plaintiff Hermes Health Alliance, LLC ("Hermes") and Plaintiff-Intervenor Girod Titling Trust ("Girod") under the Convention on the Recognition of Foreign Arbitral Awards ("Convention"), 9 U.S.C. §§ 201–208, and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.

Plaintiff Hermes does not oppose this Court compelling arbitration for its claims.[3] Plaintiff-Intervenor Girod opposes this Court compelling arbitration for certain of its claims.[4] For the reasons that follow, Defendants' motion[5] to compel arbitration as to Plaintiff Hermes's and Plaintiff-Intervenor Girod's claims against Defendants and to stay Plaintiff-Intervenor Girod's remaining crossclaims is **GRANTED**.

---

[1] ECF No. 35.
[2] Defendants are Certain Underwriters at Lloyd's, London, Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, Safety Specialty Insurance Company, HDI Global Specialty SE, and Old Republic Union Insurance Company ("Insurers" or "Defendants").
[3] ECF No. 36.
[4] ECF No. 37.
[5] ECF No. 35.

## I.    BACKGROUND

This insurance case arises from alleged damage caused by Hurricane Ida. Plaintiff Hermes owns a property located at 4201 Woodland Drive in New Orleans (the "Property").[6] Defendants insured Hermes's Property under a surplus lines commercial property insurance policy bearing Account No. #791945 (the "Policy").[7] The Policy contains a provision that requires arbitration of "[a]ll matters in difference between the Insured and the Companies . . . in relation to this insurance . . . ."[8] Under the Policy, "[t]he seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance."[9]

After Hurricane Ida caused major damage to the property in August 2021, the lessor of the property filed suit against Hermes in the 22nd Judicial District Court of St. Tammany Parish.[10] The lessor alleged the property was unfit for use in violation of the lease agreement.[11] In turn, Hermes asserted several affirmative defenses and counterclaims, including a third-party demand against Defendants (as then-third-party defendants) for (1) breach of the insurance policy; and (2) bad faith under La R.S. §§ 22:1892 and 1973.[12] Hermes contended that it could not meet its contractual

---

[6] ECF Nos. 37 at 1-2; 2-7 at 15 ¶¶ 40–41.

[7] ECF No. 35-2 at 2.

[8] ECF No. 38-1 at 38 (§ VII(C)). Per the Policy's declarations page, "the Insured" is Plaintiff Hermes Health Alliance, LLC. *See id.* at 3. Under the Policy, the words "Underwriters, Insurers, and Companies" "shall be synonymous with each other." *See id.* at 47 (quotation marks omitted).

[9] *Id.*

[10] ECF No. 2-7.

[11] *Id.* at 55-60.

[12] *Id.* at 13-24.

obligation under the lease in part because "the denial of Hermes' insurance claim by Hermes' Property Insurers has made that financially impossible."[13]

Defendants—as then-third-party defendants—removed the case to this Court, but the Court granted a motion to remand based on Defendants' third-party defendant status. *St. Luke #2, LLC v. Hermes Health All., LLC*, 644 F. Supp. 3d 289, 291 (E.D. La. 2022). After remand, the state court severed Hermes's insurance claims from the underlying dispute with the lessor and re-docketed the insurance case as a new action.[14]

Defendants again removed to this Court.[15] Defendants' Notice of Removal reasoned that this Court has subject matter jurisdiction over this action under 9 U.S.C. §§ 203 and 205 because this matter relates to an arbitration agreement falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.[16] Thereafter, two defendants—Sedgwick Claims Management Services, a third party insurance adjusting company, and Applied Building Sciences, Inc., a third party engineering firm—filed motions to dismiss Hermes's claims against them.[17] The Court granted both motions, leaving the ten remaining insurer defendants.[18]

On November 28, 2023, Plaintiff-Intervenor Girod filed a motion to intervene as a plaintiff pursuant to Fed. R. Civ. P. 24.[19] Girod alleges that it is the current

---

[13] *Id.* at 23.
[14] *Id.* at 1.
[15] ECF No. 2.
[16] *Id.* at 2, 6.
[17] ECF Nos. 11 and 13.
[18] ECF Nos. 33 and 34.
[19] ECF No. 16.

holder of a Multiple Indebtedness Mortgage (the "Mortgage") dated March 15, 2017, given by Hermes in favor of First NBC Bank and any future holder or holders.[20] The Mortgage pledged all of Hermes's present and future rights, title, and interest in and to the Property.[21] The Mortgage and related rights were assigned by the Federal Deposit Insurance Corporation in its capacity as court-appointed receiver for First NBC to Girod LoanCo, LLC, which subsequently assigned the Mortgage and related rights to Girod.[22] Hermes failed to pay amounts due to Girod under the mortgage and Girod instituted an executory foreclosure action in state court to foreclose on the property.[23] Girod alleges that the Mortgage currently secures indebtedness owed to Girod of over $17 million in principal, accrued interest, and other costs.[24]

According to Girod's Complaint, the Mortgage provides that the Mortgagee [Girod] has "the right to directly receive the proceeds of all insurance protecting the Property."[25] The Complaint also states that Hermes was allegedly required to obtain insurance on the Property that contained a "lender's loss payee endorsement in favor of Mortgagee, providing in part that [] all proceeds and returned premiums under such policies of insurance will be paid directly to Mortgagee[.]"[26] Girod alleges that the insurance Policy on its face does not, however, show that Girod is named as either a lender loss payee or mortgage holder as required by the Mortgage.[27]

---

[20] ECF No. 16 ¶ 8.
[21] *Id.*
[22] *Id.* ¶ 10.
[23] *Id.* ¶¶12-15.
[24] *Id.* ¶ 17.
[25] *Id.* ¶ 23.
[26] *Id.* ¶ 22.
[27] *Id.* ¶ 21.

Girod accordingly brings six distinct claims, some against Insurer Defendants and some crossclaims against Plaintiff Hermes. Girod's first two claims "adopt[] [Hermes's] allegations and claims for relief" against Defendants because Girod contends that it is the "proper party in interest for recovery of the insurance proceeds[.]"[28] Accordingly, Girod—alongside Hermes—brings claims against Defendants for (1) breach of the insurance Policy; and (2) bad faith under La R.S. §§ 22:1892 and 1973.

Girod—on its own—pleads four additional claims. Girod seeks: (3) a declaratory judgment against both Defendants and Plaintiff Hermes that Girod is the party entitled to all proceeds of insurance due under the Policy because of the Mortgage contract; (4) a judgment against Defendants for the equitable remedy under Louisiana law of reformation of the Policy vesting Girod with the rights of an insured and an equitable lien on all insurance proceeds due under the Policy per the language of the Mortgage; (5) a judgment that all sums owed by Defendants to Hermes in this action under the Policy should be instead paid to Girod; (6) in the alternative, damages for breach of contract against Hermes for Hermes's alleged failure to name Girod as a lender loss payee under the Policy pursuant to the terms of the Mortgage.[29]

Invoking both the Convention and the FAA, Defendants moved to compel arbitration of all claims against them by both Hermes and Girod and to stay any remaining claims in this litigation pending the outcome of the arbitration.[30] Hermes

---

[28] *Id.* ¶ 24.
[29] *Id.* Counts I-IV.
[30] ECF No. 35-2.

and Girod each filed an opposition.[31] The Court considers each party's arguments in turn.

## II.    ANALYSIS

### A.    Plaintiff Hermes's Claims Against Defendants

Defendants move the Court to compel Plaintiff Hermes to arbitrate its claims under the Convention and to stay this litigation pending arbitration.[32] Defendants contend that Hermes's claims come within the Policy's arbitration provision and that each element required to compel arbitration under the Convention is met.[33]

Substantively, Hermes "does not oppose" this Court compelling arbitration and staying the litigation.[34] The Court agrees with the parties that the language of the Policy and the Convention requires the Court to compel arbitration of Plaintiff Hermes's claims against Defendants because each of the elements necessary to compel arbitration under the Convention is met. "The Convention is an international treaty that provides citizens of signatory countries the right to enforce arbitration agreements." *Bufkin Enters., L.L.C. v. Indian Harbor Ins. Co.*, 96 F.4th 726, 729 (5th Cir. 2024) (per curiam). "Its purpose is 'to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the

---

[31] ECF Nos. 36 and 37.

[32] ECF No. 35-2.

[33] *Id.* at 4-16.

[34] ECF No. 36 at 2. Hermes's sole rejoinder is that Defendants failed to file a certified copy of the subject insurance Policy in the record upon removal of this case. *Id.* at 1-2. In response, Defendants filed the declaration of AmRisc Vice President and Claims Manager, Amanda Conner, to confirm that the 98-page version of the certified copy of the Policy attached to Defendants' original motion is a true and correct copy of the Policy. ECF No. 38-1 (Decl. Amanda Conner). With this Declaration, Defendants have satisfied any outstanding obligation to provide a certified copy of the Policy.

standards by which agreements to arbitrate are observed and arbitral awards are enforced in signatory countries.'" *Id.* at 729-30 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)). The FAA "codifies the Convention, providing that it 'shall be enforced in United States courts in accordance with [the FAA's terms].'" *Id.* at 730 (brackets in original) (quoting 9 U.S.C. § 201).

To decide if the Convention requires Hermes to arbitrate its claims, the Court "conduct[s] only a very limited inquiry." *Id.* (internal citation and quotation marks omitted). That "very limited inquiry" requires the Court to "compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen*." Id.* (internal citation and quotation marks omitted). "Once these factors are met," the Court "must order arbitration unless it finds that the [arbitration] agreement is null and void, inoperative or incapable of being performed." *Id.* (brackets in original) (internal citation and quotation marks omitted).

Each element is met here. The first element is met because the Policy contains a written arbitration agreement that covers Hermes's claims. The Policy requires arbitration of "[a]ll matters in difference. . . in relation to this insurance . . . ."[35] And Hermes's claims qualify as "matters in difference . . . in relation to this insurance" because Hermes's claims stem from Defendants' alleged breach of the Policy and

---

[35] ECF No. 38-1 at 38 (§ VII(C)).

alleged mishandling of the claim Hermes submitted under the Policy.[36] The second element is met because the Policy requires arbitration in New York,[37] "which is located in a Convention signatory nation." *Bufkin Enters., L.L.C.*, 96 F.4th at 730. The third element is met because the Policy's arbitration agreement arises out of an insurance contract, which is a commercial legal relationship. *See id.* (concluding the third element was met in arbitration agreement contained in insurance policy). And the fourth element is met because parties to the Policy include Certain Underwriters at Lloyds, London, which consists of syndicates organized under the laws of, and having their principal places of business in, the United Kingdom, as well as HDI Global Specialty SE, a citizen of Germany.[38]

Accordingly, because all four elements are met and the arbitration agreement in the Policy is not "null and void, inoperative or incapable of being performed," the Convention requires the Court to compel arbitration of Plaintiff Hermes's claims against Defendants. *Bufkin Enters., L.L.C.*, 96 F.4th at 730 (internal citation and quotation marks omitted).

### B.    Plaintiff-Intervenor Girod's Claims Against Defendants

Defendants also move the Court to compel Plaintiff-Intervenor Girod—a non-signatory of the Policy containing the arbitration clause—to arbitrate its claims against Defendants.[39]  Recall that Plaintiff-Intervenor Girod brings six total claims

---

[36] ECF No. 2-7 at 13-24.
[37] ECF No. 38-1 at 38 (§ VII(C)).
[38] *Id.* at 4.
[39] ECF No. 35-2 at 16.

in this action, including its crossclaims against Plaintiff Hermes. Against Defendants alone, however, Girod brings five claims: those Girod "adopted" from Hermes for (1) breach of the insurance Policy; and (2) bad faith under La R.S. §§ 22:1892 and 1973;[40] and its own claims for (3) a declaratory judgment against Defendants that Girod is the party entitled to all proceeds of insurance due under the Policy because of the Mortgage contract; (4) a judgment against Defendants for the equitable remedy under Louisiana law of reformation of the Policy vesting Girod with the rights of an insured and an equitable lien on all insurance proceeds due under the Policy per the language of the Mortgage; and (5) a judgment that all sums owed by the Defendants in this action under the Policy should be paid to Girod in preference to Hermes.[41]

Defendants seek to compel Girod to arbitrate each of these claims against them pursuant to the Policy's arbitration clause.[42] Defendants advance two arguments in support.

First, Defendants contend that the arbitration agreement in the insurance Policy between Hermes and Defendants is "so broad" that it is a "delegation clause" that requires the Court to refer the question of the arbitrability of Plaintiff-Intervenor Girod's claims to the arbitral panel.[43] Girod, in turn, protests that the arbitration

---

[40] ECF No. 16 ¶ 24.

[41] *Id.* Counts I-III.

[42] Recall that against Hermes, Girod also brings a breach of contract claim for Hermes's failure to name Girod as a loss payee in the Policy pursuant to the Mortgage contract. Girod also seeks a declaratory judgment against Hermes—as well as against Defendants—that Girod is the party entitled to all proceeds of insurance due under the Policy because of the Mortgage contract. *Id.* Counts I, IV. Defendants ask the Court to stay Girod's claims against Hermes pending the outcome of the arbitration. ECF No. 35-2 at 16. The Court discusses the stay *infra*.

[43] ECF Nos. 35-2 at 6; 38 at 4.

agreement is not a delegation clause at all.[44]  The Court need not decide whether there is a delegation clause in the arbitration agreement, however, because it is the Court's job—and not an arbitrator's—to determine the arbitrability of claims between signatories and non-signatories, regardless of any delegation clause. *See Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 399 (5th Cir. 2022). The Court's "first step in determining whether a valid agreement to arbitrate exists" includes understanding "who is actually bound by an arbitration agreement." *Id.* at 399 (cleaned up). In other words, "deciding enforceability between the parties and an arbitration agreement's existence are two sides of the same coin." *Id.* at 398. And "[t]he parties cannot delegate disputes over 'the very *existence* of an arbitration agreement.'" *Id.* at 398 (quoting *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019) (cleaned up)). Accordingly, the existence of an arbitration agreement that is enforceable against non-signatory Girod is a question for this Court regardless of any so-called delegation clause in the agreement.

Second, Defendants contend that Plaintiff-Intervenor non-signatory Girod is required to arbitrate its five claims against Defendants under the direct benefits estoppel doctrine.[45] "Direct benefits estoppel is one theory by which non-signatories may be bound to arbitrate." *Blaustein v. Huete*, 449 F. App'x 347, 350 (5th Cir. 2011) (citing *Hellenic Inv. Fund, Inc. v. Det Norske Veritas,* 464 F.3d 514, 517 (5th Cir.

---

[44] ECF No. 37 at 9.
[45] ECF No. 35-2 at 7-8.

2006)).[46] The theory applies to "'nonsignatories who, during the life of the contract, have embraced the contract despite their nonsignatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract.'" *Traders' Mart, Inc. v. AOS, Inc.*, 268 So. 3d 420, 428 (La. App. 2 Cir. 2019) (citing *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006); *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010)). "A non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Traders' Mart*, 268 So. 3d at 428 (citing *Noble Drilling*, 620 F.3d at 473).

Plaintiff-Intervenor Girod concedes that direct benefits estoppel applies to the claims Girod "adopts" from Hermes's Complaint in its own Intervenor Complaint—namely, the (1) breach of policy and (2) statutory bad faith claims against

---

[46] In determining whether non-signatories may be bound by an arbitration clause, state law applies. *Arthur Andersen, LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). The parties do not brief whether Louisiana law or New York law applies in this case. Girod cites to Louisiana law, ECF No. 37 at 7-8, while Defendants cite solely to federal cases, ECF No. 35-2 at 7-8. Louisiana courts analyzing direct benefits estoppel approvingly cite Fifth Circuit cases on this issue. *See, e.g.*, *Traders' Mart, Inc. v. AOS, Inc.*, 268 So. 3d 420, 428 (La. App. 2 Cir. 2019), *writ denied sub nom. Trader's Mart, Inc. v. AOS*, Inc., 2019-00694 (La. 10/21/19), 280 So. 3d 1165. And New York courts have a similar direct benefits estoppel doctrine. *See Trina Solar US, Inc. v. Jasmin Solar Pty Ltd.*, 954 F.3d 567, 572 (2d Cir. 2020) ("Under New York law, the 'guiding principle' of the theory 'is whether the benefit gained by the nonsignatory is one that be traced directly to the agreement containing the arbitration clause.'") (quoting *Belzberg v. Verus Invs. Holdings Inc.*, 999 N.E.2d 1130 (2013)); *see also Fed. Deposit Ins. Corp. v. Ernst & Young LLP*, 2024 WL 247076, at *8-9 (E.D. La. Jan. 23, 2024) (noting New York law is "similar" to Louisiana law on this issue and applying Louisiana law where "neither party urges the applicability of New York law" and the plaintiff "alleges causes of action pursuant to Louisiana law."). Given that these nuances are not determinative of the outcome here, the Court will look to Louisiana law and the Fifth Circuit.

11

Defendants.[47] Girod accordingly acknowledges that those claims against Defendants under the Policy should be arbitrated.[48] The Court agrees that in adopting Hermes's claims against Defendants under the Policy, Girod seeks to enforce the terms of the Policy. *See Noble*, 620 F.3d at 473. These claims are therefore subject to arbitration under the direct benefits estoppel doctrine.

But Girod objects that its three other claims against Defendants—namely, (3) a declaratory judgment against Defendants that Girod is the party entitled to all proceeds of insurance due under the Policy due to the Mortgage; (4) a judgment for reformation of the Policy to vest Girod with the rights of an insured and an equitable lien on all insurance proceeds due under the Policy per the language of the Mortgage; and (5) a judgment that all sums owed by the Defendants to Hermes in this action under the Policy should be paid instead to Girod —are not subject to arbitration under the direct benefits estoppel doctrine and should therefore be decided by this Court.[49] The Court disagrees.

A non-signatory can "'embrace'" a contract containing an arbitration clause by "knowingly seeking and obtaining 'direct benefits' from that contract." *Noble*, 620 F.3d at 473. A non-signatory must have had "actual knowledge of the contract containing the arbitration clause." *Id.* Though Girod did not sign the Policy, it admits it "receive[d] a copy of the Policy" at some point "after it was procured" by Hermes.[50]

---

[47] ECF No. 37 at 5-6.
[48] *Id.*
[49] *Id.* at 6-8.
[50] ECF No. 37 at 2.

Girod has therefore satisfied the "knowing" mode of direct benefits estoppel because Girod is "knowingly seeking and obtaining 'direct benefits' from" the Policy in its claim for any future proceeds Defendants may pay out under the Policy. *Id*. In other words, Girod—which had prior knowledge of the arbitration clause in the Policy— now seeks to receive a "direct benefit" from that Policy in the form of the insurance proceeds Defendants will pay out pursuant to that Policy. *See id*. Girod therefore cannot escape the Policy's mandatory arbitration clause and it must arbitrate its claims against Defendants pursuant to that clause.

Even if Girod did not have "actual knowledge" of the Policy, it would still be compelled to arbitrate its three remaining claims against Defendants. Direct benefits estoppel doctrine is also applicable where the non-signatory "assert[s] claims that must be determined by reference to [the Policy]." *Id*. at 473-74. Girod's three remaining claims against Defendants are each dependent on the insurance Policy's existence and could not survive without implicating the Policy. In other words, Girod's three remaining claims "can only be determined by reference to an agreement containing an arbitration clause" and therefore must be arbitrated pursuant to that agreement's arbitration clause. *Id*. at 474.

Girod protests that *Noble Drilling* does not compel this result.[51] Under Girod's reading of *Noble Drilling*, direct benefits estoppel only applies if the arbitral panel

---

[51] Girod, however, does not respond to Defendants' argument that Girod's claims *also* satisfy *Noble Drilling*'s first path to direct benefits estoppel, *i.e.* that Girod is "knowingly seeking and obtaining 'direct benefits' from that contract," which the Court agrees requires these claims to be arbitrated. *Noble Drilling*, 620 F.3d at 473; ECF Nos. 35-2 at 8; 37 at 6-8.

can resolve Girod's claims "solely by reference" to the Policy.[52] In other words, Girod asserts that an arbitral panel cannot resolve its claims without "refer[ring] to the Mortgage [c]ontract . . . which does not contain an arbitration provision," and that this Court is therefore required to resolve the claims.[53]

The Court disagrees. Girod flips the *Noble Drilling* standard on its head. In *Noble Drilling*, the plaintiff brought breach of warranty, negligence, fraud, and Louisiana statutory claims against the seller and manufacturer of wire ropes that allegedly failed on a rig during a hurricane. 620 F.3d at 471-72. The seller and manufacturer—but not the plaintiff—were parties to "Purchase Order Agreements" that contained an arbitration clause. *Id.* The district court held that the plaintiff was required to arbitrate its claims against the seller and manufacturer under the direct benefits estoppel doctrine. *Id.* at 472. The Fifth Circuit reversed. *Id.* at 474-75. The court held that the plaintiff was *not* required to arbitrate its claims because the plaintiff did not need to "base its claims" on the Purchase Order Agreements and had "disclaim[ed] any reliance" upon the Agreements. *Id.* at 475. Instead, the plaintiff's claims relied solely on "the pre-purchase representations and whatever duties a manufacturer and distributor have by law." *Id.*

Under *Noble Drilling*, therefore, the operative question is whether the plaintiff's claims rely on—and cannot be resolved without reference to—an agreement containing an arbitration clause. *See id.* Even if the plaintiff must also rely on other

---

[52] ECF No. 37 at 6 (quoting *Noble Drilling*, 620 F.3d at 474).
[53] *Id.*

contracts to litigate its claim, the determinative question is whether the plaintiff is bringing a claim under an agreement containing an arbitration clause against a defendant who signed that agreement. *See id.* Here, that answer is yes. Unlike the plaintiff's claims in *Noble Drilling*, Girod's claims against Defendants are not separable from the Policy. Girod has not "disclaim[ed] any reliance" upon the Policy— nor could it. Girod seeks to receive proceeds issued under the Policy directly from Defendants. Girod's claims against Defendants therefore "can only be determined by reference to an agreement containing an arbitration clause"—that is, by reference to the Policy. *Id.* at 474.[54]

## C. Plaintiff-Intervenor Girod's Crossclaims Against Plaintiff Hermes

Defendants also move this Court to stay the two crossclaims that Plaintiff-Intervenor Girod asserts against Plaintiff Hermes pending the outcome of the arbitration.[55] Girod asserts a breach of contract claim for Hermes's failure to name Girod as a loss payee in the Policy pursuant to the Mortgage contract and seeks a declaratory judgment against Hermes that Girod is the party entitled to all proceeds

---

[54] Girod's citation to *Horseshoe Entertainment v. Lepinski*, 40,753 (La. App. 2 Cir. 3/8/06), 923 So.2d 929, 935 is similarly unpersuasive. In that case, the defendant was sued by a parent corporation and its subsidiary for breach of contract. *Id.* at 931-32. The defendant was a party to separate contracts with each entity. *Id.* The subsidiary's contract contained an arbitration clause and the parent corporation's contract did not. *Id.* at 932. The defendant moved to arbitrate both plaintiffs' claims. *Id.* at 933. The court held that the arbitration clause was not enforceable against the parent corporation whose contract did not contain an arbitration clause. *Id.* at 935. The court explained that the parent corporation was suing the defendant—who was a signatory to both contracts—"to enforce an independent agreement from" the subsidiary's contract, and thus "direct benefit estoppel did not apply." *Id.* at 935. By contrast, here, Defendants are only a party to the contract with an arbitration clause and they are *not* a party to the Mortgage contract between Girod and Hermes that lacks an arbitration clause. Girod's only basis to assert claims against Defendants, therefore, is via the Policy.

[55] ECF No. 35-2 at 15-16.

of insurance due under the Policy because of the Mortgage contract.[56] Girod does not appear to take a position on which, if any, of its claims against Hermes should be stayed.[57]

A court can exercise its discretion to stay claims as a means of controlling and managing the docket and preserving the purpose of the arbitration. *See Compl. of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) ("[I]t will lie within the district court's discretion to stay the claims between the nonarbitrating parties pending outcome of the arbitration simply as a means of controlling its docket."). Several courts in this circuit have relied on the factors discussed in *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004) to determine whether a discretionary stay is appropriate. *See, e.g.*, *Mosaic Underwriting Serv., Inc. v. Moncla Marine Operations, L.L.C.*, 2013 WL 2903083, at *8 (E.D. La. June 12, 2013); *Suzlon Infrastructure, Ltd. v. Pulk*, 2010 WL 3540951, at *8-11 (S.D. Tex. Sept. 10, 2010); *Citgo Petroleum Corp. v. M/T Bow Fighter*, 2009 WL 960080, at *6-7 (S.D. Tex. Apr. 7, 2009). Under *Waste Mgmt.*, courts consider whether "1) the arbitrated and litigated disputes [] involve the same operative facts; 2) the claims asserted in the arbitration and litigation [are] 'inherently inseparable'; and 3) the litigation [will have] a 'critical impact' on the arbitration." 372 F.3d at 343 (citations omitted).

---

[56] ECF No. 16, Counts I and IV.
[57] ECF No. 37.

The claims between Girod and Hermes involve many of the same facts and core issues as the claims between Hermes and Defendants and Girod and Defendants that have been referred to arbitration. *Jones Walker, LLP v. Petaquilla Minerals, Ltd.*, No. 14-1203, 2015 WL 3772670, at *5 (E.D. La. June 17, 2015) ("A district court may exercise its discretion to impose a stay pending arbitration, even if the operative facts are not identical and the claims are not inherently inseparable, as long as the facts and claims forming the basis for the arbitration and litigation proceedings significantly overlap.") And the litigation between Girod and Hermes would have a "critical impact" on the resolution of the claims against Defendants in the arbitration. *Waste Mgmt.*, 372 F.3d at 343. The Court concludes that a discretionary stay for the crossclaims between Girod and Hermes is warranted here.

## III.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' motion[58] to compel arbitration and stay proceedings is **GRANTED**. Plaintiff Hermes, Plaintiff-Intervenor Girod, and Defendants are compelled to arbitrate Plaintiff Hermes's and Plaintiff-Intervenor Girod's claims against Defendants in accordance with the terms of the Policy's arbitration agreement. Plaintiff Hermes's and Plaintiff-Intervenor Girod's claims against Defendants are **STAYED** pending arbitration. *See* 9 U.S.C. § 3; *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, (2009). Plaintiff-Intervenor's crossclaims

---

[58] ECF No. 35.

17

against Plaintiff are **STAYED** pending arbitration. *See Compl. of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993).

      The Clerk's Office is respectfully directed to close this case for administrative and statistical purposes.

      New Orleans, Louisiana, this 29th day of August, 2025.

      BRANDON S. LONG
      UNITED STATES DISTRICT JUDGE

18